**UNITED STATES OF AMERICA**
 *ex rel.* **STEVEN SCOTT,**                                                                  **Plaintiff,**

**v.**

 **HUMANA, INC.,**                                                                                **Defendant.**

<u>**Memorandum Opinion and Order**</u>

Before the Court is Relator's motion to compel Defendant Humana Inc. to fully comply with Relator's 30(b)(6) deposition notice as briefed in DNs 201, 208, and 211.  Also before the Court are the corresponding motions to seal the motion, response and reply to Relator's motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice. (DNs 200, 207, 210.)

For the reasons set forth below, Relator's motion to compel Defendant Humana Inc. to fully comply with Relator's 30(b)(6) deposition notice (DN 201) is **GRANTED IN PART AND DENIED IN PART.**

DNs 200, 207 and 210 are **DENIED WITHOUT PREJUDICE**.  DNs 201, 208, and 211 shall remain **PROVISIONALLY UNDER SEAL** pending further orders from the Court.

I.    **MOTION TO COMPEL**

   A.  <u>**Legal Standard**</u>

Trial courts have wide discretion in dealing with discovery matters.  *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1).  This language is broadly construed by the

federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)). The scope of discovery is not without limits, however. In assessing whether information is within the scope of discovery, the Court is directed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Fed. R. Civ. P 37(a)(3)(B)(ii) permits a party to compel discovery when "a corporation or other entity fails to make a designation under Rule 30(b)(6)." Under Rule 30(b)(6), when a corporation is served with notice of a deposition, it is obligated "to produce a witness or witnesses knowledgeable about the subject or subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of the corporation." *Schall v. Suzuki Motor of Am. Inc*., 2017 WL 4050319, at *5 (W.D. Ky. Sept. 13, 2017). "A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity." *Smith v. General Mills, Inc*., 2006 Wl 7276959, at *5 (S.D. Ohio April 13, 2006.)

A corporation has a duty to prepare its witnesses to testify "fully, completely, and unevasively to the questions…as to the relevant subject matters." *Weber Mfg. Techs., Inv. v. Plasan Carbon Composites, Inc.*, 2016 Wl 8114507, at *5 (E.D. Mich. July 26, 2016.) The inability of a designee to answer every question on a particular topic does not necessarily mean that the corporation or agency has failed to comply with its obligations under the Rule. *Consumer Fin. Prot. Bureau v. Border & Border*, 2016 WL 9460471, at *3 (W.D. Ky. June 29, 2016.) Should it

become apparent during the course of the deposition that the designee is unable to adequately respond to relevant questions on the listed subjects contained in the deposition notice, then the responding entity has a duty to timely designate additional or supplemental witnesses as substitute deponents. Only if the corporation is unable to provide an appropriate designee because "it does not have the requested information; cannot reasonably obtain it; and, lacks sufficient knowledge after a good faith, thorough review of all available information, will its obligations under Rule 30(b)(6) cease." *Id*.

"If a party fails to educate its 30(b)(6) witness with respect to the corporation's full knowledge of the topics noticed for deposition, this failure is effectively a failure to appear for purposes of Rule 37." *Brooks v. Caterpillar Glob. Mining Am., LLC*, 2016 WL 5213936, at *2 (W.D. Ky. Sept. 20, 2016). The designative party "must substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry." *Wicker v. Lawless*, 278 F.Supp.3d 989, 1000 (S.D. Ohio 2017).

"If a deponent has already been deposed in a case, then a party must obtain leave of court in order to take the deposition. The court must grant leave to resume the deposition to the extent consistent with Rule 26(b)(1) and (2)." *Smith v. Old Dominion Freight Line, Inc*., 2017 WL 2371825, at *3 (W.D. Ky. May 31, 2017), citing Fed. R. Civ. P. 30(a)(2)(A)(ii).

A corporation may not "circumvent its obligations to prepare its Rule 30(b)(6) witness to answer fully and without evasion all questions about the designated subject matter simply by producing a witness without knowledge of the subject believed to be irrelevant." *Brooks* at *2, (quoting *Champion Foodservices, LLC v. Vista Food Exch., Inc.*, 2016 WL 44680000, at *14 n.35 (N.D. Ohio Aug. 23, 2016.) Thus, "arguments as to the relevance of the topics do not weigh on the question of whether [an entity] fully complied with the Rule 30(b)(6) deposition notice. The

inquiry must focus solely on whether the 30(b)(6) witnesses were prepared to testify regarding information known or reasonably available to [the entity]." *Id.*

Fed. R Civ. P 27 permits Courts to issue a protective order if justice requires and to protect individuals from annoyance, embarrassment, oppression, or undue burden or expense. "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir.2001) (citing *General Dynamics Corp. v. Selb Mfg. Co*., 481 F.2d 1204, 1212 (8th Cir.1973)). "To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C.1987)).

**B. Discussion**

On November 30 and December 1, 2018, Relator served his initial and first amended Rule 30(b)(6) deposition notices. (DN 208-2 ¶3.) On December 26, 2018, Humana served its objections and responses to Relator's First Amended Notice. (DN 208-2 ¶6.) Relator served a Second Amended Notice on January 9, 2019. (DN 208, at PageID # 12268.) Counsel for both parties exchanged meet and confer correspondence from January 3, 2019 to January 17, 2019. (DN 208-2 ¶7.) Humana served its objections and responses to the Second Amended Notice on February 10, 2019. (DN 208 at PageID #12268.) The deposition notice included a list of 28 documents that contain the relevant bid assumptions and 20 documents containing the relevant budget-at-bid assumptions. (DN 201-1.) Relator argues Humana has failed to designate a deponent for some topics, and failed to adequate prepare its deponents as to other topics.

