**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

UNITED STATES OF AMERICA *ex rel.*
STEVEN SCOTT,

         Plaintiff,

   v.

HUMANA INC.,

         Defendant.

Civil Action No. 3:18-cv-00061-GNS-CHL

**PLAINTIFF-RELATOR'S OPPOSITION TO DEFENDANT HUMANA INC.'S
MOTION TO COMPEL EXPERT WITNESS DEPOSITION TESTIMONY AND
RESPONSES TO REQUESTS FOR PRODUCTION AND INTERROGATORIES**

At the very outset of discovery, Plaintiff-Relator Steven Scott ("Relator") made clear to Defendant Humana Inc. ("Humana") that his communications with the government were subject to a common-interest privilege, which is created by virtue of the relationship the False Claims Act ("FCA") establishes between the government and relators who pursue cases on its behalf. Humana has never before challenged or disputed this established privilege. Now, after the completion of fact and expert discovery, and as briefing on the parties' dispositive and *Daubert* motions is being finalized, Humana has manufactured a privilege dispute out of whole cloth, feigning surprise that the government and Relator have been communicating about this FCA case in which the government is the real party in interest. There is no basis for Humana's contentions that Relator has improperly concealed communications with the government, including privileged communications involving his retained expert, Richard Foster.

As a matter of law, Relator and the government stand in the same shoes and are entitled to a common-interest privilege protecting all communications of otherwise privileged

information.  All of Mr. Foster's communications with the government pertaining to his expert engagement are attorney work product and shielded from discovery pursuant to that privilege. The only exception is communications concerning facts or data required to be disclosed under Federal Rules of Civil Procedure 26(a)(2)(B) and 26(b)(4)(C) – *i.e.*, information that Mr. Foster considered in forming the opinions he intends to offer at trial, or assumptions that he relied upon in forming those opinions, all of which he disclosed with his expert reports.  As Mr. Foster states in the sworn declaration accompanying this Opposition, *none* of his communications with the government concerns any of this information.  Moreover, because Mr. Foster is not a party to this litigation, he was under no obligation to log his privileged communications with the government.

Relator has fully complied with his discovery obligations, and neither Relator nor the government has waived the privilege.  Relator has produced all non-privileged communications responsive to Humana's RFPs, and, pursuant to an agreement entered into by the parties more than two years ago, Relator had no obligation to log his privileged communications with the government.

## BACKGROUND

### I.      The Government Is the Real Party in Interest in This Case

This FCA case concerns Humana's fraudulent conduct in bidding for and obtaining federal government contracts from the Centers for Medicare & Medicaid Services ("CMS") to provide prescription drug insurance.  Relator filed this action on behalf of the government, which remains the real party in interest.  *See United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 341-42 (6th Cir. 2000); 31 U.S.C. § 3730(b)(1) (FCA actions are "brought in the name of the Government").  The FCA "makes clear that plaintiff and the government essentially stand in the same shoes as against the defendants" and "sets forth a scheme whereby plaintiff and the

government act together to prosecute the action." *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal. 1996). The government may intervene in a relator's case and assume "primary responsibility for prosecuting the action," 31 U.S.C. § 3730(c)(1), permit the relator to proceed and conduct the action, *id.* § 3730(c)(3), or seek to intervene later for "good cause," *id.* Regardless of whether it intervenes, the government receives "at least seventy percent of any recovery" and must consent to any settlement. *Health Possibilities*, 207 F.3d at 340-41. This relationship necessitates continued confidential consultation between the government and the relator about litigation strategy throughout the duration of a *qui tam* case, whether or not the government intervenes.

Here, Relator filed his Complaint in April 2016 and the Department of Justice ("DOJ") – on behalf of its client the United States and in partnership with Relator and Relator's counsel – began to "dedicate[ ] significant time and resources to [its] investigation" of Relator's claims. Dkt. No. 90 at 1. Because of "the serious nature and scope of [Relator's] allegations" and Humana's delays in "respond[ing] to the United States' inquiries," DOJ was unable to complete its investigation by the September 12, 2017 deadline for the government's intervention decision, and thus was forced to decline intervention at that time. *See id.* at 1-2; Dkt. No. 27 at 1. However, DOJ continued investigating Humana's conduct after its intervention decision, *see* Dkt. No. 90 at 1-2, and, as DOJ made clear in its recent Statement of Interest, its decision not to intervene "should not give rise to any inferences regarding the merits of the action" and may be motivated by its determination that "relator's counsel is well-suited to litigate the matter successfully," Dkt. No. 403 at 2.

CMS, whose program is at the core of Relator's allegations about Humana's fraud and is DOJ's client, is necessarily part of the government's joint litigation strategy with Relator.

Humana served a *Touhy* request on CMS on June 4, 2018.  *See* Dkt. No. 379-09.[1]  On November

13, 2018, Humana moved to compel CMS to comply with its subpoenas in a separate action in

the United States District Court for the District of Columbia.  *See U.S. ex rel. Scott v. Humana,*

*Inc.*, No. 1:18-mc-00168-RDM (D.D.C.) ("*Scott*").  CMS opposed producing some of the

information at issue not because it had no interest in the successful prosecution of Relator's

claims, as Humana asserts, but because the information in question was "of such a character that

it [could not] be disclosed without revealing highly proprietary trade secrets and confidential

business information."  CMS Opp. to Humana's Mot. to Compel, *Scott*, Dkt. No. 8 at 5.  As

CMS noted, if the court granted Humana's motion, "it would create an untenable result:  a

company identified by a *qui tam* relator as potentially perpetrating a fraud and under

investigation by the Federal Government based upon those allegations would, as a result of that

investigation, gain access to confidential data of its competitors to which it would otherwise not

be privy."  *Id*. at 8.  CMS, Humana, and Relator later agreed to a protective order governing

CMS's production, and CMS produced a limited set of documents to Humana.  Humana chose

not to depose any CMS personnel.

