**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* STEVEN SCOTT, | |
| Plaintiff, | Civil Action No. 3:18-cv-00061-GNS-CHL |
| v. | |
| HUMANA INC., | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT HUMANA INC.'S  MOTION TO COMPEL**
**EXPERT WITNESS DEPOSITION TESTIMONY AND RESPONSES TO REQUESTS**
**FOR PRODUCTION AND INTERROGATORIES**

## INTRODUCTION

According to Relator, his testifying expert, the former Chief Actuary for the U.S. Centers for Medicare and Medicaid Services ("CMS"), had free rein to communicate with his former colleagues at CMS under a shroud of work product secrecy so complete that Defendant Humana Inc. ("Humana" or "Company") had no right even to know that he was communicating with the Company's regulator about this case.  Indeed, Relator concedes that he consciously hid not just the *substance* of Richard Foster's communications with CMS, but also the very *fact* of those communications.  Humana would never have learned otherwise except that, on the last day of expert discovery, its counsel happened to ask Foster during his deposition whether he had communicated with his former colleagues about this case.

In his Opposition to Humana's Motion to Compel Expert Witness Deposition Testimony and Responses to Requests for Production and Interrogatories (DN 410) ("Opposition" or "Opp."), Relator ignores the plain language of the Federal Rules of Civil Procedure ("Rules") limiting work product protection for testifying experts to draft reports and communications with a "party's attorney."  He argues that he had no obligation to disclose Foster's communications with key non-party witnesses in this case, witnesses whose office reviewed and approved the Walmart Plan bids that Relator alleges violated the False Claims Act ("FCA").  And according to Relator, he was not required to log a single entry for any of these communications, even though he concedes they are responsive to discovery requests that Humana served years ago.

Relator's argument that the Rules do not apply to him essentially boils down to the fact that he is a *qui tam* relator.  He contends that, as a matter of law, all relators are entitled to an extraordinary "common interest" privilege that protects from litigation discovery—and even disclosure—any and all communications that he or his testifying experts have had with Humana's regulator and potential trial witnesses alike.  But whatever "common interest" a

1

relator may share with a government agency that has declined to make itself a party, that common interest cannot supply an underlying privilege where none otherwise existed.

Relator first revealed to Humana the breadth of his common interest theory when he filed his Opposition last week.  For instance, his Opposition revealed for the first time that Foster attended *five* meetings with officials from CMS and/or the U.S. Department of Justice ("DOJ"), including two meetings with CMS actuaries after he became a testifying expert.  Relator concealed the existence of these meetings from Humana for nearly two years, but now ironically asserts that it is Humana's motion that comes too late, faulting the Company for failing to divine that boilerplate invocations of privilege hid his failure to comply with routine discovery obligations.  Now that his extensive communications with CMS and DOJ have been uncovered, Relator must produce responsive communications that he or his representatives had with CMS and DOJ and make Foster available to testify regarding those communications.

## ARGUMENT

## I.    Relator Must Produce Testimony Regarding Foster's Meetings With CMS

In his Opposition, Relator reveals that Foster met with CMS and/or DOJ five times: twice with DOJ attorneys in June and August of 2018 and three times with DOJ and CMS employees in October 2018, January 2019, and March 2019—two of those meetings after he became a testifying expert in "late 2018."  Opp. at 5.  To justify his attorney's assertion of privilege at Foster's deposition, Relator must demonstrate for each meeting both the existence of an underlying privilege *and* a lack of waiver.  Defendant Humana's Motion to Compel Expert Witness Deposition Testimony and Responses to Requests for Production and Interrogatories ("Mot." or "Motion") (DN 379) at 14.  Relator establishes neither.  Lacking protection under the Rules for Foster's meetings with CMS after he became a testifying expert, Relator argues that Foster vacillated in and out of a consulting expert role, wearing his consulting hat while meeting

2

with CMS actuaries, and then replacing it with a testifying hat when he drafted his expert reports. This would be a neat trick, but one doomed by Rule 26(b)(4).  And even if work product protection could apply to Foster's meetings with non-attorneys, Relator waived the protection by including a third party.  The primary support he offers in his Opposition for shielding these meetings from discovery is his assertion of a special, all-encompassing *qui tam* relator common interest doctrine that has no support in the Federal Rules or case law.

