**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:18-CV-00061-GNS-CHL**

**UNITED STATES OF AMERICA,** *ex rel.* **STEVEN SCOTT,**  Plaintiff,

v.

**HUMANA INC.,**  Defendant.

## ORDER

Before the Court is the "Motion to Enforce the Court's Orders of August 30, 2019 and January 13, 2020 and to Compel a Complete Response to Interrogatory Nos. 12 and 15" (the "Motion") filed by Relator Steven Scott ("Relator"). (DN 305.) Defendant Humana Inc. ("Humana") filed a response (DN 310) to which Relator filed a reply (DN 314). Therefore, the Motion is ripe for review.

**I.     BACKGROUND**

Relator's "central allegation in this case" is that Humana made "knowingly false" bids to the Centers for Medicare & Medicaid Services ("CMS") in order to secure lucrative Medicare Part D contracts. (DN 204-1, PageID # 12032.) He endeavors to show that Humana kept two sets of "metrics and assumptions": one for "bids to CMS," and the other "for all other business purposes." (DN 172, PageID # 6801.)

On December 18, 2018, Relator served its Fourth Set of Interrogatories, which included Interrogatories 10-15. Relevant to the Motion are Interrogatory 12 and Interrogatory 15.

    **a. Interrogatory 12**

Interrogatory 12 requests:

> For each Contract Year of the Walmart Basic Plan and all other
> Humana Part D Plans from 2011 through 2018, state the total

> Prospective Low-Income Subsidy Payments, total Post Reconciliation Low-Income Subsidy Payments, total Prospective Reinsurance Subsidy Payments, total Post-Reconciliation Reinsurance Subsidy Payments Reflected in Your Bids (including Bid Assumptions), Budgets-at-Bid, Final Budgets, and Actual Experience Data; and identify by Bates number all Documents reflecting this information.

(DN 249-4, at PageID # 18443.)

Some background about Part D prescription drug plan sponsors: CMS makes monthly "prospective" payments to sponsor insurance companies to cover the costs for certain members. Among them are prospective payments for low-income cost-sharing subsidies and reinsurance subsidies. The amount of the prospective payments for each year are based on the cost assumptions contained in the sponsor's bid. After the contract year, CMS "reconciles" the total payments made to the sponsor with the sponsor's actual costs throughout the contract year. If a sponsor's actual costs exceeded the total prospective payments, CMS pays the difference to the sponsor, and if the prospective payments exceeded the sponsor's actual costs, the sponsor pays the difference back to CMS. These are known as "post-reconciliation payments." If the assumptions contained in the sponsor's bid proved totally accurate, the total prospective payments would be equal to the sponsor's actual costs and the post-reconciliation payment amount would be zero.

With respect to Interrogatory 12, Humana served its first response on August 23, 2019. (DN 310, at PageID # 24040.) On December 20, 2019, Humana served its second amended and supplemental objections and response to Interrogatory 12. (*Id.*) On February 20, 2020, Humana served its third amended and supplemental objections and response to Interrogatory 12. (*Id.*) Relator argues that Humana's responses are deficient because Humana "refused to identify *any* of the requested information in its Budgets-at-Bid and any post-reconciliation subsidy assumptions in its bids." (DN 305, at PageID # 23552.) Humana argues that it has "fully answered . . .

Interrogatory No. 12, providing thousands of responsive values for the contract years at issue."

(*Id.*, at PageID # 24041.)

### b. Interrogatory 15

Interrogatory 15 requests:

> For each Contract Year, describe all assumptions and projections regarding Preferred Utilization, Membership, and Member Cost Share in the ICL Phase that You communicated to [Business Partner 1] and [Business Partner 2], including all assumptions regarding Preferred Utilization, Membership, and Member Cost Share that any rebate arrangement (including GDR concession payments) You entered into with [Business Partner 1 or 2] was Reflected In or Based Upon.

(DN 249-4, at PageID # 18487.)

