UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-61-GNS-CHL

**UNITED STATES OF AMERICA,** *ex rel*. **STEVEN SCOTT,**      **Plaintiff,**

v.

**HUMANA INC.,**      **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion for in camera review (DN 286) filed by Relator Steven Scott ("Relator"). Defendant Humana Inc. ("Humana") filed a response (DN 297) to which Relator filed a reply (DN 303). Therefore, the motion is ripe for review.

**I.     BACKGROUND**

In March 2018, Relator served Rule 45 subpoenas on three non-parties: (1) Milliman, Inc. ("Milliman"), Humana's certifying actuary; (2) Walmart Inc. ("Walmart"), a preferred pharmacy in the Walmart Plan; and (3) The Walgreens Company ("Walgreens"), another preferred pharmacy in the Walmart Plan. (DN 286, at PageID # 22920.) Relator states that Humana admitted that it communicated with these non-parties concerning their responses to Relator's Rule 45 subpoenas and that it reviewed Milliman's production before it was made to Relator. (*Id.*, at PageID #22918; DN 286-2.) Relator states that he has concerns that Humana may have improperly communicated to non-parties regarding their responses to Relator's Rule 45 subpoenas. (*Id.*, at PageID # 22918.)

Relator served a request for production on July 30, 2018 requesting "[a]ll Communications between You (including Your attorneys) and any non-party that has been subpoenaed in this action relating to any subpoena served in this action, including without limitation Communications between You (including Your attorneys) and CMS, Walmart,

Walgreens, and Milliman relating to any subpoenas served in this action." (DN 137-3, at PageID # 1805.) On September 30, 2018, Humana produced responses reflecting that it sent 188 emails and attachments regarding Relator's subpoenas, and on October 8, 2018, Humana produced a privilege log for the production. (DN 286, at PageID # 22921.) After motions practice in DN 137, 145, and 147 concerning these same subpoenaed documents, the Court granted Relator's motion to compel Humana to supplement its privilege log. (DN 223.)

Humana served its supplemental privilege log on October 4, 2019. (DN 286, at PageID # 22922.) On October 16, 2019, Relator informed Humana that he believed that numerous documents on the supplemental privilege log had been improperly withheld. (*Id.*, at PageID # 22922.) On January 27, 2020 Humana produced a second supplemental privilege log. (DN 286-11.) On February 17, 2020, Relator provided a list of approximately 125 documents that he believes do not indicate any possible source of privilege, and Relator subsequently narrowed the list down to thirty-five documents using a random number generator which are now the subject of the instant motion. (DN 286, at PageID # 22925) On September 25, 2020, the Court granted in part Relator's motion for *in camera* review, but reserved any ruling on the applicability of the privilege and whether the documents at issue should be produced as requested by Relator pending completion of the *in camera* review. (DN 384.) The Court now addresses those issues.

Relator argues that within the thirty-five documents there are five documents that cannot be privileged because they consist of presentations and memoranda created before the Rule 45 subpoenas were issued. (DN 286, at PageID # 22925.) Relator further argues that the common interest privilege does not shield any of the documents at issue because Humana and the subpoenaed nonparties share a common business relationship, but do not share any common legal interest required for the privilege to attach. (DN 286, at PageID # 22928-32.) Humana

2

argues that Relator fails to show any facts indicating that Humana's assertions of privilege are invalid or subject to exception. (DN 297, at PageID # 23203.) Humana further argues that Relator has failed to articulate why the communications at issue are relevant to the claims of this case since nothing that Humana's lawyers communicated after this litigation commenced is likely to produce admissible evidence regarding Relator's allegations of False Claims Act violations. (DN 297, at PageID # 23203.)

## II.     LEGAL STANDARD

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing *Chrysler v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). In its September 25, 2020 order, the Court found that the documents at issue are relevant for discovery purposes. (DN 384, at PageID # 43076.) Accordingly, the Court sets forth below the standards for determining whether Humana's privilege claims are valid.

### a.   Work Product Doctrine

The work product doctrine, or "work product privilege" as it is sometimes known, was first recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385,

91 L.Ed. 451 (1947). While the work product doctrine has some conceptual overlap with the attorney-client privilege, it "is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *In re Antitrust Grand Jury*, 805 F.2d at 163. The attorney-client privilege operates to protect only confidential communications between an attorney and a client, while the work product doctrine exists to protect any document prepared by or for an attorney in anticipation of litigation. *In re Antitrust Grand Jury*, 805 F.2d at 163 (citing *In re Special September 1978 Grand Jury*, 640 F.2d 49, 62 (7th Cir.1980)).