In opposition, Humana contends that deposition notice was far-reaching, overbroad, unintelligible and so expansive that no corporation could have reasonably provided responsive

testimony. (DN 208, at PageID #12264.) Humana contends that Relator moves to compel testimony that he never sought in his notice, or was never expressly subject to the parties' agreement on the scope of testimony. (DN 208, at Page #12265.) In its response Humana moves for a protective order under Rule 26(c)(1). (DN 208, at PageID # 12266.)

During the meet and confer process, Relator contends he agreed to narrow his list of budget-at-bid documents to four specific documents for Contract Years 2011-2013. (DN 201, at PageID # 11701.) For Contract Years 2014-2018, the parties agreed that the relevant "Budgets-at-Bid" for each year were identified in Humana's previous interrogatory responses. (DN 201, at PageID # 11702.) Relator states the parties agreed Milliman would provide the preferred pharmacy utilization assumptions reflected in Humana's bids, and that Humana would "designate one or more corporate representatives to testify on relevant topics based on the values that Milliman identifies in its response to these three specific requests from Relator." (DN 201, at Page ID # 11702.) Relator argues that in advance of the Rule 30(b)(6) depositions, Relator and Humana had agreed that Humana's corporate witnesses would at a minimum provide testimony regarding the preferred utilization, membership, and member cost share assumptions in a limited set of budgets-at-bid documents and a set of preferred use assumptions provided by Milliman. (DN 201, at PageID #11702.)

Humana argues it never agreed to provide Rule 30(b)(6) testimony about the specific preferred use assumptions that Milliman supplied. (DN 201-1 ¶13.) However, Humana concedes it stipulated to the preferred utilization assumptions that Milliman identified. (*Id*.)

1. **Failure to Provide Testimony**

Relator argues Humana has refused to designate a witness to testify as to Topic No. 1(l), (m), (n), (o), and (p), and refused to provide testimony on certain issues relating to Topic Nos. 1(k), (q), 3, 6, 8, 9, and 10.

### a) <u>**Testimony Relating to Profit Margins**</u>

> 1. For each Contract Year for the Walmart Plan from 2011 through 2017: …
>    k. Humana's actual aggregate gain/loss margins for its Part D plans, as measured by percentage of revenue.
>    l. Humana's actual aggregate gain/loss margins for all non-Medicare health insurance lines of business, as measured by percentage of revenue.
>    m. Humana's aggregate gain/loss margins for its Part D plans based on its Bids, as measured by percentage of revenue.
>    n. Humana's aggregate gain/loss margins for all non-Medicare health insurance lines of business based on its Bids, as measured by percentage of revenue.
>    o. Humana's aggregate gain/loss margins for its Part D plans based on its Budgets, as measured by percentage of revenue.
>    p. Humana's aggregate gain/loss margins for all non-Medicare health insurance lines of business based on its Budgets, as measured by percentage of revenue.
>    q. The identity of all Humana employees who were aware and when they became aware of the information in subtopics (k) though (p).

(DN 201-1.) Relator contends Humana flatly refused to provide deposition testimony about Humana's profit margins as stated in Topic No. 1(k) through (p). (DN 201-1, at PageID # 11733.) Relator argues that though Humana agreed to designate a witness to testify only to the actual gain/loss margin for the Walmart Basic Plan, it has refused to provide any financial information relating to Humana's other Part D business and has refused to provide any information relating to the gain/loss margin in its bids or budgets, based solely on its contention these topics are irrelevant and unduly burdensome. (DN 201, at Page ID # 11703.)

Humana has refused to designate any witness to testify regarding Topic No. 1(l)-(p) on the ground that these topics are irrelevant. (DN 201-5, at PageID# 11788-11793.) Humana has agreed to provide only limited testimony for Topic No. 1(k) and (q) also on the ground that these topics seek irrelevant information. (DN 201-5, at PageID #11789, #11794; DN 201, at Page ID # 11712.)

Relator argues the discovery is relevant since the gain/loss margins reported in Humana's bids, budgets, and actual experience for both its Part D business and non-Medicare business are central to the fraud alleged in the Complaint because they show Humana knowingly misrepresented its eligibility for Part D contracts by asserting that its bids complied with core requirements for eligibility, including a profit cap test, when Humana knew that the Walmart Plan did not comply. (DN 201, at PageID # 11714.) Relator argues the information sought is relevant because the profit margin for a Part D sponsor's plans must be within 1.5% of the profit margin for the sponsor's non-Medicare lines of business. (DN 201, at PageID #11703, 11712.) Relator argues that Humana's false statements included assertions to CMS that it was complying with the profit caps at the same time it was budgeting profits exceeding that cap. (DN 201, at PageID # 11713.)

Humana argues that the fact that these topics are relevant to CMS's profit cap test does not show why that test if relevant to Relator's complaint, since a profit margin test compares the profit margin across all 104 of Humana's Part D bids to other non-Medicare lines of business, while Relator's FCA claims specifically concern only Humana's Walmart Plan bids. (DN 208, at PageID #12280.) Humana argues even if Relator could show variances between external- and internal-facing profit targets for all of Humana's Part D plans combined, it would not be probative evidence that the Walmart Plan bids themselves contained these false assumptions. (DN 208, at PageID #12281.)

Humana states it agreed for topic 1(k) to testify regarding the Walmart Plan's actual underwriting margin for contract years 2011 through 2017, and for Topic 1(q) it would identify the Humana employees who were aware of the actual underwriting margin and when they became aware. (DN 208-2 ¶8(b); DN 208, at PageID #12270.) Humana contends that when Relator failed to seek relief from the Court it believed that Relator had accepted Humana's "offer of

compromise." (DN 208, at PageID # 12282.) Humana states the parties continued to discuss Topics 1(l)-(p), but reached an impasse and Humana believed that Relator did not intend to pursue testimony on Topics 1(l) through (p) because Relator did not seek relief from the Court. (DN 208, at PageID #12271.) Humana further argues that Relator did not assert a direct violation of the profit cap in his Complaint.