---

[1] Because CMS is a real party in interest in this litigation, but not an actual party, *see U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934 (2009), the *Touhy* regulations adopted by the United States Department of Health and Human Services – the agency to which CMS reports – apply.  *See* 45 C.F.R. §§ 2.1-2.6 (providing that litigants seeking testimony or documents from CMS must do so through subpoenas accompanied by a letter explaining the propriety of the requests).  As a formality, Relator served a *Touhy* request on CMS on November 14, 2018, but he did not seek production of documents beyond that which CMS ultimately agreed to produce to Humana.  *See* Dkt. No. 379-10.

II.     **In Furtherance of Relator's and the Government's Common Interest in This Case, Relator's Retained Expert Met with the Government on Matters Unrelated to His Expert Opinions**

Relator has retained Richard Foster, the former Chief Actuary for CMS, as an expert in this case. *See* Dkt. No. 379-12 (Foster Rep.) ¶ 8. Relator's counsel first contacted Mr. Foster about this case and asked him to serve as a consulting non-testifying expert for Relator in June 2018. *See* Dkt. No. 388-05 (Foster Tr.) at 16:16-21. At all times, Mr. Foster was working under an agreement with Relator's counsel and had no formal relationship with the government, but, pursuant to that agreement with Relator, Mr. Foster has consulted with the government in connection with this case. *See* Decl. of Richard S. Foster in Supp. of Pl.-Rel.'s Opp'n to Def. Humana's Mot. To Compel Expert Witness Dep. Test. & Resps. to Reqs. for Produc. & Interrogs. ¶ 2 (Oct. 9, 2020) ("Foster Decl."). Mr. Foster met or spoke with the government about this case on three occasions in 2018. On June 25, 2018, Mr. Foster joined a teleconference with Relator's counsel and attorneys from DOJ. On August 7, 2018, Mr. Foster and Relator's counsel met in person with attorneys from DOJ. And on October 16, 2018, Mr. Foster met in person with attorneys from DOJ and CMS, as well as CMS actuaries.

At the end of 2018, Relator's counsel asked Mr. Foster to serve as a testifying expert witness. *See* Foster Tr. 16:21-17:2. Mr. Foster continued to work as a consulting expert, however, and, as part of his work as a consulting expert, Mr. Foster again met and spoke with the government in early 2019. On January 31, 2019, Mr. Foster met with attorneys from DOJ and with attorneys and non-attorneys from DOJ's client, CMS. On March 27, 2019, Mr. Foster joined by phone a meeting between Relator's counsel, attorneys from DOJ, attorneys from CMS, and CMS employees.[2] Like his previous meetings with the government, these discussions did

---

[2] During his deposition, Mr. Foster could not precisely recall "how many discrete interactions" he had with the government, although he did confirm that they occurred in the

not concern facts or assumptions on which Mr. Foster relied in forming his expert opinions, or anything else relating to his expert opinions.  *See* Foster Decl. ¶ 8.  Instead, the discussions at this meeting concerned attorney work product regarding Relator's claims, and thus were all protected by the common-interest privilege.

Mr. Foster's expert opinions in this case are based upon his "education, knowledge, and understanding of CMS's actuarial requirements for PDP bids," including his experience "as the Chief Actuary for CMS from February 1995 through January 2013."  Foster Rep. ¶ 3.  As Chief Actuary, Mr. Foster was instrumental in the "development and implementation" of the Part D program in 2003 and in "establishing the formal regulatory and other standards for submitting actuarial bids to CMS for Medicare Part D prescription drug plans, as well as the actuarial review and audit processes for those bids."  *Id*. ¶ 8.

Mr. Foster produced an affirmative expert report on April 21, 2020, *see* Dkt. No. 379-12, a rebuttal report on June 15, 2020, *see* Dkt. No. 379-13 (Foster Rebuttal Rep.), and a supplemental report on August 21, 2020, *see* Dkt. No. 380-04 (Foster Suppl. Rep.).  Mr. Foster's affirmative expert report provides Mr. Foster's opinions regarding the critical importance of the Part D program's actuarial equivalence requirement and whether the alleged false representations in Humana's bids were capable of influencing the payment of money to Humana by CMS.  *See* Foster Rep. ¶ 1.  Mr. Foster's rebuttal report provides Mr. Foster's evaluation of and opinions concerning three specific assertions made in the affirmative expert report of Humana's expert, Ross Winkelman, filed on April 21, 2020.  *See* Foster Rebuttal Rep. ¶¶ 1-2.  Mr. Foster's

---

second half of 2018, as discussed above, and again in early 2019.  *See* Foster Tr. 34:4-18.  Mr. Foster attempted to correct his testimony concerning this timeline through his errata sheet, but Humana objected to those clarifications, and Mr. Foster agreed to withdraw them.  *See* Ex. A, 9/3/20 Email from A. Santella (Humana) to K. Cooper (Relator).

supplemental report provides Mr. Foster's opinions on statements made by Jennifer Lazio, the Director of the Parts C&D Actuarial Group in the Office of the Actuary, in her August 7, 2020 declaration produced in this case. *See* Foster Suppl. Rep. ¶¶ 3-4.  In that report, Mr. Foster simply opines that Ms. Lazio's statements are consistent with the opinions expressed in his affirmative and rebuttal reports. *See id.* ¶¶ 4, 6, 8, 10.

None of the facts or data Mr. Foster considered or the assumptions on which he relied in forming the opinions in any of his reports came from any conversations he had with anyone in the government since he has been retained in this case. *See* Foster Decl. ¶¶ 4-7.  Moreover, each of Mr. Foster's reports disclosed all of the materials that he considered in forming his opinions, in compliance with Rule 26(a)(2)(B).  *See* Foster Rep. at App'x B; Ex. B, Foster Rebuttal Rep. App'x. B; Foster Suppl. Rep.  Those materials do not include any communications between Mr. Foster and current CMS officials, and, as Humana acknowledges (at 10 n.4), Mr. Foster did "not purport[ ] to speak on behalf of CMS" in his role as a testifying expert in this matter.  Foster Tr. 37:2-6, 117:6-14.  Mr. Foster confirmed this at his deposition, testifying to the materials he considered and the bases for his opinions, none of which included any communications he had with DOJ or CMS about this case.  Mr. Foster also testified that in forming his report he had *not* interviewed any CMS officials about their views on the disputed issues in this case.  *Id.* at 40:8-12.  Humana chose not to ask Mr. Foster whether he had considered any communications with DOJ or CMS in forming his opinions.  But if Humana had asked him that question, Mr. Foster would have confirmed that he had not.  *See* Foster Decl. ¶¶ 4-7.