      A.      **The Rules Do Not Shield From Discovery Foster's Meetings With CMS And DOJ Under A Blanket Work Product Protection**

Relator concedes that Rule 26(b)(4) contains the only potentially applicable discovery protections for Foster's communications with CMS and DOJ.  *See* Opp. at 21.  But he tries to turn the Rule on its head to argue that, rather than providing a limited set of protections against a general presumption of disclosure, the work product doctrine protects *all* expert materials *except* for disclosures required under Rules 26(b)(4) and 26(a)(2).  *See* Opp. at 2.  Relator cites no authority for this reading of Rule 26, which has been rejected by numerous courts.  *See, e.g.*, *In re Application of the Rep. of Ecuador*, 735 F.3d 1179, 1185 (10th Cir. 2013) ("*Bjorkman*") (noting that 1970 Advisory committee notes "'reject[ed] as ill-considered the decisions which have sought to bring expert information within the work-product doctrine'" and so "protections of Rules 26(b)(4)(B) and (C) are the exclusive protections afforded to expert trial-preparation materials"); *Rep. of Ecuador v. Hinchee*, 741 F.3d 1185, 1195 (11th Cir. 2013) (rejecting argument that work product protection "applies to all testifying expert materials in general and that Rule 26(b)(4) merely clarifies that general principle in a specific context"); *Wenk v. O'Reilly*, 2014 WL 112920, at *4 (S.D. Ohio Mar. 20, 2014) (adopting *Bjorkman* and *Hinchee*).

B.    **Foster's Meetings With CMS After Becoming A Testifying Expert Are Not Protected Under Rule 26(b)(4)(C)**

Relator attempts to shoehorn Foster's meetings with CMS employees into Rule 26(b)(4)(C), which protects from discovery the communications between a "party's attorney" and its testifying expert.  Opp. at 18-19 (citing Fed. R. Civ. P. 26(b)(4)(C)).  Humana has already explained that CMS and DOJ are not a "party's attorney[s]" in this declined case, Mot. at 16-17, and Relator cites no case law for his contrary position.  Instead, Relator relies exclusively on a comment by the Rules Advisory Committee, which he contends requires the application of this term in a "pragmatic" manner.  Opp. at 18-19.  But Relator cannot explain how interpreting the term "party's attorney[s]" to mean *non*-attorneys who are employed by a *non*-party would be "pragmatic," and, in any event, commentary cannot trump the Rule's plain language.

First, subsection (C) plainly only protects communications with a party's "attorney," and so the fact that Foster's meetings included *non*-attorney employees of CMS removed any protection that might otherwise have applied.  Mot. at 15-17.[1]  Relator never even tries to explain how it would be "pragmatic" to transform actuaries into attorneys.  Any attorney-client relationship between DOJ and CMS, Opp. at 19, has no bearing on whether Foster's communications with CMS actuaries constitute work product under subsection (C).  Indeed, there was an attorney-client relationship between litigation counsel and the party in the cases that Humana cited in its Motion, Mot. at 15-17, which Relator's Opposition mischaracterized in a vain attempt to distinguish them.  *Compare* Opp. at 19 n.9 ("None of [Humana's] cases involved communications between an expert and *any* attorneys.") *with In re Application of Rep. of*

---

[1] Even if these meetings had included only attorneys from CMS—which they did not, *see* Opp. at 5—Congress has also foreclosed any suggestion that CMS's attorneys represent the interests of the United States in this case.  *See* 28 U.S.C. § 516 ("[T]he conduct of litigation in which the United States . . . is interested . . . is reserved to offices of the Department of Justice.").

*Ecuador*, 280 F.R.D. 506, 515 (N.D. Cal. 2012) (cited by Mot. at 15-16) ("[E]-mails between

[testifying expert], his assistants, and non-attorney Chevron employees, *including those in which*

*attorneys are copied* . . . are not work product and must be disclosed" (emphasis added)) *and In*

*re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 491-92 (D. Mass. 2015)

(cited by Mot. at 15) (party must produce testifying expert's "communications with non-

attorneys—*including communications in which attorneys are merely copied*" (emphasis added));

*accord Benson v. Rosenthal*, 2016 WL 11678622, at *3 (E.D. La. May 12, 2016) (protection over

communications between party's attorneys and testifying expert "was waived by including non-

attorneys . . . as recipients").   Moreover, even assuming that Relator's claimed "common-interest

relationship" otherwise applies to all communications between his experts and "the government,"

it still cannot expand the work product doctrine for testifying experts beyond the limits of Rule

26(b)(4).  *See* Mot. at 15 (quoting Order (DN 223) at 5); *Bingham v. Baycare Health Sys.*, 2016

WL 5106946, at *6 (M.D. Fla. Sept. 20, 2016) (relator could not use common interest doctrine to

protect non-privileged expert materials shared with the United States).