On November 15, 2019, Humana moved for a protective order declaring that it is not required to respond to Interrogatories 13-15 on numerosity grounds (DN 249), and the same day, Relator moved to compel Humana to respond to the same interrogatories (DN 251). On January 13, 2020, the Court denied Humana's motion, granted Relator's motion, and ordered Humana to respond to the interrogatories by February 6, 2020. (DN 264.) After Relator agreed to give Humana an additional week to tender its responses, Humana served its seventh supplemental responses and objections to Relator's fourth set of interrogatories on February 13, 2020. (DN 305, at PageID # 23549-50.) Relator states that "Humana's response to [Interrogatory 15] identifies certain documents containing low-income and non-low-income Walmart use assumptions . . . [and] states generally that it 'communicated Membership Assumptions and Projections to Walmart," but it has refused to identify exactly what assumptions were communicated (and the documents in which those assumptions are contained)." (*Id.*, at PageID # 23550.)

## II.   LEGAL STANDARD

This Court maintains discretion over the scope of discovery. *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.1981)). Generally speaking, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Discovery responses therefore must be "complete and correct." Fed. R. Civ. P. 26(g)(1)(A). Objections to interrogatories "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Answers to requests for admission must admit the request, "specifically deny" the request, "detail why the answering party cannot truthfully admit or deny," or object on "stated" grounds. Fed. R. Civ. P. 36(a)(4)–(5). Upon a motion to compel discovery, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## III. DISCUSSION

Below the Court addresses whether further responses to Interrogatory 12 and Interrogatory 15 are required and whether Relator is entitled to an award of costs.

### a. Interrogatory 12

Below, the Court addresses Relator's claim that Humana's responses are deficient because Humana "refused to identify *any* of the requested information in its Budgets-at-Bid and any post-reconciliation subsidy assumptions in its bids." (DN 305, at PageID # 23552.)

#### i. Post-Reconciliation Subsidies Reflected in Humana's Bids

Relator disputes Humana's response with respect to the post-reconciliation subsidies reflected in its bids which states that "total projected Post-Reconciliation Low-Income Subsidy and Reinsurance Subsidy Payments are not Reflected In [sic] Humana's Bids because those values do not exist." (DN 305-8.) Relator argues that "[b]ecause CMS's prospective payments

4

are calculated based on the revenue and cost assumptions in the Bid, which represent the amount required to cover all of the insurance company's costs, the expected post-reconciliation payments in the Bid will be zero." (DN 305, at PageID # 23556.)

In response, Humana states that it does not project post-reconciliation subsidies in its bids, and thus such information is not "reflected in" its bids. (DN 310, at PageID # 24043.) Humana argues that it would be impossible to project post-reconciliation subsidies at the time of bids because post-reconciliation subsidies take into account Humana's actual costs during the contract year, which are unknown to Humana when bids are submitted. (*Id.*, at PageID # 24043-44.) In reply, Relator argues that it does not matter that the total post-reconciliation subsidies do not exist at the time of bids because the interrogatory seeks the anticipated post-reconciliation subsidies based on the information in its bids. (DN 314, at PageID # 24256.) Relator asserts that the "number must be zero because it is expected that an insurance company's Bid assumptions reflect its honest estimate of the subsidy payment amounts needed to cover the company's costs and, therefore, the Bids should not anticipate Post-Reconciliation Subsidies." (DN 314, at PageID # 24257.)

It's obvious what Relator wants; he has expressed the exact response he is looking for, that "reflected in" Humana's bids is an assumption that the post-reconciliation subsidies will be zero because if the Bid's subsidy estimates are accurate, the prospective subsidy payments would cover the cost of the subsidies in full. (*Id.*, at PageID # 24256.) Because the heart of Relator's fraud allegation against Humana is that "Humana budgeted to receive more in government subsidies than it told CMS it expected to receive," Relator must demonstrate facts establishing the alleged discrepancy. (DN 305, at PageID # 23553.) This requires Relator to ask what Humana represented to CMS was its expected payments. It is not a trick question. Assuming the bids are accurate,

what post-reconciliation subsidy payment do they reflect? Answering that question does not require Humana to "perform a calculation for the Bids with values that did not exist at the time of Bid submission" or "perform a calculation for Relator as his uncompensated consultant." (DN 310, at PageID # 24044.) Of course, as Humana notes, it is impossible to know from the bids what the actual post-reconciliation subsidy payments will be; after all, there will always be a margin of error when predicting human behavior and the effect of several external factors. To the extent that the bids reflect some level of uncertainty or possibility of deviation from the intuitive assumption that the prospective payments and actual costs will cancel one another out, then Humana should include that in its response (in addition to its best numerical estimate of the projected post-reconciliation subsidy payments), rather than point to it as grounds not to respond. Accordingly, Humana will be ordered to amend its response to "state the . . . total Post Reconciliation Low-Income Subsidy Payments . . . Reflected in [its] Bids." (DN 249-4, at PageID # 18443.)