Federal courts apply the federal work product doctrine. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006). The doctrine is currently incorporated in Fed. R. Civ. P. 26(b)(3) to protect from discovery those documents or tangible things prepared in anticipation of litigation by or for a party or the party's representative absent a showing by the party seeking production of substantial need and the unavailability of such information from another source. *Id.*

Rule 26(b)(3) protects: (1) a document or tangible thing; (2) prepared in anticipation of litigation or for trial; (3) by or for a party or its representative. *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009). "Anticipation of litigation" must both subjectively exist when the document is prepared and be objectively reasonable. *In re Professionals Direct Ins. Co.*, 578 F.3d 432 at 439. "[T]he burden is on the party claiming protection to show that anticipated litigation was the driving force behind the preparation of each requested document." *Id.* (internal quotation marks omitted). An ordinary business purpose does not suffice. *Id.*

The work product privilege is not absolute. Under Rule 26(b)(3)(A)(ii), relevant work product material is discoverable "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other

means." However, in such a situation, the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Work privilege can also be waived by a disclosure that "substantially increases the opportunity for potential adversaries to obtain the information." *Equal Employment Opportunity Comm'n v. Wal-Mart Stores, Inc.*, No. CV 01-339-KKC, 2008 WL 11344709, at *4 (E.D. Ky. Feb 19, 2008) (citing *JA Apparel Corp. v. Abboud*, 2008 WL 111006, at *3 (S.D.N.Y January 10, 2008)). "Other than the fact that the initial waiver must be to an adversary, there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306 (6th Cir. 2002).

### b. Common Interest Rule

Under the common interest rule, parties facing a "common litigation opponent" or parties that are "friendly litigants" may exchange privileged communications without waiving the privilege. *Travelers Cas. & Sur. Co. v. Excess Ins. Co.*, 197 F.R.D. 601, 606 (S.D. Ohio 2000). There are three situations where the common interest privilege might apply: (1) where a single attorney represents multiple clients in the same matter; (2) where parties share a "common defense"; and (3) where "two or more clients share a common legal or commercial interest and, therefore, share legal advice with respect to that common interest." *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219-220 (W.D. Ky. 2006).

The common interest privilege "does not confer an additional layer of privilege; rather, it protects the transmission of otherwise privileged material." *In re Smirman*, 267 F.R.D 221, 223 (E.D. Mich. 2010). The privilege "assumes the existence of a valid underlying privilege," and that "there is a valid basis for exchanging information with a third party." *Broessel*, 238 F.R.D. at 219.

The common interest privilege is not an independent source of privilege or confidentiality. *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008). "If a communication or document is not otherwise protected by the attorney-client privilege or work product doctrine, the common interest doctrine has no application." *Id.*

Thus to establish the privilege, the asserting party must show: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the underlying privilege has not been waived." *Harper v. Everson*, No. 3:15-cv-575-JHM, 2016 WL 8201785, at *7 n.5 (W.D. Ky. June 27, 2016) (quoting *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003).

"The common interest must be a legal one, and the communication must be designed to further that specific legal interest. A commercial interest is not sufficient, and the doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Id.* "Communications shared during a business undertaking lose their privileged status, even though such sharing helped address or ameliorate bona fide concerns about the legal implications of some aspect of the business venture." *Libbey Glass, Inc. v. Oneida*, Ltd., 197 F.R.D. 342, 348 (N.D. Ohio 1999). Communications made before an agreement to proceed jointly are not privileged, and extraneous communications that do not further the common goal are also not privileged. *Coohey v. Strickland*, 269 F.R.D 643, 653 (S.D. Ohio 2010).

### III. DISCUSSION

The documents at issue include seven communications between Humana and Walgreens, eighteen communications between Humana and Milliman, and ten communications between Humana and Walmart. All documents are either emails or email attachments related to the third parties' responses to Relator's Rule 45 subpoenas. Humana makes the same privilege claims for

6

each document, that they are protected work product shared among or between members of a common interest agreement. (*See* DN 297-8.) Humana's privilege log reflects that some of the documents were redacted and that others were withheld. (*Id.*) However, neither Humana nor Relator provided redacted copies of any of the documents. Therefore, the Court is unable to assess the propriety of any specific redactions and will thus determine whether each document as a whole is entitled to privilege protection. Humana states "that it had entered into a common interest agreement with Milliman on February 22, 2018; with Walmart on May 3, 2018; and with Walgreens on April 4, 2018." (DN 297-1, at PageID # 23217.) Humana didn't provide these agreements to the Court nor did it define their terms. The existence of a common interest agreement does not mean that the common interest privilege applies, and in fact, "[c]ourts reject over half of the common interest agreements they assess." THOMAS E. SPAHN, A PRACTITIONER'S SUMMARY GUIDE TO THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE § 20.11 (2013). The burden to establish the privilege rests with the Humana. *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993).