In reply, Relator also points out that in order to adequately respond to Topic No. 1(k)-(p) Humana would be required to identify a total of six data points for each contract year, each of which is directly relevant to Humana's bids for the Walmart Plan. (DN 211, at PageID #12765.)

Based on Relator's representation that CMS requires a part D sponsor to pass a profit test requiring "a Part D sponsor's aggregate margin across all bids [to] be within 1.5% of the entity's non-Medicare business," the Court finds the information requested in 1(k)-(q) regarding Humana's gain/loss margins for all Part D plans and all non-Medicare health insurance lines of business is relevant as it could lead to the discovery of admissible evidence regarding whether Humana knowingly made false representations to CMS.

Based on the foregoing, the Court finds Topic Nos. 1(k)-1(q) are relevant to the claims asserted by Relator and that the scope of the Topic is neither overbroad nor unduly burdensome. Humana is ordered to designate a person or persons to testify about information known or reasonably available to the organization in response to topic No. 1(k)-1(q).

b) Testimony Relating to Contract Year 2018

Relator argues Humana has refused to provide any testimony relating to Contract Year 2018 for Topic No. 3, 8, 9, and 10. The topics request information on the following:

No. 3: The development of Humana's Budgets for the Walmart Basic Plan for Contract Years 2011 through 2018.

8

No. 8: The certifications that Humana and Milliman submitted to CMS for the Walmart Basic Plan, including the actuarial certification described in 42 CFR §423.265(d)(2) and the certifications described in 42 C.F.R §423.505(k).

No. 9: All Actuarial Standards of Practice (ASOPs) and other actuarial standards applicable to the Membership or Preferred Utilization assumptions used for purposes of Humana's Bids and its Budgets for the Walmart Basic Plan.

No. 10: All quantitative models used to develop Humana's Bids and Budgets for the Walmart Basic Plan.

(DN 201-1.) Deposition Topics Nos. 3, 8, 9, and 10 seek testimony related to Humana's bids and budgets for Contract Year 2018. (DN 201-1, at PageID #11733.) Relator does not allege that Humana's bids for Contract Year 2018 were fraudulent, however Relator contends Humana's conduct in preparing and submitting the bids for this Contract Year are relevant since Humana "dramatically changed in behavior after the DOJ served a civil investigative demand on Humana on May 5, 2017" by adjusting its bid assumptions to match the assumptions in its contemporaneous budgets. (DN 201, at Page ID # 11703.) Relator argues this was the first year in the history of the Walmart Plan that the assumptions in Humana's bids matched the assumptions in Humana's internal budgets. (DN 201, at Page ID #11704.)

In meet and confer discussions, Humana claimed that it's bids and budgets for Contract Year 2018 are not relevant because Relator is not alleging fraud for this contract year. (DN 201, at PageID # 11715.) Relator argues Humana's conduct in 2018 is relevant because it instantaneously changed its behavior as a result of the CID issued by the DOJ thus it could be inferred that Humana knew its claims for 2011-2017 were fraudulent. (DN 201, at PageID #11715.)

In opposition, Humana argues Relator sought testimony on contract year 2018 despite having stipulated that he would not assert allegations or seek damages for this contract year. (DN 109) Humana states it agreed to only provide testimony about the 2018 contract year for Topic 2 since

it most directly addressed Relator's claimed basis for this testimony. (DN 208-5, at PageID #12376.)

The Court finds that the deposition testimony relating to Humana's conduct in 2018 responsive to Nos. 3, 8, 9, and 10 is relevant as it could lead to the discovery of admissible evidence regarding Humana's knowledge of alleged fraudulent practices. Accordingly, Humana is ordered to designate a person or persons to testify about information known or reasonably available to the organization in response to topic No. 3, 8, 9, and 10 for the year 2018.

c) Testimony Concerning PDE Records

**No. 6:** The PDE Records contained in the PDE Return File bearing Bates number HUM-000661528.

(DN 201-1.) Relator argues that during the meet and confer process he made clear that this would cover "Humana's transmittal of PDE records to CMS, Humana's understanding of why these PDE records were submitted to CMS, Humana's understanding of why these PDE records were submitted to CMS, and Humana's understanding of whether these PDE records were claims for payment." (DN 201, at PageID # 11704; DN 201-3, at PageID #11749.) Relator argues Humana only agreed to provide testimony regarding "general types of data contained in the PDE records." (DN 201, at PageID # 11704.)

Relator contends that among the false claims for payment submitted to the government in violation of the False Claims Act are PDE records, but Humana has refused to provide testimony on Humana's understanding of the following: whether the PDE records are claims for payment; the reason Humana submitted the PDE records; the relationship between these records and the payments made by CMS; whether Humana would have received payment from CMS if it did not submit PDE records; and what CMS used the PDE records for. (DN 201, at PageID # 11715.)

Relator contends this information is relevant because Humana provides PDE Records to CMS during the course of each year in order to obtain payment from CMS. (DN 201, at PageID #11704.)