## III. Humana Has Known of Relator's Privilege Claims for More Than Two Years, and Has Never Before Challenged Them

Since the outset of discovery in this action more than two and a half years ago, Relator has maintained that the common-interest privilege protects from disclosure privileged

communications and work product shared between Relator's counsel and the real party in interest – the government – concerning the prosecution of this case.  The parties also have been in agreement for more than two years that there is no requirement that Relator log such privileged communications on a privilege log.  Humana has never, until now, challenged Relator's common-interest-privilege assertions in response to Humana's discovery requests, or his privilege log, which it has had since May 2018.

*Humana's First Set of RFPs*.  On March 27, 2018, Humana served its first set of RFPs on Relator.  *See* Dkt. No. 379-02.  RFP No. 7 asked Relator to produce "[a]ny Documents You provided to the Government Concerning the allegations in the Complaint," *id*. at 7, and RFP No. 9 asked Relator to produce "[a]ny Documents Concerning Communications between You and the Government Concerning the allegations in the Complaint," *id*.  Humana's RFPs defined "You" to include Relator and "any employees, consultants, experts, or contractors acting or purporting to act on his behalf."  *Id*. at 3.  The RFPs defined "Government" to mean "the United States" and "any political subdivision, . . . agency, department, or unit thereof," including CMS and DOJ.  *Id*. at 2.  Relator objected to both definitions because they called for the production of information that is privileged or confidential.  Ex. C, Pl.-Rel.'s Objs. & Resps. to Def.'s Am. First Set of Reqs. for Produc. at 4, 6 (Apr. 13, 2018).  Relator also objected to RFP Nos. 7 and 9 because each request sought "information protected by the attorney-client, work product, and common interest privileges" and "documents that are not within [Relator's] possession, custody, or control."  *Id*. at 13.  Thus, Relator agreed to produce only "non-privileged documents responsive to this Request to the extent that such documents are in his possession, custody, or control."  *Id*.  Humana has never challenged these objections.

*Humana's First Set of Interrogatories*.  On April 12, 2018, Humana served its first set of Interrogatories on Relator.  *See* Dkt. No. 379-03.  Interrogatory No. 19 asked Relator to

"[i]dentify by name any Persons, including . . . current or former Government employees, with whom You Communicated in any manner Concerning the allegations in the Complaint."  *Id*. at 12.  Interrogatory No. 20 asked Relator to "[i]dentify by name any Persons, including . . . current or former Government employees, with whom You shared Documents or who shared Documents with You Concerning the allegations in the Complaint."  *Id*.  Although Humana's Interrogatories, like the RFPs, defined "You" to include Relator and his consultants or experts, *id*. at 3, Relator objected to this definition and informed Humana that he construed Interrogatory Nos. 19 and 20 "as seeking only the Identity of Persons with whom *Relator*" communicated or shared documents, *see* Ex. D, Pl.-Rel.'s Objs. & Resps. to Def.'s First Set of Interrogs. at 56, 59 (May 14, 2018) (emphasis added).  Again, Humana has never challenged these objections.

    *The Parties' Privilege Log Agreement*.  The parties negotiated their respective obligations to search for, produce, and log documents as they prepared to make their productions.  In May 2018, the parties agreed to exclude from their privilege logs "communications between the party and their respective litigation counsel" and "documents created by litigation counsel in anticipation of or during litigation."  *See* Dkt. No. 379-05 (5/23/18 Email from W. Buffaloe (Humana) to T. Schultz (Relator), et al.) at 1.  For Humana, this meant that it would not log communications between Humana and its outside counsel O'Melveny, and between Humana and attorneys within Humana's Law Department assisting with the litigation of this case, but there was no exception for communications between Humana's litigation counsel and counsel for non-parties.  *See id*. at 2.  For Relator, as expressly set forth in the parties' correspondence, he would "not agree to log communications between litigation counsel and counsel for the United States."  *See* Dkt. No. 379-04 at 4.[3]  Relator served his privilege log on Humana on May 29, 2018.  *See*

---

[3] Humana's attempt to deny the parties' agreement is meritless.  Humana did not respond to Relator's letter making clear that he would not log communications with the government,

Ex. E, Pl.-Rel.'s Log of Material Withheld.  Humana has never challenged Relator's privilege

log, which, in accordance with the parties' agreement, did not include any communications with

the government.

      *The Parties' 2018 Requests To Produce Documents Related to Subpoenas.*  Around this

time, the parties were also disputing Humana's refusal to produce its communications with three

non-parties in the case – Milliman, Walmart, and Walgreens.  *See* Dkt. No. 286 at 3.  In the

course of attempting to obtain the subpoenaed documents, Relator learned from counsel to those

non-parties that Humana's counsel had discussed Relator's subpoenas with them.  *Id.*  Humana

refused to produce its communications with the non-parties about Relator's subpoenas, even

though Humana and the non-parties shared no common interest with respect to Relator's

subpoenas.  *Id.*  During a July 24, 2018 telephonic hearing, the Court explained that Humana had

the burden of showing that the common-interest privilege protected its communications with the

non-parties concerning Relator's subpoenas and that, "in the face of a more specific [RFP]" from

Relator, the Court was "skeptical" that "any privilege would apply."  Telephonic Status

Conference Tr. 29:16-30:11, Dkt. No. 107 at 29:16-30:8 (July 24, 2018) ("July 24 Tr.").

      Promptly following the teleconference, on July 30, 2018, Relator served a more specific

RFP requesting communications between Humana's attorneys and the subpoenaed non-parties

relating to any subpoena served in the case.  *See* Dkt. No. 137-03 at 2.  On November 21, 2018,

Humana served two similar, and narrow, RFPs on Relator.  RFP No. 171 asked Relator to

produce "[a]ll Documents Concerning Communications between You or Your attorneys and any

non-party that has been subpoenaed in this action *Concerning any subpoena served in this*

---

which closed the parties' negotiation on the scope of the parties' privilege logs and demonstrated
Humana's acquiescence.