Relator also concedes that the United States is not a "party" here.  Opp. at 4 n.1; *see* Mot.

at 8-9, 15-16.  Relator seeks to confuse the issue by invoking the United States' unremarkable

status as the "real party in interest."  Opp. at 4 n.1 (citing *United States ex rel. Eisenstein v. City*

*of N.Y.*, 556 U.S. 928 (2009)).  The entitlement to the lion's share of any financial recovery in a

declined *qui tam* action sheds no light on whether the United States is a "party" under subsection

(C), and according to Relator's own authority, it is not.  In *Eisenstein*, the U.S. Supreme Court

held that the United States is *not* a "party" in a declined FCA case for the purpose of the Federal

Rules of Appellate Procedure.  556 U.S. at 931.  The Court explained that it could not

"designat[e] the United States a 'party'" under those rules "after it has declined to assume the

rights and burdens attendant to full party status" such as a party's obligation to disclose information under Rule 26(a). *Id.* at 933-34. The Opposition turns *Eisenstein* on its head to try to grant the United States the "rights" of a "party" under Rule 26(b)(4)(C), while exempting it from the corresponding "burdens" of Rule 26. *See, e.g.*, Fed. R. Civ. P. 26(a) (initial disclosures); Fed. R. Civ. P. 26(b)(5)(a) (privilege log).

Courts accordingly hold that the United States is not a party under the discovery Rules—including Rule 26—in FCA cases where it declines to intervene. *See United States v. UT Med. Grp., Inc.*, 2013 WL 12149636, at *2 (W.D. Tenn. Aug. 15, 2013); *United States ex rel. Farrell v. SKF USA, Inc.*, 1998 WL 265242, at *3 (W.D.N.Y. May 18, 1998), *aff'd*, 32 F. Supp. 2d 617 (W.D.N.Y. 1999). It follows, then, that the United States is not a "party" for the purpose of subsection (C) of Rule 26(b)(4). As Relator concedes, his cases, at most, address sharing work product created by *consultants* and are thus irrelevant to the analysis under subsection (C), which governs *testifying experts*. *See* Opp. at 14-15 ("Numerous courts have found that the common-interest privilege protects the communications of a *consultant's* work product to common-interest partners." (emphasis added)).[2]

Under Relator's theory, so long as counsel attends the meeting, a *qui tam* relator's testifying experts could shield from discovery their communications with literally the entire United States government—from President to postal worker—as attorney-expert communications under subsection (C). Relator fails to muster any support for this silly position,

---

[2] Relator struggles to accurately characterize even his own cases. Contrary to his suggestion, one of the cases he cites did not even address attorney work product, instead addressing attorney-client communications, which are not at issue here. *See Lanelogic, Inc. v. Great Am. Spirit Ins. Co.*, 2010 WL 1839294, at *4 (N.D. Tex. May 6, 2010). His other case considered and then declined to apply the work product doctrine. *See FaZe Clan Inc. v. Tenney*, 2020 WL 4597321, at *2 (S.D.N.Y. Mar. 9, 2020).

which contradicts the purpose of Rule 26(b)(4):  to protect an *attorney's* thought processes, not

those of the testifying expert.  *See Bjorkman,* 735 F.3d at 1187 ("Rule 26(b)(4), especially

subdivision (C), restores the core understanding that the work-product doctrine solely protects

the inner workings of an attorney's mind.").  Rule 26(b)(4)(C) already "balance[d] the competing

policy considerations" between disclosure and keeping private an attorney's mental impressions

by drawing a bright-line rule exempting certain attorney-testifying expert communications and

draft expert reports, but nothing else.  *Rep. of Ecuador v. Mackay*, 742 F.3d 860, 870-71 (9th Cir.

2014); *see Hinchee*, 741 F.3d at 1191-92 (subsection (C) "reflects a calculated decision *not to*

*extend* work-product protection to a testifying expert's . . . communications with non-attorneys"

(emphasis in original)); Mot. at 15.  Relator may wish the Rules weighed those competing

considerations differently, but his policy aspirations are no substitute for legal authority.