### ii. Prospective Subsidies and Post-Reconciliation Subsidies Reflected in Humana's Budgets-at-Bid

Relator disputes Humana's response with respect to prospective subsidies reflected in Humana's Budgets-at-Bid, which states that "there are no Prospective Low-Income Subsidy Payments or Prospective Reinsurance Subsidy Payments Reflected In Humana's Budgets-at-Bid." (DN 305-8.) Relator argues that the prospective subsidies "are 'shown in the results of' and 'calculable from' the documents Humana has identified as its Budgets-at-Bid in response to Interrogatory No. 10." (DN 305, at PageID # 23554.) Relator states that multiplying the total number of projected low income members and reinsurance members reflected in the Budgets-at-Bid by the per-member-per-month prospective subsidy payment amount established at the start of each contract year yields the prospective subsidy payment amount reflected in the Budgets-at-

6

Bid. (*Id.*, at PageID # 23554-55.) Relator states that this is the same method Humana "instructed Relator to use for the purpose of calculating *the same information* in its Final Budgets." (*Id.*, at PageID # 23554.) Regarding post-reconciliation subsidies, Relator states that "Humana's Budgets-at-Bid project how much money Humana expected to receive each year for the total or 'retrospective' low-income subsidy and reinsurance subsidy payments." (*Id.*, at PageID # 23555.) Relator say that the post reconciliation subsidy payments can be calculated "by taking the difference between Humana's projected prospective payments and projected total or 'retrospective' payments." (*Id.*, at PageID # 23556.)

In response, Humana argues that "the data Relator seeks does not exist." (DN 310, at PageID # 24045.) Humana cites a declaration of its Actuarial Director, Rachel Theiss, who states that "[t]he Prospective Subsidies are specific values calculated inside of the Bids. Accordingly, these values do not exist in the Budgets -at-Bid or documents underlying the Budgets-at-bid." (*Id.*) Ms. Theiss further states that "Humana does not perform the calculations Relator proposes for calculating the values for the Prospective Subsidies in the Budgets-at-Bid in the ordinary course of business." (*Id.*) Ms. Theis makes similar comments regarding post-reconciliation subsidies reflected in the Budgets-at-Bid. (*Id.*, at PageID # 24046.) With respect to both the prospective payments and the post-reconciliation subsidies, Humana argues that "Relator cannot require Humana to generate artificial figures that have never existed and that cannot possibly support Relator's claims about Humana's purported knowledge." (*Id.*, at PageID # 24047.)

In reply, Relator states that Humana interpretation of the phrase "reflected in" is unduly narrow, a position that Relator says is inconsistent with the Courts prior finding that Relator's use of the phrase "reflected in" in Interrogatory 1 was "plainly broader than the four-corners

7

meaning Humana has given it." (DN 214, at PageID # 24258) (quoting DN 216, at PageID # 12846.) Relator argues that the fact that the prospective and post-reconciliation subsidies are not on the face of the Budgets-at-bid does not necessarily mean the information isn't reflected in the Budgets-at-Bid. (*Id.*) Relator further that "[t]he discovery record contains numerous examples of Humana's Budget-at-Bid projections of Prospective and Post-Reconciliation Payments." (*Id.*, at PageID # 24259.)