Humana cites to the Court's prior ruling in *Broessel*, arguing that its communications with the third parties are privileged due to their shared common legal interest. (DN 297, at PageID # 23210-11.) "In that case, the issue was whether or not the joint-defense agreement *itself* was discoverable. The discovery of documents containing information which might have been protected by the joint-defense agreement was not at issue in *Broessel*, rendering that case irrelevant to the issue at hand." *Polylok, Inc. v. Bear Onsite, LLC*, No. 312CV00535DJHCHL, 2017 WL 1102698, at *7 (W.D. Ky. Mar. 23, 2017).

The basis of Humana's privilege claim is the third parties "had a common defense interest with Humana because of Relator's allegations that their conduct resulted in violations of the False

7

Claims Act." (DN 297, at PageID # 23211.) Humana's argument boils down to the potential that the third parties could become defendants in the case. (*See id.*, at PageID # 23210-11.) Relator maintains that "there can be no common interest between Humana and non-parties . . . because there has never been a reasonable basis to believe that those non-parties were or would ever be implicated in this case, and thus no basis for a shared legal—as opposed to business—interest." (DN 286, at PageID # 22922.) In response, Humana argues that at the time of the communications at issue, there was reason to believe that they might be implicated in this case because Relator had expressed interest in naming addition defendants in 2018 and at the time, the deadline for joinder of additional parties had not yet expired. (DN 297, at PageID # 23211.)

The Court need not determine whether or not Humana and the third Parties shared a common legal interest at the time of the communications at issue because Humana has failed to establish that any of the communications were designed to further the claimed common interest. All of the communications pertain to timing, process, and content of the Rule 45 subpoena disclosures; "the communications were not in furtherance of a common defense strategy." *Polylok, Inc. v. Bear Onsite, LLC*, No. 312CV00535DJHCHL, 2017 WL 1102698, at *7 (W.D. Ky. Mar. 23, 2017). Indeed, Humana admits that that the "documents [are] irrelevant to any substantive claim or defense in this litigation" and that "the Court's ruling on this Motion, either way, will do absolutely nothing to advance this case toward resolution." (*Id.*, at PageID # 23206-08.) Therefore, the Court finds that Humana has not met its burden of showing that the common interest privilege protects the communications at issue.

The Court will now revisit the question as to whether the communications at issue meet the relevance requirement to be discoverable under Rule 26. In granting Relator's request for *in camera* review, the Court found that Relator had established relevance by asserting possible

8

unlawful interference by Humana with the third parties' responses to the Rule 45 subpoenas "any alleged impropriety in the discovery process would be relevant to the instant case as it would directly affect a party's access to admissible evidence to support their position." (DN 384, at PageID # 43076.)  The Court's in camera review did not conclusively resolve the question any alleged impropriety. On the one hand, the communications at issue show examples of Humana instructing the third parties to withhold documents on questionable privilege grounds.  For example, in one case, counsel for Humana instructed counsel for Milliman to withhold a document on grounds that it "reflects legal advice that was communicated pursuant to Humana and Milliman's common interest in this matter." (HUM-PRIV-0009298.)  However, the underlying document is dated January 17, 2018, a month before Humana claims to have entered into its common interest agreement with Milliman.  (HUM-PRIV-0009300.)  The underlying document is a summary of a phone call from one of Humana's actuaries with one of Milliman's actuaries discussing one of Humana's discovery responses and stating that "[w]e did not discuss any specific details of the lawsuit." (*Id.*)  In another communication between counsel for Humana and counsel for Milliman, Humana requests that Milliman withhold a document "as a privileged attorney-client privilege." (HUM-PRIV-0009210.)  The underlying document was not included in the Court's *in camera* review; however, it is doubtful that a document in Milliman's possession that Humana had reviewed would be covered by either parties' attorney-client privilege without being waived. To be clear, the Court reserves judgment as to whether these facts demonstrate that anything improper occurred.  Rather, the Court finds that a question still remains and that the documents at issue are relevant to that question.

### IV.   ORDER

For the foregoing reasons, Plaintiff's request to compel Humana's production of the thirty-five documents at issue will be granted.

Accordingly,

IT IS HEREBY ORDERED that Humana shall produce that thirty-five documents subject to the Court's in camera review on or **April 30, 2021**.

Colin H Lindsay, Magistrate Judge
United States District Court

March 29, 2021
cc:  Counsel of record