In opposition, Humana argues the cited document in Topic 6 is a PDE text file containing billions of unique data points, summarizing transaction details for every single drug dispensed to every Walmart Plan beneficiary from 2011 through 2017. (DN 208-2 ¶¶ 5, 8(e).) Humana states it agreed to provide testimony on the general types of information contained in the 70 data fields of the PDE records, but that "it was inherently unreasonable to seek testimony on the billions of unique data points in the PDE records." (*Id*.) In an email exchange Humana agreed to provide testimony as to whether the data in the PDE records was submitted to CMS in connection with the Walmart Basic Plan. (DN 208-5, at PageID #12375.) Humana argues it prepared Mr. Lanceta, who testified to the general types of data contained in the PDE records, including the manner in which the PDE records were received, maintained, and stored in the normal course of business. (DN 208-23.) Mr. Lanceta interviewed the Humana technician who collected the PDE records at issue and produced his interview notes to Relator. (DN 208-23, at 20:17-22; DN 208-24.)

Based on a review of the deposition transcript of Mr. Lanceta and in light of the foregoing arguments, the Court finds Humana appropriately designated a person to testify about information known or reasonably available to the organization in response to topic No. 6 as written. The Court finds Mr. Lanceta testified fully, completely and unevasively to the questions regarding Topic No. 6. Accordingly, Relator's request for further deposition testimony regarding No. 6 is denied.

2. FAILURE TO PREPARE DEPONENTS

Humana served Amended Responses and Objections and designated five different corporate representatives on February 10, 2019. (DN 201-5.) The five corporate representatives designated included Susan Diamond, Rachel Theiss, Joseph Liss, Akure Paradis, and Matt

Burrows. (DN 201, at PageID # 11705.) Relator argues the designated witnesses failed to provide testimony as to Humana's full knowledge of Topic Nos. 1, 2, 3, 8, 11 and 12, which constitutes an effective failure or these witnesses to appear. (DN 201, at PageID # 11711.) Relator moves to compel Humana to provide full testimony on these topics by an adequately prepared corporate designee, or moves for leave to reopen the 30(b)(6) deposition pursuant to Fed. R. Civ. P 30 and Fed. R. Civ. P. 26(b)(1) and (2). (DN 201, at PageID # 11721.) The Court addresses each deposition topic in turn:

a) **Topic Nos. 1(a), (b), (c), (e):**

1. For each Contract Year for the Walmart Plan from 2011 through 2017:
a. The reason for any differences between the Preferred Utilization, Member Cost Share, or Membership assumptions used for purposes of Humana's Bids and for Humana's Budgets;
b. The identity of all Humana employees who were aware and when they became aware that assumptions for Preferred Utilization, Member Cost Share, or Membership used for purposes of Humana's Bids for the Walmart Basic Plan… were different than the assumptions for Preferred Utilization, Member Cost Share, or Membership used for purposes Humana's Budgets for the Walmart Basic Plan for the same Contract Years…
c. All Persons to whom Humana communicated and when it was communicated that assumptions for Preferred Utilization, Member Cost Share, or Membership used for purposes of Humana's Bids for the Walmart Basic Plan … were different than the assumptions for Preferred Utilization, Member Cost Share, or Membership used for purposes of Humana's Budgets for the Walmart Basic Plan for the same Contract Years…
e. All Persons to whom Humana communicated and when it was communicated that the assumptions for Preferred Utilization, Member Cost Share, or Membership used for purposes of Humana's Budgets for the Walmart Basic Plan.

(DN 201-1.) Humana designated Ms. Theiss and Ms. Diamond as the corporate representatives to testify as to Topics 1(b)-(e). (DN 201-5.) Relator argues that none of the witnesses had even reviewed the relevant budget-at-bid or final budget documents, and none was prepared to identify which documents in Humana's production constituted these critical documents. (DN 201, at PageID 11718.)

Relator contends Susan Diamond was designated to testify as to Topic Nos. 1(a), 1(e) and 3, and portions of Topic No. 1(b) and (c) to the extent these topics concern Humana's final budgets. (DN 201, at PageID # 11705, 11720.)  Relator contends that Susan Diamond had not reviewed the documents constituting the budgets-at-bid or the final budgets for each year and was unprepared to identify any of the documents that constitute the budgets-at-bid for Contract Years 2011-2013. (DN 201, at PageID # 11705; DN 201-8 at 15:2-17:23, 22:4-7, 35:9-14.)  Relator also states Ms. Diamond was not prepared to verify the preferred utilization assumptions that were used for purposes of the bids, even though the parties had agreed in advance of the deposition that the preferred utilization assumptions Milliman had supplied were the assumptions used for Humana's bids.  (DN 201-8 at 16:10-16.)

 Further, Relator argues Ms. Diamond was not prepared to testify as to any of the specific assumptions for preferred utilization, membership, or member cost share that were used for purposes of Humana's bids, budgets at bid, or final budgets.  (DN 201-8 at 16:10-16; 25:15-26:17, 26:18-27:1.) Relator argues Ms. Diamond was only prepared to identify persons who were aware of one or more of the assumptions in the final budgets, but Humana did not prepare her to identify who was aware of any specific assumption. (DN 201-8 at 163:8-18.)

Realtor argues Rachael Theiss was designated to testify Topic No. 1(b) and (c) to the extent they related to differences between the assumptions in Humana's bids and the budgets-at-bid. (DN 201, at PageID #11707.) Relator argues Rachael Theiss was unprepared to identify any persons aware of any specific assumption used in the budgets-at-bid or the bid.  (DN 201, at PageID #11709; DN 201-9 at 19:25-21:1, 141:17-142:5.)

In opposition, Humana argues that while Topics 1(a)-(g) generally concerned different bid or budget assumptions, no topic requested the identification of specific assumptions themselves,

nor did any topic seek the identification of any particular bid or budget-type document containing those assumptions. (DN 208, at PageID # 12269.) Humana also argues that it was unnecessary to know the exact amount of the alleged variance between certain assumptions to respond to Topic 1, and thus unnecessary for Humana's witnesses to review the more than four dozen documents that Relator identified in Topic 1's subparts. (DN 201-1 ¶12.) Further, Humana argues that it agreed if Relator obtained assumptions from Milliman, its corporate designees would rely on those assumptions but only to the extent necessary to respond to the notice. (DN 208-2 ¶13.) Humana states it never agreed to provide Rule 30(b)(6) testimony about the specific preferred use assumptions that Milliman supplied and Relator points to no correspondence with Humana's counsel in which such a representation was made. (DN 208 at PageID #12278.)