*action*." *See* Dkt. No. 379-06 at 6 (emphasis added).  RFP No. 172 asked Relator to produce

"[a]ll Documents Concerning Communications between You or Your attorneys and any non-

party that has been subpoenaed in this action *Concerning any Discovery Deadlines in this*

*action*." *Id*. (emphasis added).  Those RFPs did not encompass *all* communications with

subpoenaed non-parties.  Relator objected to RFP Nos. 171 and 172 on privilege grounds.  *See*

Ex. F, Pl.-Rel.'s Objs. & Resps. to Def.'s Second Set of Reqs. for Produc. at 4-5 (Dec. 21, 2018).

Relator produced to Humana all "non-privileged documents" responsive to these RFPs, *see id.*,

and Humana did not challenge Relator's production.

## IV.     One Month Before the Close of Briefing on the Parties' Dispositive and *Daubert* Motions, Humana Has Invented a Baseless Privilege Dispute

In the more than two years since Relator first claimed a common-interest privilege with

the government and served his privilege log, Humana never challenged or disputed Relator's

privilege claims.  It is only now, as briefing on the parties' dispositive and *Daubert* motions is

coming to a close, that Humana has manufactured the instant privilege dispute.

On July 31, 2020, Humana demanded that Relator produce all of Mr. Foster's

communications with the government since he was retained as Relator's expert.  *See* Dkt. No.

379-14 at 4-5.  In connection with that demand, Humana made the preposterous suggestion that

it was Mr. Foster's July 17, 2020 deposition testimony that he had met with CMS in 2019 that

gave Humana its first indication that "Relator and/or Relator's counsel may have had ongoing

communications with CMS" during this FCA case in which the government is the real party in

interest.  *Id.* at 5.  As Relator explained in response, any communications Mr. Foster had with the

government are protected by the common-interest privilege; the parties had long ago agreed that

none of the privileged communications with the government need be logged on a privilege log;

and Humana never before had taken issue with Relator's privilege log claims.  *See id.* at 2.

In an August 19, 2020 email response, Humana made no effort to address Relator's assertion of a common-interest privilege or point to any authority undermining the case law Relator cited.  *See id*. at 1.  Rather, Humana asserted that the parties had reached impasse, *see id*. at 2, and contacted the Court to obtain permission to file this motion, *see* Dkt. No. 379-15.

## ARGUMENT

**I.     All of Mr. Foster's Communications with the Government Are Privileged**

### A.     The Common-Interest Privilege Applies to All of Mr. Foster's Communications with the Government

Relator has a common-interest privilege with the government that protects from discovery all communications, except those that must be disclosed under Rule 26, that Mr. Foster has had with the government since he was retained as an expert witness.  As courts repeatedly have recognized, in FCA cases, "the government has a substantial interest in seeing that the litigation is successful against the defendants, *whether or not it elects to intervene in the action*. For all practical purposes, plaintiff and the government are essentially the same party.  All of plaintiff's claims, litigation strategies, and ultimate goals, are all asserted on behalf of the government."  *Burroughs*, 167 F.R.D. at 686 (emphasis added); *see also*, *e.g*., *U.S. ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 26 (D.D.C. 2002).[4]

It is therefore well-established that, regardless of whether the government has intervened in a *qui tam* suit, FCA "plaintiff[s] and the government have sufficient commonality of interests such that they can successfully assert the joint prosecution [or common-interest] privilege" with

---

[4] Although the common interest exists regardless of whether relator and the government have reduced the agreement to writing, *see In re Rivastigmine Patent Litig*., 2005 WL 2319005, at *4 (S.D.N.Y. Sept. 22, 2005) ("no . . . written documentation is required" to "demonstrate actual cooperation toward a common legal goal"), *order aff'd*, 2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005), here, Relator and the United States have entered into a written common-interest agreement.  At the Court's request, Relator can provide it to the Court for *in camera* review.

respect to all of their communications during the course of litigation.  *See Burroughs*, 167 F.R.D. at 686; *see also Amphastar Pharm., Inc. v. Aventis Pharma SA*, 2013 WL 12136380, at *5 (C.D. Cal. Aug. 9, 2013) ("[T]he Court finds that Relator and the Government have sufficient commonality of interests such that they can successfully assert the joint prosecution privilege, despite the Government's election to not intervene in this matter."), *order clarified on other grounds*, 2013 WL 12149230 (C.D. Cal. Sept. 27, 2013); *Purcell*, 209 F.R.D. at 26; *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 562 (C.D. Cal. 2003); *U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2015 WL 4609742, at *3 (E.D. Tex. July 31, 2015).  It is also settled law that the common-interest privilege shields from discovery the exchange of privileged information not just between Relator and DOJ, but also between Relator and CMS.  *See Miller, Anderson, Nash, Yerke & Wiener v. U.S. Dep't of Energy*, 499 F. Supp. 767, 771 (D. Or. 1980) (party did not waive the attorney-client privilege by turning a privileged memorandum over to a government agency "with similar interests," which was in the process of investigating lawsuit).[5]  Such communications between relators and the government are essential to carrying out the purposes of the FCA, which seeks to support the government by drawing on private resources to "bolster[] the Government's fraud enforcement effort."  S. Rep. No. 99-345, at 8 (1986).