### C.     Foster's Meetings With CMS Are Not Protected Under Rule 26(b)(4)(D)

Since subsection (C) cannot support his work product assertion, Relator tries to rewrite

history and claim that Foster continued to act as a consulting expert while meeting with CMS

and DOJ, even after he became a testifying expert for all other litigation purposes in "late 2018."

Opp. at 5, 20-21.  Thus, according to Relator, Foster's meetings with CMS and DOJ even in

early 2019 are protected under subsection (D), which applies to consulting rather than testifying

experts.  *See* Opp. at 20-21.  Yet again, Relator produces no legal authority to support his

creative dual-purpose expert theory,[3] and his suggestion that this Court should be the first to do

so is inconsistent with the plain language of subsection (D).  The heading of that subsection

---

[3] None of the cases that he cites (Opp. at 10) that protected expert material under Rule
26(b)(4)(D) involved an expert who was subsequently designated as a testifying expert.  *See*
*Shields v. Sturm, Rogers & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (expert "not expected to be
called as a witness"); *Lindon v. Kakavand*, 2014 WL 12648464, at *1-2 (E.D. Ky. Apr. 29, 2014)
(non-party's consulting expert); *Merriweather v. United Parcel Serv., Inc.*, 2018 WL 3572527, at
*11 (W.D. Ky. July 25, 2018) (consulting expert).

describes it as applying to an "Expert Employed *Only* for Trial Preparation," and the subsection's text limits its application to experts who are "not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D) (emphasis added). Relator's concession that he asked Foster to produce an expert report in "late 2018" therefore ends the inquiry and, for at least the two 2019 meetings, Relator forfeited the protections of subsection (D) in favor of the Rule 26 provisions governing testifying experts. *See* Fed. R. Civ. P. 26(b)(4)(A)-(C).

But there is no need to tease out the exact timing of Foster's transition to testifying expert because Humana is entitled to Foster's testimony about his interactions with CMS as a consulting expert in any event. As explained in its Motion, Humana can overcome any work product claim for Foster's communications with CMS because his communications bear directly on Humana's materiality defense and it can obtain the evidence in no other way. Mot. at 19 n.8. Relator asks the Court to take him at his word that the meetings "did not involve materiality," without allowing Humana access to the evidence necessary to test the veracity of his statement. *See* Opp. at 16 n.6.

Relator also cites a declaration from Foster stating that his communications with CMS and DOJ were unrelated to his expert report and that he "assist[ed] [the United States] in its evaluation of aspects of the case." Foster Decl. (DN 410-1) ¶ 8; Opp. at 20-2. But that testimony in fact supports Humana's position. Everything Foster told CMS about his "evaluation" of this case is necessarily relevant to the agency's knowledge of the conduct that Relator alleges, which bears directly on the core materiality showing that Relator must make to support his FCA claims: that CMS would have denied payment to Humana had it been aware of the allegedly false bid projections. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016); Opp. at 21 n.10. If Foster provided any information in

support of those allegations to the *CMS actuarial officials* who attended these meetings—and whose office has since approved each and every Walmart Plan bid submitted to the agency—his communications with those officials necessarily support Humana's defense that Relator cannot prove materiality. *See* Defendant Humana, Inc.'s Motion for Summary Judgment (DN 345) at 24-26. Foster's declaration also fails to foreclose other possibilities that Relator would prefer to sidestep, including the possibility that CMS's employees communicated to Foster that more information about the disputed bid projections would not have caused them to reject the Walmart Plan bids as Relator contends. That Foster's declaration and Relator's Opposition do not foreclose those possibilities supports an inference that probative evidence was discussed at Foster's three meetings with CMS, and Humana cannot obtain that information without testimony about those CMS meetings, which necessarily overcomes any work product protection that might otherwise apply. *See* Mot. at 19 n.8.[4]

Finally, as explained in the Motion, including non-parties in his communications waives any otherwise-applicable work product protection, and Relator has failed to meet his burden to show the existence of either a joint legal approach or a commonality of interest with CMS or DOJ. *See* Mot. at 19-20; *see also Burkhead & Scott, Inc.*, 2014 WL 6751205, at *3 (W.D. Ky. Dec. 1, 2014). Instead of trying to meet his burden with facts in the record, Relator argues that as a matter of law *all qui tam* relators necessarily have a joint legal approach based on a common