Humana's assertion that the information Relator seeks does not exist presents as an ontological issue, but in truth, the issue is semantic. Indeed, Relator calculated the prospective subsidies reflected in Humana's Budgets-at-Bid and provided the results to Humana. (DN 314, at PageID # 24258-59.) Moreover, Humana's since-retracted first response to the interrogatory "had identified certain low-income subsidy and reinsurance subsidy payment information in its Budgets-at-Bid for Contract Years 2014-2015." (DN 305 at PageID # 23548.) Humana's real gripe is with the labels Relator puts on the information. For example, Humana doesn't question that the prospective subsidy payments for low income and reinsurance members from CMS are determined at the start of each contract year or that the number of projected low income and reinsurance members are reflected in the Budgets-at-Bid. Instead, Humana takes issue with the fact that Relator labels the product of those figures "Prospective Subsidies" reflected in the Budgets-at-Bid. (DN 310, at PageID # 24045) ("[t]he Prospective Subsidies are specific values calculated inside of the Bids. Accordingly, these values do not exist in the Budgets-at-Bid or documents underlying the Budgets-at-bid.") Relator has been clear about what is mean by the terms used in Interrogatory 12, (*See* DN 216, at PageID # 12846), and Humana itself emphasizes that Relator is free to impose specialized definitions for terms in his interrogatories. (DN 310, at PageID # 24049.) That is what Relator has done here, and "Humana will not evade discovery by

redefining parts of Scott's requests." (DN 216, at PageID # 12847.) Therefore, the Court will order Humana to provide a complete response to Interrogatory 12.

### b. Interrogatory 15

Relator notes that Humana's response states that it "Communicated Membership Assumptions and Projections to Walmart," and argues that the interrogatory requires Humana to "identify either what those assumptions were [and] documents containing those assumptions." (DN 305, at PageID # 23558.) Relator argues that his request for Humana to "describe" certain assumptions and projections listed in the interrogatory necessarily requires Humana to "identify" the assumptions and projects because "[i]f it did not, the interrogatory would answer itself." (*Id.*)

In response, Humana argues that its response to the interrogatory is complete because it provides a "detailed narrative description of the origin and content of the assumptions as well as the form and process for communicating the assumptions . . . [and] refers to the Bates numbers of multiple documents containing actual assumptions that were communicated to Walmart over a seven-year period." (DN 310, at PageID # 24048.) However, Humana disputes Relator's assertion that the interrogatory required it "to identify or state any numerical values." (*Id.*, at PageID # 24049.) Humana argues that "[i]f Relator wanted the term 'describe' to mean 'identify' or 'state' numerical values, then he should have supplied his own definition of that term . . . ." (*Id.*)

Humana further argues that Relator's understanding of the word "describe" as used in the interrogatory is inconsistent with his regular practices throughout discovery, such as Relator's use of specialized definitions for specific terms and his distinct use of the terms "describe" and "identify" in prior discovery requests. (*Id.*) To the extent that Relator insists that Humana identify the specific values, Humana argues that Relator is attempting to revise the interrogatory over a year after the close of discovery. (*Id.*, at PageID # 24051.) Humana argues that allowing Relator

9

to do so would "forc[e] Humana to scour thousands of documents that Relator already possesses long after fact discovery has closed [which] would necessarily disrupt the current case deadlines" and that "[t]he Court should hold Relator to the tactical choices he made when he drafted Interrogatory No. 15 and not indulge his effort to serve a new discovery request . . . ." (*Id.*, at PageID # 24053.)

In reply, Relator argues that the fact that Relator already possesses documents containing the information Relator seeks does not minimize Humana's obligation to identify that information in its response to the interrogatory. Relator notes that Humana raised a similar argument in opposing Relator's motion to compel a complete response to Interrogatory 1, and the Court rejected the argument because "producing the data is not enough." (DN 314, at PageID # 24260.) Relator further disputes Humana's claim that it is not required to identify the specific membership assumptions communicated to third parties, arguing that Humana's position is contrary to the language of the interrogatory and the nature of the information requested. (*Id.*, at PageID # 24261.) The Court has already found that the information sought by the interrogatory is relevant for discovery purposes. (DN 264, at 17.) Accordingly, the Court now addresses the sufficiency of Humana's response.