Humana argues additional testimony for Topics 1(a) should be denied because Ms. Diamond testified at length about the "general" reasons for differences between Preferred Utilization, Membership or Member Cost Share assumptions in the Walmart Plan bids and in Humana's Part D budgets-at-bid and budgets. (DN 208-16.) Ms. Diamond explicitly states, "I can speak to general reasons why there are differences. I am not prepared to speak to by region, by contract year, explicit differences, but I can tell you generally why there may be differences." (DN 208-16 at 115:5-9.) Humana argues the Notice never requested information on variances between specific assumption values and Relator has known since December 2018 that Humana would provide "general reasons" for the variances between the bid and budget assumptions. (DN 208, at PageID #12277.)

Humana argues that by its plain terms, Topic 1(b) did not seek testimony about the content of specific assumptions. (DN 208, at PageID # 12269.) Humana contends that the deposition notice sought a vast amount of information and no documentary record or personnel file contained the

requested information.  (DN 208, at PageID #12266.)  In addressing 1(b) Humana argues it submitted thirty-five different bids each year and this included 105 unique bid values, 105 budget-at-bid values, and 105 unique final budget values per contract year-- for a total of 2,205 specific values.  (DN 208, at Page ID # 12266.)  Humana argues 1(b) would require Humana to identify every employee who was aware of variances in any of the 2,205 assumptions, as well as when they learned of each variance.  (DN 208, at PageID # 12266.)

Humana argues its corporate witnesses likewise provided complete testimony in response to the express language of Topics 1(b)-(e).  (DN 208, at PageID #12278.)  Humana contends Ms. Theiss and Ms. Diamond testified as to the names of persons who had knowledge of, or received a communication about, the more than 2,000 assumptions or variances between those assumptions, and when those persons acquired that knowledge or received the communication. (DN 208, at PageID # 12277.)

Humana argues 1(c) is equally as sweeping as 1(b) because it seeks the identity of anyone to whom Humana communicated that these 2,205 assumptions differed. (DN 208, at PageID #12267.)  Humana states it "was necessary for Humana to make individual inquiries with the hundreds of people who came in contact with the Walmart Plan over a seven-year period." (DN 208, at PageID #12267.)  Humana argues the demand is not feasible with over 2,000 different assumptions spanning seven years, and a corporate designee could not reasonably be expected to learn and retain such detailed information in preparation for his or her testimony.

Humana cites to *U.S. ex. rel Fago v. M & T Mortgage Corp.*, 235 F.R.D. 11, 25 (DDC 2006).  However, that Court found that a corporate representative could not be required to give deposition testimony identifying sixty-three potentially actionable loans because a representative could not expect to testify as to the loan numbers without a photographic memory.  The Court

finds the cases cited by Humana to be non-dispositive as Relator is not asking for a Humana designee to testify regarding the 2,205 specific values contained in the bids from memory. (DN 201-1, at PageID #11731.)

Humana designated Susan Diamond as its corporate representative to "testify concerning the general reasons that the Preferred Utilization, Member Cost Share, and Membership assumptions used for purposes of Humana's Walmart Plan Bids may differ from the Preferred Utilization, Member Cost Share and Membership assumptions used for purposes of Humana's Budgets and Budgets-at-Bid" in response to Topic 1(a). (DN 201-5, at PageID #11764.) The Court finds that Humana's willingness to provide "general reasons" but refusal to provide any specifics to support those general reasons a failure to adequately prepare the designated deponents or a failure to designate the correct deponents to speak to Topic 1(a) as this was an internally generated document. The Court finds that Ms. Diamond was not properly prepared to testify for Topic 1(a) as she had not reviewed any of the underlying documents listed in Topic 1(a).

The Court finds Rachael Theiss was unprepared to testify as to the identity of all Humana employees who were aware and when they became aware that the assumptions for the Walmart Basic Plan differed from the assumptions Humana's budgets for the same contract years as set forth in Topic 1(b). Further, Rachael Theiss was unprepared to testify as to the communications regarding the assumptions as set forth in Topic 1(c)-(e). The deposition notice does not ask about any specific assumption, but refers to the "assumptions" generally. Humana's summary document for Topic 1(b) provides multiple people were "generally aware of difference(s)." However this does not address when these specific employees they became aware of such differences. (DN 208-10, at PageID #12493.) Rachael Theiss specifically testified that David Paluch acted on her behalf to collect this information via questionnaires and interviews, but she did not know who created the

questionnaire, what was on the questionnaire, what the results of the questionnaires were, or who conducted the interviews. (DN 201-9, at PageID #11850; DN 201-9 at 19:21- 22:25; DN 208-10 at PageID #12493.) The Court finds Humana was not asked to designate someone who had detailed information regarding the 2,000 different assumptions, however Humana was responsible for designating a person who could testify as to which individual knew about the differences in assumptions, when they became aware of the differences in assumptions and who those individuals communicated with about the differences in the assumptions.

The Court finds the designees were unable to adequately respond to relevant questions on the listed subjects contained in Topics 1(a), (b), (c) and (e), and Humana is ordered to timely designate additional or supplemental witnesses as substitute deponents. The Court finds the testimony requested is proportional to the needs of the case even if it requires the designation of multiple additional deponents.