Here, Mr. Foster was retained as a consulting expert and then a testifying expert to assist Relator in the prosecution of this suit, and he also consulted with the government pursuant to his

---

[5] *Burkhead & Scott, Inc. v. City of Hopkinsville*, which Humana cites (at 20) for the proposition that courts apply the common-interest privilege narrowly in the government context, is irrelevant.  *See* 2014 WL 6751205 (W.D. Ky. Dec. 1, 2014).  That case involved two defendant government entities that claimed privilege for communications between themselves, implicating the court's concerns relating to "the strong public interest in open and honest government."  *Id*. at *2-3.  *Burkhead* did not involve an FCA suit, in which it is well-established that the relator and the government stand in the same shoes in prosecuting on behalf of the public-interest claims against a defendant who is alleged to have defrauded the public.

agreement with Relator.  The work he conducted in this capacity is quintessential attorney work product that is protected from discovery.  *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (work-product privilege protects the work of consulting experts); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1191 (11th Cir. 2013) (Rule 26(b)(4)(C) provides work-product protection for attorney-testifying expert communications regardless of the form of the communications); *Lindon v. Kakavand*, 2014 WL 12648464, at *1 (E.D. Ky. Apr. 29, 2014) ("Rule 26(b)(4)(D) essentially extends the work product protection codified in Rule 26(b)(3) to facts known and opinions held by non-testifying, consulting experts."); *Merriweather v. United Parcel Serv., Inc.*, 2018 WL 3572527, at *11 (W.D. Ky. July 25, 2018) (photographs taken by consulting expert are protected work product).

As detailed below, *see infra* pp. 18-20 , the sole exceptions are for information required to be disclosed under Rules 26(a)(2)(B) and 26(b)(4)(C), which Mr. Foster disclosed in his reports.  *None* of Mr. Foster's communications with the government involved information required to be disclosed under Rules 26(a)(2)(B) and 26(b)(4)(C) or even concern the core subject matter of his expert reports – the critical importance of the actuarial equivalence requirement.  *See supra* pp. 5-6.

Instead, Mr. Foster's communications with the government concerned core attorney work product that he was instructed by Relator's attorney to undertake.  Any communication of this work product between the government and Relator is covered by the common-interest privilege, and therefore exempt from discovery.  *See Travelers Cas. & Sur. Co. v. Excess Ins. Co.*, 197 F.R.D. 601, 606 (S.D. Ohio 2000) (privileged documents containing legal advice shared between companies coordinating defense against insurance claims were protected from disclosure by the common-interest rule).  Numerous courts have found that the common-interest privilege protects

the communications of a consultant's work product to common-interest partners.  *See Lanelogic,*

*Inc. v. Great Am. Spirit Ins. Co.*, 2010 WL 1839294, at *4 (N.D. Tex. May 6, 2010)

(communications between common-interest partners and consultant hired by one of the common-

interest partners are privileged); *FaZe Clan Inc. v. Tenney*, 2020 WL 4597321, at *2 (S.D.N.Y.

Mar. 9, 2020) ("documents prepared by a party's non-attorney 'consultant' may constitute work

product," and "an attorney does not waive the work product protection by disclosing privileged

documents to a third party with a common interest, particularly when that third party's advice

will bear on the attorney's litigation strategy").  The presence of CMS employees at these

meetings, in addition to DOJ attorneys, does not affect the applicability of the privilege.  *See*

*Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 792 (2007) ("[W]henever the

United States, its agencies, or officers are involved in litigation, an attorney-client relationship

exists between DOJ attorneys and an affected federal agency and its officers.").

        Humana's arguments to the contrary fail.  Incredibly, Human asserts (at 19-20) that

Relator cannot prove the existence of a common-interest relationship with the government during

the period of Mr. Foster's engagement in this case because DOJ declined to intervene in

September 2017.  But it is settled law that the common-interest privilege applies even in

non-intervened cases.  *See Amphastar Pharm.*, 2013 WL 12136380, at *5.  The ability of relators

and the government to have privileged communications about the conduct of the litigation is

essential, given the government's unique role in all FCA cases, including non-intervened ones.

*See supra* p. 13.  Humana also ignores the facts, as described above, that in this case DOJ

declined to intervene at that time only because it was unable to complete its investigation by the

intervention deadline, but continued investigating Humana's conduct thereafter, and made clear

in a recent Statement of Interest that its intervention decision has no bearing on the merits of this action.  *See supra* p. 3.

There is no basis for Humana's assertion (at 19 n.8) that it is entitled to Mr. Foster's communications with the government even if they are privileged.  "A party seeking . . . discovery" of privileged "attorney-expert communications" must show "that the party has a substantial need for the discovery and cannot obtain the substantial equivalent without undue hardship."  Fed. R. Civ. P. 26(b)(4) advisory committee's note to 2010 amendment.  "It will be rare for a party to be able to make such a showing."  *Id.*  Humana does not come close to making that showing here.  Its only claimed basis of substantial need is speculation that the communications go to Humana's materiality defense that the government continued to pay Humana after it was aware of Relator's *allegations.*  But awareness of mere allegations is irrelevant to the materiality inquiry as a matter of law.  *See* Dkt. No. 388 at 17-18; Dkt. No. 403 at 4-5.[6]

Humana also errs in suggesting (at 20) that because Relator served a *Touhy* request on CMS, rather than having CMS voluntarily produce documents to Relator, CMS has no interest in the outcome of this case.  The *Touhy* process is mandated by federal regulation, irrespective of any common-interest relationship between the agency and the litigant seeking documents or

---

[6]  Nor could Mr. Foster's conversations with CMS show that CMS had actual knowledge that Humana misrepresented the value of the Walmart Plan.  CMS has submitted a declaration stating that at the time it awarded the contracts it did not have Humana's internal financial projections about whether Humana expected the Walmart Plan to be actuarially equivalent, *see* Dkt. No. 350-05 (Lazio Decl.) ¶ 9, and Humana continues to deny that it misrepresented the value of the Walmart Plan.  Moreover, Humana had every opportunity during the discovery period to ascertain whether CMS was aware of Humana's misrepresentations.  Instead, Humana chose to seek a limited declaration from CMS that avoids addressing this issue.  While Humana may be unhappy with the results of its litigation strategy, that does not entitle it to reopen discovery and probe Relator's communications with the real party in interest.  In any event, as explained above, Mr. Foster's communications with the government did not involve materiality.

testimony from the agency.  *See* 45 C.F.R. §§ 2.1-2.6.  Nor do CMS's statements in its separate

action with Humana concerning Humana's *Touhy* request bear on the existence of Relator's

common-interest relationship with the government.  As explained above, CMS opposed

producing sensitive and proprietary information to Humana not because it had no interest in the

successful prosecution of Relator's claims, but because such a production would give FCA

defendants like Humana an unfair advantage over competitors.  *See supra* p. 4.