---

[4] Relator's suggestion that Humana should have sought this material from CMS directly is disingenuous. Opp. at 21 n.10. Humana is the *only* party who sought any discovery from CMS in this action. *Id.* at 4 n.1. And Humana obtained from CMS the evidence it expected the agency to possess: that CMS has never denied a Part D bid or payment to a Part D sponsor based on the bid projections at issue here. *See* Ex. 15 to Defendant Humana, Inc.'s Motion for Summary Judgment (DN 345-16). Humana reasonably believed that Relator was complying with his discovery obligations to produce all responsive communications with CMS, and so there was no need to burden non-party CMS with a duplicative request. Mot. at 6-7.

interest with the United States, because they "are essentially the same party."  Opp. at 12-13, 17

(quotation omitted).  As an initial matter, courts in the Sixth Circuit have rejected the premise of

Relator's argument:  he did not become an agent of the United States merely by filing an FCA

complaint.  *See United States ex rel. Sanders v. Allison Engine Co.*, 364 F. Supp. 2d 716, 718

(S.D. Ohio 2005) (noting a relator is not an "agent or employee of the government").  And

Relator's admission that the applicability of the common interest doctrine is "highly fact-

dependent," Opp. at 17, means that a special blanket common interest rule is inappropriate for

*qui tam* relators just like anyone else.  *See United States ex rel. (Redacted) v. (Redacted)*, 209

F.R.D. 475, 479 n.3 (D. Utah 2001) (noting that even though relators satisfied commonality-

interest-prong at that stage, it does not mean "that the Relators and the United States will always

share this community of interest").  None of Relator's cases suggest otherwise, nor do they

address the case-specific evidence here, including that CMS has stated in court filings that this is

a matter between "private litigants."  *See* Mot. at 20.[5]

---

[5] Relator's other cases did not involve situations where the United States had declined to intervene, *see United States ex rel. Bagley v. TRW Inc.*, 212 F.R.D. 554, 561-62 (C.D. Cal. 2003) (before intervention decision); *United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 22 (D.D.C. 2002) (DOJ chose to intervene), and/or addressed the special case of the written disclosures to DOJ that relators must prepare by statute when filing a *qui tam* complaint, *see United States ex rel. Fisher v. Ocwen Loan Servicing, LLC.*, 2015 WL 4609742, at *1 (E.D. Tex. July 31, 2015); *Bagley*, 212 F.R.D. at 555.  Of course, DOJ declined to intervene here, and Foster's communications with CMS and DOJ were not commanded by any statute.  Relator attempts to diminish DOJ's declination decision by selectively quoting language from a notice that DOJ filed long after it declined to intervene which characterized DOJ's lengthy investigation of Relator's allegations against Humana.  *See* Statement of Interest by the United States (DN 90). Contrary to Relator's assertion, the DOJ filing never attributed DOJ's multi-year deliberations to the pace of Humana's document production to DOJ.  Indeed, DOJ investigated Relator's allegations for nearly 17 months before it alerted Humana to the allegations.  *See* Ex. 2 to Defendant Humana, Inc.'s Motion for Summary Judgment (DN 345-3).

II.   **Relator Is Required To Produce Or Log Materials Responsive To RFP Nos. 7, 9, 171, And 172 And Interrogatories Nos. 19 and 20**

Relator admits that he possesses documents that are responsive to RFP Nos. 7, 9, 171 and 172 and that he communicated with CMS and DOJ officials on topics responsive to Interrogatories Nos. 19 and 20, but that he has not neither supplemented his Interrogatories nor produced those responsive documents to Humana, or even logged them.  Opp. at 11, 24. Because Relator's assertions of privilege are baseless, *see supra*, he must produce all of these documents.  At a minimum, however, Relator was at least obligated to log those allegedly privileged communications so that Humana could assess the basis for his asserted privilege. Mot. at 14.  Relator's arguments that he need not log his privilege claims and that Humana waived any ability to challenge his privilege designations or Interrogatories are without merit. As a result, it is *Relator* who has waived his claim of privilege over responsive material.