While the interrogatory seeks several categories of assumptions and projections, Relator's motion to compel targets only one category: membership assumptions and projections communicated to Walmart. (DN 305, at PageID # 23558.) Humana's response begins by generally addressing the reasons and methods for developing all projections and assumptions for the Walmart Plan. (DN 305-1.) The response then continues to address the specific categories of assumptions and projections communicated to third parties, stating whether Humana did or did not communicate to the third parties regarding each category. (*Id.*) Among the affirmative

10

answers, Humana stated: "Humana communicated Membership Assumptions and Projections to Walmart" and "Humana did communicate Assumptions and Projections for Walmart *retail* utilization to Walmart." After establishing that communications to third parties regarding these two categories did exist, Humana went on to describe the contents, timing, means and Bates numbers for documents containing the communications regarding assumptions and projections for retail utilization. (*Id.*) Humana did not provide a similar description for the communications regarding assumptions and projections for membership. For this reason, Humana's response with regard to membership assumptions and projections is deficient. Humana will thus be ordered to tender a response that describes the membership assumptions and projections communicated to Walmart.

The Court will now address the dispute about what exactly is meant by the verb "describe." Humana clearly understands that it means something more than recognizing the existence of specific information and saying that Relator can find it among the hundreds of thousands of documents he discovered. (*See* DN 310, at PageID # 24052.) Indeed, in arguing that its response to the interrogatory is complete, Humana states that it provided "detailed narrative description of the origin and content of the assumptions as well as the form and process for communicating the assumptions . . . [and] refers to the Bates numbers of multiple documents containing actual assumptions that were communicated to Walmart over a seven-year period." (*Id.*, at PageID # 24048.) The problem of course is that all the details in that narrative either apply generally to all assumptions and projections or specifically to assumptions and projections for utilization.

Rather than address why it didn't provide any description of the membership assumptions and projections it communicated to Walmart, Humana argues that Relator's request for further

11

detail is an attempt to rewrite the word "describe" to mean "state" or "identify" the numerical values of the assumptions and projections. (DN 310, at PageID # 24049.) This is a straw man argument. If Humana had described the assumptions and projections for membership in the same manner as it described those for utilization, Relator would have the information he's after, "exactly what assumptions were communicated (and the documents in which those assumptions are contained)." (*Id.*, at PageID # 23550.)

### c. Costs

In his motion, Relator also moves for an award of costs pursuant to Rule 37(a)(5) and 37(b)(2)(C) of the Federal Rules of Civil Procedure. (DN 305, at PageID # 23559.) Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides in relevant part that "[i]f a party ... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). For example, the Court may "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). However, "violation of a definite and specific court order must be shown by clear and convincing evidence before sanctions can be imposed for violation of the order." *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1243 (6th Cir. 1996). This means that "[t]he order must be 'clear and unambiguous' . . . and ambiguities must be resolved in favor of persons charged . . . ." (*Id.*)

Relator argues that Humana's responses violated the Court's order compelling Humana to provide a complete response to Interrogatory 1 (DN 216) and the Court's order compelling Humana to provide a response to Interrogatory 15 (DN 349). (DN 305, at PageID # 23559.) The

12

Court sees no clear and unambiguous violation of those orders in Humana's responses. While DN 216 involved a similar issue of interpretation in one of Relator's interrogatories, it was a different issue on a different interrogatory than addressed here. DN 349, as Humana notes, addressed Humana's numerosity objection to DN 349; it did not address the substance of the interrogatory 15. The Court also notes that the Court found that Humana's numerosity objection was proper at that time. (DN 349.) Based on these facts, the Court declines to order an award of costs under Fed. R. Civ. P. 37(b)(2)(C). The Court will also decline to award costs under Rule 37(a)(5), because Humana's deficiencies were substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(ii).

## IV. ORDER

For the foregoing reasons, Relator's motion (DN 305) is granted in part and denied in part.

Accordingly,

IT IS HEREBY ORDERED as follows:

1. Relator's motion to compel a complete response to Interrogatory 12 is **GRANTED**.

2. Relator's motion to compel a complete response to Interrogatory 15 is **GRANTED**.

3. Humana shall serve amended responses to Interrogatory 12 and 15 consistent with this Order on or before **May 30, 2021**.

4. Relator's motion for an award of costs is **DENIED**.

Colin H Lindsay, Magistrate Judge
United States District Court

March 26, 2021

cc: Counsel of record