**b) Topic No. 2**

2. The development of Humana's Bids for the Walmart Basic Plan for Contract Years 2011 through 2018.

(DN 201-1.) With respect to Topic No. 2, Relator argues Rachel Theiss was unprepared to testify as to the scenario testing that Humana had engaged in each year to determine, in advance of the bids, what preferred utilization and membership assumptions it would need to adopt in order to generate an actuarially equivalent bid that met CMS's requirements. (DN 201, at PageID # 11708; DN 201-9 at 251:17-252:9.) Relator argues Rachael Theiss had not reviewed the documents and information about which she was designated to testify. Specifically she had not reviewed the following; the budgets at bid for each year (DN 201-9 at 11:2-23); the preferred utilization assumptions used for the bids provided by Milliman (DN 201-9 at 46:2-10); or any of the

documents containing bid assumptions for membership and member cost share as identified in Humana's interrogatory responses. (DN 201, at PageID # 11707.)

Relator argues Ms. Theiss was unprepared to testify as to any of the assumptions for preferred utilization, membership or member cost share in any of the budgets-at-bid as she had not reviewed all of the budgets at bid. (DN 201-9 at 79:10-23.) Relator argues Ms. Theiss was unprepared to testify as to the process of how Humana generated assumptions in its bids that differed wildly from the assumptions in its internal budgets. (DN 201-9 at 246:9-19.) Relator argues Ms. Theiss was also unprepared to testify as to any of the differences in specific assumptions in preferred utilization, membership or member cost share that were used for purposes of Humana's budgets-at-bid and its bids. (DN 201-9 at 251:17-252:9.) Relator argues Ms. Theiss was also unprepared to testify as to the scenario testing that Humana had engaged in each year to determine, in advance of the bids, what preferred utilization and membership assumptions it would need to adopt in order to generate an actuarially equivalent bid that met CMS's requirements. (DN 201-9 at 225:8-19.) Relator argues that Ms. Theiss was unprepared to explain how Humana's bid, budget-at-bid, and final budget development processes could generate assumptions for preferred utilization, membership and member cost share that were wildly different from the assumptions set forth in Humana's contemporaneous budgets-at-bids. (DN 201-9 at 246:9-1; 251:17-252:9.)

Specifically, Ms. Theiss stated, "So, I didn't see anywhere in there that it asked why certain things were done certain ways. So no, I was not prepared to answer why as part of the bid development process." (DN 201-9 at 246:8-19.)

Humana argues that beyond Humana's agreement to provide testimony on contract year 2018, Relator in no way contested the scope of testimony for Topic 2 that was described in Humana's responses and objections. (DN 208-2, at PageID #12298; DN 208, PageID # 12282.)

Humana argues Ms. Theiss addressed the full gamut of bid development, including the initial bid kick-off meeting with Milliman, the regular strategy and assumption meetings, the frequency of bid pricing rounds and the numerous iterations of Milliman's peer review workbooks. (DN 208-9 at 169:4-170:25; DN 208-13.) Humana argues Ms. Theiss testified to the "general process" by which Humana developed the bids. (DN 208, at PageID #12284.) Humana argues that on its face Topic 2 did not seek testimony on developing specific assumptions, the values of those assumptions, how the development of bid assumptions differed from the development of budget assumptions, or any information on assumption-specific scenario testing. (DN 201-5, at PageID #11795.)

The Court finds Ms. Theiss was unprepared to discuss the development of Humana's Bids for the Walmart Basic Plan as stated in Topic 2 with any level of specificity as she had not reviewed the underlying documents she was designated to testify about. Further, Exhibit 256 to Ms. Theiss's deposition does not obviate the need for additional deposition testimony as the document referred to by Ms. Theiss is named "2017 CY High Level Bid Development Timeline" and mainly lists various types of meetings e.g. "weekly PDP strategy meeting" and "weekly meeting with Milliman." (DN 208-13)

The Court finds the designee was unable to adequately respond to relevant questions on the listed subjects contained in Topic 2, and Humana is ordered to timely designate additional or supplemental witnesses as substitute deponents. The Court finds the testimony requested is proportional to the needs of the case even if it requires the designation of multiple additional deponents.

c) **Topic No. 3**:

3. The development of Humana's Budgets for the Walmart Basic Plan for Contract Years 2011 through 2018.

(DN 201-1.) Relator argues that though Humana designated Joseph Liss to testify as to the development of Humana's budgets for the Walmart Basic Plan for Contract Years 2011 through 2018, he had not reviewed any of the four budget-at-bid documents for Contract Years 2011-2013 that Humana had expressly agreed he would be prepared to discuss. (DN 201-11 at 103:7-104:11; DN 201, at PageID #11705.) Relator argues that Mr. Liss was unprepared to testify as to the development of any of the specific assumptions for preferred utilization, membership or member cost share in the budgets-at-bid. (DN 201-11 at 81:15-82:15; DN 201, at PageID # 11709.)

Relator argues Mr. Liss was unprepared to explain how Humana's bid, budget-at-bid, and final budget development processes could generate assumptions for preferred utilization, membership and member cost share that were wildly different from the assumptions set forth in Humana's contemporaneous budgets-at-bids. (DN 201-8 at 32:14-21; DN 201-11 at 103:7-104:11.)

The only argument Humana makes as to Topic 3 in its opposition is that Relator's demand for testimony concerning contract year 2018 is unduly burdensome and disproportionate to the needs of the case. (DN 208 at PageID # 12287.) The Court has already addressed this argument above.

Based on the foregoing, the Court finds the designees were unable to adequately respond to relevant questions on the listed subjects contained in Topic 3. The Court finds the testimony requested is proportional to the needs of the case even if it requires additional deposition time. Accordingly, the Court grants leave to Relator consistent with Rule 26(b)(1) and (2) to reopen the deposition of Mr. Liss or Ms. Diamond regarding Topic No. 3.