Humana's attempt (at 18-19) to draw a false equivalence between Relator's common-

interest privilege with the government and Humana's claimed (and disputed) common interest

with non-parties Milliman, Walmart, and Walgreens misses the mark entirely.  Whereas an FCA

relator's communications with the government (the real party in interest) are shielded from

discovery as a matter of law, the same is not true with respect to Humana's communications with

its business partners pertaining to Relator's subpoenas.[7]  As Relator has explained in multiple

rounds of briefing in this case concerning Humana's improper claims of privilege over its

communications with non-parties Milliman, Walmart, and Walgreens, *see* Dkt. Nos. 137, 147,

286, 303, those privilege claims are by their very nature highly fact-dependent, *see Broessel v.*

*Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 220 n.3 (W.D. Ky. 2006) (the fact that a party shares a

business relationship affected by litigation with the subpoenaed non-parties is not sufficient to

establish the existence of the common-interest privilege).  Thus, any asserted privilege can be

established only through the production of a credible and detailed privilege log establishing the

---

[7] The parties' agreement on logging communications reflects this distinction.  While the parties agreed not to log communications between the parties and their litigation counsel and communications between Relator's litigation counsel and the United States (the real party in interest), Humana did not exclude communications with counsel for non-parties with whom it had a business interest, and was therefore required to log those communications if it withheld otherwise discoverable communications with them on the basis of an asserted privilege.

basis for the claimed privilege, which Humana repeatedly has refused to provide, *see*, *e.g*., Dkt.

No. 223, or, lacking that, *in camera* review, which the Court recently ordered, *see* Dkt. No. 384.[8]

    **B.**    **Humana Has No Right to Discovery of Mr. Foster's Communications with the Government Under Federal Rule of Civil Procedure 24(b)(4)**

        **1.**    **The Rule 26(b)(4)(C) Exceptions to Privilege for Testifying Experts Do Not Apply**

As explained above, *see supra* p. 5, Relator asked Mr. Foster to be a testifying expert

witness in this case in late 2018.  Everything Mr. Foster considered in forming his expert

opinions in this case is disclosed in his expert reports, which contain all of the information

required under Rule 26(a)(2)(B).

Humana's contention (at 15-17) that Mr. Foster should be compelled to testify about his

communications with the government pursuant to Rule 26(b)(4) because DOJ and CMS are not a

"party's attorney" fails.  Rule 26(b)(4) "protect[s] communications between the party's attorney

and [testifying experts]" but "does not exclude protection under other doctrines, such as privilege

or independent development of the work-product doctrine."  Fed. R. Civ. P. 26(b)(4)(C) &

advisory committee's note to 2010 amendment.  Nothing in this rule limits the common-interest

privilege protecting communications between Mr. Foster and the government.

Indeed, the exact opposite is true.  The advisory committee's note to Rule 26 states that

"[t]he protection for communications between the retained expert and 'the party's attorney'

should be applied in a realistic manner," and many situations "may . . . justify a pragmatic

application of the 'party's attorney' concept."  Fed. R. Civ. P. 26(b)(4)(B)-(C) advisory

---

[8] As Humana also notes (at 19-20), Relator made "repeated demands for additional details regarding Humana's agreements with its common interest partners."  If Humana legitimately questioned Relator's common interest with the government, which Relator has asserted for more than two years, it should have similarly demanded further support for this position long before now.

committee's note to 2010 amendment.  Because Relator "and the government essentially stand in the same shoes as against the defendants" and "act together to prosecute the action," *Burroughs*, 167 F.R.D. at 686, "a pragmatic application of the 'party's attorney' concept" in this case, Fed. R. Civ. P. 26(b)(4)(B)-(C) advisory committee's note to 2010 amendment, includes both Relator's counsel and counsel for the government, the real party in interest and Relator's common-interest partner.  Accordingly, Rule 26(b)(4)(C) must be read to protect from discovery not only communications between Mr. Foster and Relator's attorneys, but also those communications involving Mr. Foster and attorneys from DOJ and CMS engaged with Relator in prosecuting this case.  That non-attorneys from DOJ's client, CMS, were present during these communications between party attorneys and Mr. Foster does not alter the analysis.  As noted above, there is an attorney-client relationship between DOJ attorneys and CMS officials, *see Blue Lake Forest Prods.*, 75 Fed. Cl. at 792, and, by virtue of the common-interest relationship between Relator and the government, Relator, his counsel, and his experts can speak with the government without waiving privilege.  Any conclusion otherwise would not sufficiently guard the mental impressions, conclusions, opinions, or legal theories of attorneys that Rule 26(b)(4) is designed to protect.[9]

---

[9] The cases on which Humana relies (at 16-17) are not to the contrary.  None of those cases involved communications between an expert and *any* attorneys, let alone involved communications with attorneys for the real party in interest.  *See EMW Women's Surgical Ctr., P.S.C. v. Meier*, 2018 WL 10215971, at *2 (W.D. Ky. Nov. 9, 2018) (involving communications among experts or between experts and non-attorneys); *Whole Women's Health v. Lakey*, 301 F.R.D. 266, 269-71 (W.D. Tex. 2014) (involving communications between non-attorney representative and experts); *United States v. Veolia Env't N. Am. Operations, Inc*., 2014 WL 5511398, at *6-7 (D. Del. Oct. 31, 2014) (involving communications between non-attorney employees and experts), *amended on other grounds*, 2014 WL 6449973 (D. Del. Nov. 17, 2014); *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 513 (N.D. Cal. 2012) (involving communications between non-attorney employees and experts), *aff'd sub nom. Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014); *Hinchee*, 741 F.3d at 1195 (involving communications among experts).

The only exceptions to Rule 26(b)(4)(C) are communications relating to the expert's compensation, facts or data the attorney provided to the expert that the expert considered in forming his or her opinions, and assumptions the attorney provided to the expert that the expert relied on in forming the opinions.  *See* Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii).  Because the communications at issue here had nothing to do with any of those topics, *see* Foster Decl. ¶ 8, Rule 26(b)(4) protects them from discovery, and Mr. Foster cannot be compelled to provide testimony to Humana concerning them.  No further disclosures are required of Mr. Foster in his capacity as a testifying expert.