A.   **Relator Must Log Responsive Privileged Materials**

As Humana explained in its Motion, Relator was at the very least required to include any documents responsive to Humana's RFP Nos. 7, 9, 171, and 172 in his privilege log under Rule 26(b)(5), and his failure to do so waives any claimed work product or common interest protection over those documents.  *See, e.g.*, Mot. at 14.  Relator nowhere disputes that if a privilege log was required, then his failure to produce one results in waiver.  Relator instead contends that (i) he had no obligation to log Foster's communications with CMS and DOJ because Rule 26(b)(5) does not apply to non-party documents, Opp. at 21; (ii) Foster's communications with CMS and DOJ occurred in his capacity as a consulting expert, even after he became a testifying expert, and thus were exempt from discovery altogether, *id.* at 23; and (iii) he did not need to log *any* communications with CMS or DOJ because of a May 2018 agreement between the parties, *id.* at 24.  Each argument is baseless.

11

Relator's contention that he need not log Foster's privileged communications because Foster is not named in the caption to this case is hardly colorable.  He cites no decisional authority whatsoever for his view that Rule 26(b)(5) does not apply to Foster's documents because Foster is not a "party" under the Rule.  Opp. at 21.  Leaving that question aside, Humana served its discovery requests on *Relator* and those requests encompassed communications by his experts; Humana did not serve discovery requests on *Foster*.  *See* Mot. at 5-6.  It was therefore Relator's obligation to search and produce his expert's documents for responsive information, and Relator is unquestionably a party subject to Rule 26(b)(5).  Unsurprisingly, courts routinely require privilege logs when parties withhold their expert's communications on grounds of privilege.  *See, e.g.*, *Hinchee*, 741 F.3d at 1195 (requiring party to include in privilege log documents from testifying expert withheld based on work product claim).[6]

Nor does the fact that Rule 26(b)(5) only applies to "otherwise discoverable" documents relieve Relator of his obligation to log Foster's responsive communications with CMS and/or DOJ.  Having devoted his entire Opposition to arguing that Foster's communications are "quintessential attorney work product," *see, e.g.*, Opp. at 14, Relator does an about-face and relies on a discredited theory that Rule 26(b)(4) does not provide work product protection for expert materials at all, but rather some *sui generis* protection for expert materials based on equity.  *See Ludwig v. Pilkington N. Am., Inc.*, 2003 WL 22242224, at *3 (N.D. Ill. Sept. 29,

---

[6] Relator attempts to distract the Court by contending that Humana supposedly had an obligation to log responsive communications with Milliman's counsel regarding the declaration that Shelly Brandel, a Milliman actuary who worked on the Walmart Plan bids, submitted in support of Humana's summary judgment motion.  Opp. at 22 n.11.  *But none of those communications about Brandel's declaration were responsive to any discovery request from Relator*.  Relator requested communications between Humana's counsel and non-parties specifically regarding Relator's subpoenas.  Mot. at 8 n.2; Mot. Ex. 6 (DN 379-7) at 2.  Humana, unlike Relator, produced privilege logs detailing responsive communications with its common-interest partners, including numerous communications with Milliman's counsel.  Mot. at 12 n.5.

2003).  That theory, however, is neither good law in the Sixth Circuit, nor in the very jurisdiction

from which Relator draws his authority.  *See Picken v. Louisville Ladder Inc.*, 2013 WL

12182395, at *3 (E.D. Mich. Sept. 26, 2013); *Univ. Hosps. Health Sys. v. Pohl Inc. of Am.*, 2018

WL 1474368, at *4 (N.D. Ohio Mar. 23, 2018); *White v. Electrolux N. Am., Inc.*, 2014 WL

1365424, at *2 (N.D. Ill. Apr. 7, 2014) (declining to follow *Ludwig* as inconsistent with

subsequent Seventh Circuit law); *accord* Fed. R. Civ. P. 26(b)(4) advisory committee's note to

2010 amendment ("Rule 26(b)(4)(C) is added to provide work-product protection for attorney-

expert communications.").  Because Relator has withheld "otherwise discoverable" documents

based on a work product claim, Rule 26(b)(5) requires him to include them in his privilege log.

Relator's final argument—his unilateral assertion in May 2018 that he would not log

communications between Relator's counsel and attorneys for the United States—fares no better.

*See* Opp. at 23-24.  The record shows that in May 2018, the parties agreed not to log:

"(1) communications between the party and their respective litigation counsel, or (2) documents

created by litigation counsel in anticipation of or during litigation."  Mot. Ex. 4 (DN 379-5) at 1.