**d) Topic No. 8:**

8. The certifications that Humana and Milliman submitted to CMS for the Walmart Basic

Plan, including the actuarial certification described in 42 CFR § 423.265(d)(2) and the certifications described in 42 C.F.R. § 423.505(k).

(DN 201-1.) Relator argues Ms. Theiss was unprepared to testify as to any of the documents supporting Humana's certifications to CMS that its bids were actuarially equivalent. (DN 201, at PageID #11709; DN 201-9 at 199:4-200:1.) Further Relator argues Ms. Theiss was unprepared to testify as to the fact that the supporting documents state Humana was responsible for all assumptions relating to preferred utilization and membership and that these assumptions were reliance items for Milliman. (DN 201-9 at 214:15-22.)

In opposition, Humana argues Relator's demand for additional testimony on Topic 8 mischaracterizes the record and should be denied for multiple reasons. First, Humana argues Ms. Theiss testified she had generally seen the supporting documentation and she understood preferred utilization to be a reliance item for some years. (DN 208-9 at 215.) Humana argues by the time of her deposition, Humana had produced to Relator more than 850 certifications and attestations relevant to the Walmart Plan. (DN 208, at PageID # 12286.) Ms. Theiss brought to the deposition her notes based on a document review and an interview of her colleague, detailing each type of certification. (DN 208-14; DN 208-9 at 274-280; 295-302.)

Based on the deposition transcript and in consideration of the above arguments, the Court finds Humana adequately prepared its witness to testify fully, completely, and unevasively to the questions posed regarding Topic No. 8.

**e) Topic Nos. 11 and 12:**

11. The Civil Investigative Demand (CID) that was issued to Humana by the United States Department of Justice on May 5, 2018 (a copy of which bears Bates number HUM-000175554), including any actions taken at Humana relating to the CID.

12. The Complaint filed in this case, including any actions taken at Humana relating to the allegations in the Complaint.

(DN 201-1.) Akure Paradis, Senior Counsel, was designated to testify concerning No. 11 and No. 12. Ms. Paradis testified that in response to the CID, Humana met with the DOJ on one occasion, but Ms. Paradis was not prepared to testify about anything discussed at the meeting or what Humana told the DOJ about its alleged fraudulent conduct surrounding the Walmart Basic Plan. (DN 201-12 at 27:25-28:10, 129:7-131:22.) Relator contends Ms. Paradis was not prepared to testify about what Humana presented to the DOJ in March 2018 relating to the Complaint in this action. *Id.* Relator argues that because Ms. Paradis did not attend the meeting, Humana had an obligation to educate Ms. Paradis as to the full extent of its knowledge on this topic or Humana should produce a witness knowledgeable as to Humana's presentation to the DOJ. (DN 201, at PageID #11722.)

In opposition, Humana argues the Court should deny Relator's demand for additional testimony on Topics 11 and 12, because Ms. Paradis testified when the presentation occurred and generally identified who was present. (DN 208-7 at 26-28.) Humana argues Ms. Paradis described the meeting's purpose, explaining that the DOJ invited Humana to present reasons the government should decline to intervene in Relator's case. (DN 208-7 at 124.) Further Humana argues Ms. Paradis described the presentation's content. (DN 208-7 at 126-132.) Humana argues Ms. Paradis sufficiently answered Relator's questions regarding the who, what, when and why regarding the presentation, and thus Relator's demand for more testimony should be denied. (DN 208, at PageID #12288.)

However, the deposition transcript belies Humana's argument as Ms. Paradis explicitly states in her deposition testimony: "Q: Okay. You don't know exactly what was discussed? A: No, I do not. It was oral presentation and I wasn't present." (DN 201-12 at 28:7-10.) Further, Ms.

Paradis could not specifically remember who was in attendance at each of the "various discussions" with the DOJ. (DN 208-7 at 26-27.)

Thus, the Court finds the designee was unable to adequately respond to relevant questions on the listed subjects contained in Topic 11 and 12, and Humana is ordered to timely designate additional or supplemental witnesses as substitute deponents. The Court finds the testimony requested is proportional to the needs of the case even if it requires the designation of multiple additional deponents.

## II.     MOTIONS TO SEAL

Next, the Court addresses the related Motions to Seal (DNs 200, 207 and 210).

A. <u>Legal Standard</u>

Although the Sixth Circuit has long recognized a "strong presumption in favor of openness" regarding court records, there are certain interests that overcome this "strong presumption." *Rudd Equipment Co., Inc. v. John Deere Construction & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) ). These interests include "certain privacy rights of participants or third parties, trade secrets, and national security." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179.  The party seeking to seal the records bears a "heavy" burden; simply showing that public disclosure of the information would, for instance, harm a company's reputation is insufficient.  Id.; *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016).  Instead, the moving party must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed.  *Shane Grp. Inc.*, 825 F.3d at 307.  Examples of injuries sufficient to justify a sealing of judicial records include those that could be used as "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Comm'ns, Inc.,* 435 U.S. 589, 598 (1978).  In rendering a

decision, the Court must articulate why the interests supporting nondisclosure are compelling, why the interests supporting public access are not as compelling, and why the scope of the seal is no broader than necessary. *Shane Grp. Inc*., 825 F.3d at 306. Importantly, the presumption that the public has the right to access judicial records does not vanish simply because all parties in the case agree that certain records should be sealed. *Rudd Equipment Co., Inc.*, 834 F.3d at 595 (noting that although the defendant did not object to the plaintiff's motion to seal, his lack of objection did not waive the public's First Amendment and common law right of access to court filings); *Shane Grp. Inc.*, 825 F.3d at 305 ("A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody.")