### 2.   Rule 26(b)(4)(D) Protects Mr. Foster's Communications with the Government

Mr. Foster's status as a consulting expert also precludes Humana's discovery of his communications with the government.  Mr. Foster served in this role both before and after he was asked to be a testifying expert, including in meetings and discussions with the government in 2018 and 2019.

To the extent Humana argues (at 14-17) that Mr. Foster should be ordered to provide deposition testimony as to his communications with the government, which were made in his capacity as a consulting expert, Rule 24(b)(4)(D) precludes this discovery:  "a party may not, by interrogatories or deposition, discover facts known or opinions held by a[] [consulting] expert." Fed. R. Civ. P. 24(b)(4)(D).  There are two exceptions to this Rule, but neither applies here.  One exception is for discovery from consulting experts "as provided in Rule 35(b)," Fed. R. Civ. P. 24(b)(4)(D)(i), which concerns examiners' reports in connection with physical and mental examinations, *see* Fed. R. Civ. P. 35(b).  The other exception is when there are "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  Fed. R. Civ. P. 24(b)(4)(D)(ii).  Humana's only claim for

reopening Mr. Foster's deposition to examine his discussions with the government is speculation that those discussions concerned Humana's materiality defense.  They did not.  *See* Foster Decl. ¶ 8.[10]  Accordingly, Humana has no need at all for facts or opinions from Mr. Foster relating to his communications, and thus "exceptional circumstances" do not exist here.

Moreover, to the extent Humana relies on the relatively broad conception of discoverable information articulated in Rule 26(b)(1), that reliance is misplaced.  It is a fundamental rule of construction that "the specific trumps the general."  *Jackson, Tennessee Hosp. Co. v. W. Tennessee Healthcare, Inc*., 414 F.3d 608, 613 (6th Cir. 2005).  Here, although Rule 26(b)(1) sets forth general rules concerning discovery scope and limits, when it comes to the discoverability of Mr. Foster's communications as a testifying and consulting expert, the specific provisions of Rule 26(b)(4) govern.

## II.     Relator Complied with All Discovery Obligations Regarding Mr. Foster

### A.     Neither Relator nor Mr. Foster Is Required To Produce or Log Any Written Communications Between Mr. Foster and the Government

Humana is not entitled to a privilege log concerning Mr. Foster's privileged communications with the government.  Contrary to Humana's claims (at 18-19, 22), Rule 26(b)(5) provides that a privilege log is required only "[w]hen a *party* withholds information otherwise discoverable by claiming that the information is privileged."  Fed. R. Civ. P. 26(b)(5)(A) (emphasis added).  Mr. Foster is not a party to this litigation, and thus he was under

---

[10] For the reasons explained in Relator's Opposition to Humana's summary judgment motion and in the government's Statement of Interest filed in support of Relator, there is no legal basis for Humana's argument that the government's awareness of a relator's allegations, as opposed to actual knowledge of fraud, is relevant to the materiality inquiry.  *See* Dkt. No. 388 at 17-18; Dkt. No. 403 at 4-5.  In any event, Humana was free to investigate that purported defense during discovery, but it strategically chose not to do so.

no obligation to log his privileged correspondence with the government.[11]

Moreover, Relator is not obligated to produce or log any written communications between Mr. Foster and the government made at any time during the course of Mr. Foster's involvement in this case.  To begin with, it is far too late for Humana to claim (at 17) that such communications are responsive to Humana's RFP Nos. 7, 9, 171, and 172 and to Humana's Interrogatory Nos. 19 and 20.  *See supra* pp. 7-9, 10-11.  Relator timely objected to the scope of that discovery in 2018, and fact discovery is now closed.  Humana never raised any issue with Relator's contemporaneous objections and has therefore clearly "waived th[e] challenge" it asserts now.  *Sawatzky v. United States*, 2013 WL 3771269, at *4 (D. Colo. July 16, 2013); *see also United States v. Barron Collier Co*., 2015 WL 13811188, at *4 (D. Ariz. Dec. 24, 2015) ("[I]f, as [defendant] asserts, there is no merit to the Government's assertion of . . . privilege, [defendant] should have made that challenge much earlier, in time for the Court to rule on the privilege well before the close of discovery.").

In any event, because, as explained above, Mr. Foster's communications with the government were made in his capacity as a consulting expert, those communications are "entirely exempt from discovery."  *Ludwig v. Pilkington N. Am., Inc*., 2003 WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003).  For this reason, Rule 26(b)(5)(A) – which requires a privilege log only "[w]hen a party withholds information *otherwise discoverable*" (emphasis added) – does not apply.  *See Ludwig*, 2003 WL 22242224, at *3 ("Where documents are withheld under a claim that they are exempt from discovery altogether under Rule 26(b)(4)(B), there is no express requirement that a privilege log be produced."); *see also Leone v. Owsley*, 2013 WL 2352273, at

---

[11] Humana apparently understands this distinction.  It submitted a declaration from non-party Milliman in connection with its summary judgment motion, *see* Dkt. No. 345-89, but it did not produce or log communications made by Milliman in connection with that endeavor.

*4 (D. Colo. May 29, 2013) ("Plaintiff is not required to provide a privilege log for communications with his lawyer and experts during the course of this litigation.").  Because, as explained *supra* Part I.A, Relator and the government stand in the same shoes by virtue of the common-interest privilege, this principle applies just as equally to the government's communications with Mr. Foster in his capacity as a consulting expert as it does to Relator's communications with Mr. Foster.