In subsequent communications about the scope of that agreement, Humana explained that

"litigation counsel would be limited to Kellogg Hanson" and two other private law firms,

excluding "[a]ttorneys for the United States."  *Id.* at 2 (internal quotations omitted).  Humana

stated its view that communications between Relator's counsel and DOJ must be logged.  *Id.*

In response, Relator agreed that "litigation counsel are Kellogg Hanson" and two other

firms.  He then added a unilateral assertion that "we do not agree to log communications between

litigation counsel and counsel for the United States."  Mot. Ex. 3 (DN 379-4) at 4.  Humana

never agreed to this privilege log exception.  But more importantly, on its face, Relator's

statement does not apply to Foster's communications with CMS or DOJ, because Foster is not

"litigation counsel."  Nor does it apply to communications between Relator's counsel and CMS, which is not "counsel for the United States."  *See supra* at 4 & n.1; Mot. Ex. 4 (DN 379-5) at 2.

## B.  Humana Did Not Waive Its Objections To Relator's Baseless Privilege Claims

Relator also contends that he need not produce *any* communications with CMS because he asserted a boilerplate objection to RFP Nos. 7 and 9 to the extent that they called for privileged documents, and need not supplement his Interrogatories because he unilaterally limited Humana's requests to Relator, not Relator's experts.  Opp. at 8-9, 22.  But Relator concedes that he *also* objected to RFP Nos. 171 and 172 *on the same grounds*, but nevertheless produced some documents in response.  Opp. at 23.[7]  Humana had no way to know that he was treating RFP Nos. 7 and 9 differently from RFP Nos. 171 and 172.  And accepting Relator's argument would have no bearing on his obligation to log responsive documents, which would have allowed Humana to challenge his privilege claims before fact discovery closed.

This is even more true for Relator's supposed ability to unilaterally narrow Humana's Interrogatories.  Opp. at 22.  While Relator claims to have limited his response to "the Identity of Persons with Whom Relator Communicated," he neglects to mention that his objection only excluded "the Identity of Persons with whom Relator's *attorneys* Communicated."  *See* Opp. Ex. D (DN 410-5) at 56 (emphasis added).  Humana had no reason to know that by Relator's "attorneys," he secretly also meant his "testifying experts."  And in any event, as Relator has conceded, privilege would not protect the *identity* of the CMS and DOJ officials with whom Foster communicated.  *See* Mot. Ex. 10 (DN 379-11) at 41:5-14.

---

[7] Relator does not even try to defend his failure to produce or log all documents responsive to RFP Nos. 171 and 172.  *See* Opp. at 23-24.  Instead, he rests on his earlier privilege claims and privilege log arguments rebutted *supra*.

14

Relator's bombast aside, Humana's surprise that Relator hid communications between his expert witness and the United States—including key CMS actuaries—is not "feign[ed]."  Opp. at 24; *see id.* at 11.  Relator cites *no* evidence suggesting that Humana knew about Foster's communications with CMS and DOJ, and for good reason:  Relator unilaterally decided that he was not obligated to produce a privilege log that would have revealed those communications. Humana, then, had no reason to challenge Relator's production, his responses to Humana's RFPs, or his Interrogatory responses, until Foster's deposition testimony revealed the existence of those communications.  As a result, Humana did not waive its objections to Relator's privilege claims.  To the contrary, it is *Relator* who has waived any claim of privilege over responsive communications by failing to fulfill his disclosure obligations under the Rules.  Mot. at 14; *see In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim.").

## CONCLUSION

For the foregoing reasons, the Court should grant Humana's Motion to reopen Richard Foster's deposition and order him to testify regarding his communications with CMS and DOJ, and compel Relator to serve complete responses to Humana's RFP Nos. 7, 9, 171, and 172 and Interrogatories Nos. 19 and 20.


Dated: October 16, 2020

Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
502-416-1630
mabate@kplouisville.com

Respectfully submitted,

/s/ David J. Leviss
David J. Leviss*
K. Lee Blalack, II*
Amanda Santella*
Kimya Saied*
William T. Buffaloe*
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, D.C. 20006

202-383-5300
lblalack@omm.com
dleviss@omm.com
ksaied@omm.com
wbuffaloe@omm.com
asantella@omm.com

*Admitted *pro hac vice*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 16, 2020 a true and accurate copy of the foregoing

motion was electronically filed using the CM/ECF system, which will automatically send email

notification of such filing to all counsel of record.


<u>/s/ David J. Leviss</u>
Counsel for Humana Inc.