B. Discussion

1. Relator's Motion for leave to file his motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice provisionally under seal (DN 200)

Relator argues that the motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice and attached exhibits contain and reflect information that Humana has deemed confidential and protected material under the parties' confidentiality stipulation. (DN 200, at PageID # 11690.) Relator says that pursuant to the confidentiality stipulation, Relator is filing his motion provisionally under seal and Humana is then required to submit a brief to the Court as to why sealing is required and whether redaction could eliminate or reduce the need for sealing. (Id.) Relator sets forth no other arguments in its two-paragraph motion. (Id.)

In its response, Humana states that it does not oppose Relator's motion for leave to file Relator's motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice provisionally under seal pursuant to the parties' stipulation regarding protection of confidential information. (DN 206, at PageID #12255.) Humana concludes that the motion to compel and attached exhibits contain discovery responses and deposition testimony that may divulge trade

secrets, proprietary business information, or otherwise commercially sensitive data that if made public would cause Humana substantial harm. (DN 206, at PageID #12255.) Humana then states it will file a subsequent motion seeking leave to seal permanently narrowly tailored portions of Relator's motion to compel and "it will elaborate in its forthcoming motion the basis for the redactions and the compelling reasons that exist to seal the confidential information at issue." (DN 206, at PageID # 12255.)

Based on the foregoing, the Court finds both parties have—for now--failed to substantiate their arguments that a compelling reason exists to seal DN 201. Accordingly, Relator's motion for leave to file his motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice provisionally under seal is DENIED. (DN 200.) Based on Humana's pending motion DN 217, the Court directs the Clerk that DN 201 shall remain PROVISIONALLY SEALED pending further order from the Court.

2. Humana's motion for leave to file under seal Humana's opposition to Relator's motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice or, in the alternative, Humana's motion for protective order (DN 207)

Humana argues that the motion and attached exhibits, contain and reflect information that Relator has deemed to be confidential and protected material under the parties' confidentiality stipulation. (DN 207, at PageID #12258.) Humana states that pursuant to that confidentiality stipulation, Humana is filing its motion provisionally under seal and Relator is then required to submit a brief to the Court as to why sealing is required and whether redaction could eliminate or reduce the need for sealing. (Id.) Humana states that in the interest of judicial economy and given the overlapping confidential information appearing in Humana's opposition and Relator's associated briefing, Humana will file a consolidated motion to seal permanently excerpts of its opposition and attached exhibits. (DN 207, at PageID #12259.)

Based on the forgoing, Humana's motion for leave to file under seal Humana's opposition to Relator's motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice or, in the alternative, Humana's motion for protective order, is denied. (DN 207) Based on Humana's pending motion DN 217, the Court directs the Clerk that DN 208 shall remain PROVISIONALLY SEALED pending further order from the Court.

3. Relator's Motion for Leave to File Relator's Reply in Support of his Motion to Compel Defendant Humana to Fully Comply With His 30(b)(6) Deposition Notice Provisionally Under Seal (DN 210)

Relator argues that the reply to his motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice and attached exhibits contain and reflect information that Humana has deemed confidential and protected material under the parties' confidentiality stipulation. (DN 210, at PageID # 12754.) Relator says that pursuant to its confidentiality stipulation, Relator is filing his motion provisionally under seal and Humana is then required to submit a brief to the Court as to why sealing is required and whether redaction could eliminate or reduce the need for sealing. (Id.) Relator sets forth no other arguments in its two-paragraph motion. (Id.) Humana did not file a response to the instant motion to seal.

Based on the foregoing, Relator's motion for leave to file his reply in support of his motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice provisionally under seal (DN 210) is DENIED. Based on Humana's pending motion DN 217, the Court directs the Clerk that DN 211 shall remain PROVISIONALLY SEALED pending further order from the Court.

## III. ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

(1) Relator's Motion to Compel Defendant Humana Inc. to Fully Comply with Relator's 30(b)(6) Deposition Notice (DN 201) is **GRANTED IN PART** and **DENIED IN PART.**

    a. The motion to compel is **GRANTED** as to Topic No. 1(a)-(c), (e), (k)-(q).

    b. The motion to compel is **GRANTED** as to Topics No. 3, 8, 9, and 10 limited to the year 2018. The motion to compel is **GRANTED** as to Topics No. 2, 11, and 12.

    c. Humana is ordered to designate its additional or supplemental witnesses as substitute deponents by **October 18, 2019**.

    d. The motion to compel is **GRANTED** as to Topic No. 3; however Relator is limited to reopening the depositions of Mr. Liss or Ms. Diamond.

    e. The motion to compel is **DENIED** as to Topics No. 6 and 8.

(2) The Court finds that Humana has failed to show a clearly defined and serious injury would result from the discovery sought. Accordingly, its motion for a Protective Order is **DENIED**. (DN 208.)

(3) Relator's motion for leave to file his motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice provisionally under seal (DN 200) is **DENIED WITHOUT PREJUDICE.**

(4) Humana's motion for leave to file under seal Humana's opposition to Relator's motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice or, in the alternative, Humana's motion for protective order (DN 207) is **DENIED WITHOUT PREJUDICE.**

(5) Relator's motion for leave to file his reply in support of his motion to compel Humana to fully comply with Relator's 30(b)(6) deposition notice provisionally under seal (DN 210) is **DENIED WITHOUT PREJUDICE**.

(6) The Court directs the Clerk that DNs 201, 208, and 211 shall remain **PROVISIONALLY UNDER SEAL** pending further orders from the Court.

Colin H Lindsay, Magistrate Judge
United States District Court

October 16, 2019

cc: Counsel of record