**B.     Relator Has Produced All Non-Privileged Communications Responsive to RFP Nos. 171 and 172, and the Parties Agreed Relator Was Not Obligated To Log Any Privileged Communications**

Humana's speculation (at 21) that there is some hidden cache of discoverable communications between Relator and CMS that is responsive to RFP Nos. 171 and 172 is entirely without foundation.  RFP Nos. 171 and 172 narrowly request communications between Relator, his attorneys, and subpoenaed non-parties "[c]oncerning any subpoena served in this action" or "[c]oncerning any Discovery Deadlines in this action."  *See* Dkt. No. 379-06 at 6.  On their face, they do not encompass *all* of Relator's or Relator's counsel's communications with those subpoenaed non-parties.  *See id.*  Relator objected to RFP Nos. 171 and 172 on privilege grounds, but produced to Humana all non-privileged communications responsive to these narrow RFPs.[12]  *See supra* p. 11.  That Humana had much more extensive – and potentially problematic – communications with the subpoenaed non-parties in this case about these topics says nothing about the sufficiency of Relator's production.

---

[12] Humana suggests (at 21) that Relator failed to uphold the commitment made by Relator's counsel during the July 24, 2018 teleconference in this case that Relator would produce communications between Relator's counsel and subpoenaed non-parties.  Not so.  As explained above, Relator has produced all responsive, non-privileged communications with non-parties.

Relator is also under no obligation to log any privileged communications that he had with CMS that would otherwise be responsive to RFP Nos. 171 and 172.  As discussed above, the parties reached a reciprocal agreement in May 2018 pursuant to which Humana would not log privileged communications with its outside counsel, O'Melveny, and with attorneys within Humana's Law Department assisting with the litigation of this case, and Relator would not log privileged communications between his litigation counsel and the government.[13]  *See supra* pp. 9-10.  Now, more than two years later, feigning surprise that the government and Relator could have been communicating about this FCA case, Humana attempts to renege on its side of the deal, even though it never objected at the time and never raised any issues concerning the adequacy of Relator's privilege log.  Humana has long waived any such challenge.  *See Sawatzky*, 2013 WL 3771269, at *4.

Humana asserts (at 22) that, during the July 24, 2018 telephonic conference in this case, the Court made a blanket ruling that, notwithstanding any agreement to the contrary, both parties must search the files of litigation counsel in response to a specific request.  The Court said nothing of the sort (and, in fact, the Court did not "make [any] rulings on the[ ] call[ ]," July 24 Tr. at 29:3-4).  Rather, during that hearing – which addressed only Humana's potential tampering

---

[13] There is no basis for Humana's contention (at 22) that, even if there were an agreement between the parties, it only encompassed correspondence between Relator's litigation counsel and DOJ attorneys.  As discussed in detail *supra* Part I.A, Relator enjoys a common-interest privilege with DOJ *and* CMS, which allows Relator and the government to freely disclose privileged material between each other without waiving underlying attorney-client or work-product privileges.  This, of course, includes not just Relator's sharing of his privileged information with the government, but also the government's sharing of its privileged information (for example, privileged communications between DOJ and its client, CMS) with Relator.  At the time the parties negotiated their agreement, Relator had made his assertion of common-interest privilege clear, *see supra* pp. 7-9, and, indeed, the very motivation for reaching the May 2018 agreement was to relieve both parties of the burden of logging clearly privileged communications in the files of their respective litigation counsel.  Humana's attempt to rewrite the parties' agreement – to Relator's detriment alone – is disingenuous.

with Relator's Rule 45 subpoenas to Milliman, Walmart, and Walgreens – the Court simply observed that Humana had the burden of showing that the common-interest privilege protected its communications with Milliman, Walmart, and Walgreens, and that it would be "skeptical" of any common-interest-privilege claim made "in the face of a more specific [RFP]" from Relator demanding that Humana produce its communications with these non-parties concerning Relator's subpoenas. *Id*. at 30:1-11. As explained *supra* pp. 17-18, unlike Relator's common-interest relationship with the government, which is established as a matter of law, Humana's claimed common-interest privilege with Milliman, Walmart, and Walgreens depends on facts establishing a shared business relationship and cannot be established in the absence of a detailed privilege log. Accordingly, the fact that Humana logged communications between its counsel and those non-parties does not reflect a revision of the parties' May 2018 agreement;[14] instead, it reflects nothing more than the genuine differences between the parties' respective common-interest claims and corresponding discovery obligations.

## CONCLUSION

For the reasons set forth above, the Court should deny Humana's motion to compel.

---

[14] Humana fails to mention that its privilege logs concerning its communications with subpoenaed non-parties have been deficient. Relator moved to compel Humana to supplement its privilege log, *see* Dkt. No. 137, and the Court granted that motion, *see* Dkt. No. 223. The Court also recently granted Relator's motion for *in camera* review of a sample of documents for which Humana asserts a common-interest privilege with subpoenaed non-parties. *See* Dkt. Nos. 286, 384.

Dated: October 9, 2020

Respectfully submitted,

Claire M. Sylvia (admitted *pro hac vice*)
Edward H. Arens (admitted *pro hac vice*)
Phillips & Cohen LLP
100 The Embarcadero, Suite 300
San Francisco, CA 94105
Tel: (415) 836-9000
Fax: (415) 836-9001
csylvia@phillipsandcohen.com
earens@phillipsandcohen.com

/s/ Andrew C. Shen
Andrew C. Shen (admitted *pro hac vice*)
David C. Frederick (admitted *pro hac vice*)
James M. Webster (admitted *pro hac vice*)
Kellogg, Hansen, Todd,
  Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
ashen@kellogghansen.com
dfrederick@kellogghansen.com
jwebster@kellogghansen.com

C. Dean Furman
Furman & Nilsen PLLC
2527 Nelson Miller Parkway, Suite 101
Louisville, KY 40223
Tel: (502) 245-8883
Fax: (502) 244-8383
dean@lawdean.com

*Attorneys for Plaintiff-Relator Steven Scott*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2020, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system and served copies of the foregoing via email to

the following counsel of record:

L. Blalack
David J. Leviss
William T. Buffaloe
Amanda M. Santella
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
202-383-5300
lblalack@omm.com
dleviss@omm.com
wbuffaloe@omm.com
asantella@omm.com

Michael P. Abate
KAPLAN JOHNSON ABATE
  & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
502-416-1630
mabate@kplouisville.com

*/s/ Andrew C. Shen*
Andrew C. Shen

Kellogg, Hansen, Todd,
  Figel & Frederick, P.L.L.C.

*Counsel for Plaintiff-Relator Steven Scott*