**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:18-CV-00061-GNS-CHL**

**UNITED STATES OF AMERICA,** *ex rel Steven Scott*,                    **Plaintiff,**

v.

**HUMANA INC,**                                                         **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to compel discovery related to communications about this case between Richard Foster and the government filed by Defendant Humana Inc ("Humana"). (DN 379.)  Relator Steven Scott ("Relator") filed a response in opposition (DN 410) to which Humana filed a reply (DN 412).  Therefore, this matter is ripe for review.

**I.    BACKGROUND**

On March 27, 2018, Humana served its Amended First Set of Requests for Production. (DN 379-2.)  The requests sought, *inter alia*:

> 7. Any Documents You provided to the Government Concerning the allegations in the Complaint, including but not limited to notes, journals, summaries, analyses, reports, or any other similar Documents.
> . . .
> 9. Any Documents Concerning Communications between You and the Government Concerning the allegations in the Complaint.

(*Id.*, at PageID # 42763.)  For purposes of these requests, Humana defined "Government" as "the United States, any political subdivision, or any agency, department, or unit thereof, including but not limited to the Centers for Medicare & Medicaid Services ("CMS"), the Office of Inspector General of the U.S. Department of Health & Human Services, and the U.S. Department of Justice, and any employee, agent, or representative thereof."  (*Id.*, at PageID # 42758.)  Humana defined "You" as

"Steven Scott, the Relator in the above-captioned action, and any employees, consultants, experts, or contractors acting or purporting to act on his behalf." (*Id.*, at PageID # 42759.)

On April 12, 2018, Humana served its First Set of Interrogatories. (DN 379-3.) The interrogatories, *inter alia*, asked Relator to:

> 19. Identify by name any Persons, including Your spouse, current or former Humana employees, or current or former Government employees, with whom You Communicated in any manner Concerning the allegations in the Complaint.
> . . .
> 20. Identify by name any Persons, including Your spouse, current or former Humana employees, or current or former Government employees, with whom You shared Documents or who shared Documents with You Concerning the allegations in the Complaint.

(*Id.*, at PageID # 42808.)

Around this time, the Parties negotiated their respective obligations to log documents withheld from production on privilege grounds. (DN 410, at PageID # 45870.) In an email dated May 23, 2018, counsel for Humana wrote to counsel for Relator to clarify Relator's proposal that neither party's privilege log would include individual entries for "(1) communications between the parties and their respective litigation counsel, or (2) documents created by the parties' litigation counsel in anticipation of or during litigation." (DN 379-5, at PageID # 42817.) Humana requested that Relator confirm that: (1) "[Relator] himself is not considered litigation counsel"; (2) Relator "would not exclude a communication from [Relator] to his litigation counsel copying a third party, such as Mrs. Lindsay Scott or counsel for the United States"; and (3) Relator "would not exclude a communication from Mr. Scott to attorneys for the United States. Such a communication would be included on Relator's privilege log." (*Id.*, at PageID # 42818.) Humana stated that, "[s]ubject to the foregoing clarifications and confirmations, Humana will agree to accept both of Relator's proposals." (*Id.*) In a letter dated May 25, 2021, counsel for Relator responded to Humana's request for clarifications including the following statement: "To be clear,

2

we do not agree to log communications between litigation counsel and counsel for the United States." (DN 379-4, at PageID # 42808.)

In June 2018, Relator contacted former Chief Actuary of Centers for Medicare & Medicaid Services ("CMS") Richard Foster ("Foster") to request his services as a consulting expert. (DN 410, at PageID # 45866.) In "late 2018," Plaintiff retained Foster to provide additional service as a testifying expert witness. (DN 379-11, at PageID # 42858.) On April 21, 2020, Relator produced Foster's expert report in which Foster stated in relevant part that when CMS identifies outlier assumptions in bid submissions, it will reject the bid unless the sponsor justifies the outlier value or revises the assumption. (DN 379-12, at PageID # 42886.) On June 15, 2020, Relator produced Foster's rebuttal report. (DN 379-13.) On July 17, 2020, Foster sat for his deposition. (DN 379-11.) During the deposition, Humana questioned Foster as to any communications he had with individuals working for the United States Department of Justice ("DOJ") and CMS. (*Id.*, at PageID # 42859, 42862-63, 42865-66.) Foster testified that he had participated in several meetings with DOJ and CMS employees in 2018 and 2019 and exchanged follow up emails about discussions during the meetings. (*Id.*, at PageID # 42863, 42866.) When questioned about the nature of the meetings, counsel for Relator instructed Foster not to answer on the basis that Foster's communications with CMS and the DOJ concerning this case are privileged. (*Id.*, at PageID # 42861-62, 42865-66.)

On July 31, 2020, Humana contacted Relator requesting production of communications between Relator and CMS. (DN 379-14, at PageID # 42949.) Humana stated that although communications with CMS such as those revealed in Foster's deposition are responsive to prior discovery requests, "Relator has not produced any correspondence with CMS, nor has he listed any such communications on his privilege log." (*Id.*) Humana further requested production of

3

any documents Relator provided to the DOJ and CMS in connection with the meetings discussed during Foster's deposition, which Humana said were responsive to a prior discovery request. (*Id.*) On August 4, 2020, Relator responded saying that Foster's communications with CMS were in his capacity as a consulting expert and are thus privileged under Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure. (*Id.*, at PageID # 42948.) Relator further stated that his communications with the DOJ and CMS "are also independently privileged because Relator has a common interest privilege with DOJ and CMS." (*Id.*) Relator explained that he had not included these communications in his privilege log under the Parties' May 2018 agreement concerning the scope of their privilege logs. (*Id.*) Humana contested Relator's position that the communications are privileged and that it agreed that such communications need not be included on Relator's privilege log. (*Id.*, at PageID # 42947.) After several additional exchanges, the Parties reached an impasse, and on August 20, 2020, Humana contacted the Court to request leave to proceed to motion practice. (DN 379-15, at PageID # 42952-53.)

Relator's response to Humana's motion clarifies that Foster engaged in the following communications with the DOJ and CMS:

- June 25, 2018 phone call including Foster, Relator's counsel, and DOJ attorneys;
- August 7, 2018 in-person meeting including Foster, Relator's counsel, and DOJ attorneys;
- October 16, 2018 in-person meeting including Foster, DOJ attorneys, CMS attorneys, and CMS actuaries;
- January 31, 2019 in-person meeting including Foster, DOJ attorneys, CMS attorneys, and other CMS employees; and
- March 27, 2019 phone call including Foster, Relator's counsel, DOJ and CMS attorneys, and other CMS employees.

(DN 410, at PageID # 45866.) As was noted above, Foster testified in his deposition that he also communicated with the DOJ through "e-mails with questions asked following up on the meetings."

(DN 379-11, at PageID # 42863.) The foregoing communications are at issue in Humana's motion.[1]

## II. LEGAL STANDARD

Below, the Court sets for the relevant legal standards governing the application of privileges Relator asserts.

### a. Expert Witness Privilege

Rule 26(b)(4) of the Federal Rules of Civil Procedure governs the scope of expert witness discovery. The Rule distinguishes between experts whose opinions will be presented at trial, referred to as "testifying experts," and experts employed solely for trial preparation, referred to as "non-testifying experts" or "consulting experts." Fed. R. Civ. P. 26(b)(4). Testifying experts may be deposed by any party; however, the Rule shields from disclosure drafts of the testifying expert's reports and any communications between a party's attorney and the party's testifying expert, except communications concerning the expert's compensation or identify facts, data or assumptions the party's attorney provided that the expert considered in forming his opinion. Fed. R. Civ. P. 26(b)(4)(A)-(C). On the other hand, "a party may not, by interrogatories or deposition, discover facts known or opinions held by" a consulting expert except in very narrow circumstances. Fed. R. Civ. P. 26(b)(4)(D).

### b. Work Product Privilege in General

The work product doctrine, or "work product privilege" as it is sometimes known, was first recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). While the work product doctrine has some conceptual overlap with the

---

[1] In its motion, Humana includes a footnote stating that Relator must also produce communications between Relator's other testifying experts, Phillip Ellis and Margaret Sparks. (DN 379, at PageID # 42744 n.7.) Humana has not certified that the parties have made a good faith attempt to resolve this issue nor has the matter been briefed. Accordingly, the Court declines to address this request.

attorney-client privilege, it "is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *In re Antitrust Grand Jury*, 805 F.2d at 163. The attorney-client privilege operates to protect only confidential communications between an attorney and a client, while the work product doctrine exists to protect any document prepared by or for an attorney in anticipation of litigation. *In re Antitrust Grand Jury*, 805 F.2d at 163 (citing *In re Special September 1978 Grand Jury*, 640 F.2d 49, 62 (7th Cir.1980)).

Federal courts apply the federal work product doctrine. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006). The doctrine is currently incorporated in Fed. R. Civ. P. 26(b)(3) to protect from discovery those documents or tangible things prepared in anticipation of litigation by or for a party or the party's representative absent a showing by the party seeking production of substantial need and the unavailability of such information from another source. *Id.*

Rule 26(b)(3) protects: (1) a document or tangible thing; (2) prepared in anticipation of litigation or for trial; (3) by or for a party or its representative. *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009). The federal common law under *Hickman* and its progeny protects both tangible and intangible information. *One Tract of Real Property*, 95 F.3d 422, 427–28 & n.10 (6th Cir. 1996). "Anticipation of litigation" must both subjectively exist when the document is prepared and be objectively reasonable. *In re Professionals Direct Ins. Co.*, 578 F.3d 432 at 439. "[T]he burden is on the party claiming protection to show that anticipated litigation was the driving force behind the preparation of each requested document." *Id.* (internal quotation marks omitted). An ordinary business purpose does not suffice. *Id.*

The work product privilege is not absolute. Under Rule 26(b)(3)(A)(ii), relevant work product material is discoverable if "the party shows that it has substantial need for the materials to

prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." However, in such a situation, the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Work privilege can also be waived by a disclosure that "substantially increases the opportunity for potential adversaries to obtain the information." *Equal Employment Opportunity Comm'n v. Wal-Mart Stores, Inc.*, No. CV 01-339-KKC, 2008 WL 11344709, at *4 (E.D. Ky. Feb 19, 2008) (citing *JA Apparel Corp. v. Abboud*, 2008 WL 111006, at *3 (S.D.N.Y January 10, 2008)). "Other than the fact that the initial waiver must be to an adversary, there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306 (6th Cir. 2002).

      c.   **The Common Interest Rule**

Under the common interest rule, parties facing a "common litigation opponent" or parties that are "friendly litigants" may exchange privileged communications without waiving the privilege. *Travelers Cas. & Sur. Co. v. Excess Ins. Co.*, 197 F.R.D. 601, 606 (S.D. Ohio 2000). There are three situations where the common interest privilege might apply: (1) where a single attorney represents multiple clients in the same matter; (2) where parties share a "common defense"; and (3) where "two or more clients share a common legal or commercial interest and, therefore, share legal advice with respect to that common interest." *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219-220 (W.D. Ky. 2006).

The common interest privilege "does not confer an additional layer of privilege; rather, it protects the transmission of otherwise privileged material." *In re Smirman*, 267 F.R.D 221, 223 (E.D. Mich. 2010). The privilege "assumes the existence of a valid underlying privilege," and that

7

"there is a valid basis for exchanging information with a third party." *Broessel*, 238 F.R.D. at 219. The common interest privilege is not an independent source of privilege or confidentiality. *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008). "If a communication or document is not otherwise protected by the attorney-client privilege or work product doctrine, the common interest doctrine has no application." *Id.*

Thus to establish the privilege, the asserting party must show: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the underlying privilege has not been waived." *Harper v. Everson*, No. 3:15-cv-575-JHM, 2016 WL 8201785, at *7 n.5 (W.D. Ky. June 27, 2016) (quoting *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)).

"The common interest must be a legal one, and the communication must be designed to further that specific legal interest. A commercial interest is not sufficient, and the doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Id.* "Communications shared during a business undertaking lose their privileged status, even though such sharing helped address or ameliorate bona fide concerns about the legal implications of some aspect of the business venture." *Libbey Glass, Inc. v. Oneida*, Ltd., 197 F.R.D. 342, 348 (N.D. Ohio 1999). Communications made before an agreement to proceed jointly are not privileged, and extraneous communications that do not further the common goal are also not privileged. *Coohey v. Strickland*, 269 F.R.D 643, 653 (S.D. Ohio 2010).

### III. DISCUSSION

Below, the Court assesses Relator's privilege claims.

#### a. Expert Witness Privilege

Relator argues that under Rule 26(b)(4)(D), "Foster's status as a consulting expert [] precludes Humana's discovery of his communications with the [DOJ and CMS]." (DN 410, at PageID # 45881.)  Relator says that Foster served as a consulting expert beginning in June 2018 and continued that role even after also being designated as a testifying expert. (*Id.*)  Relator further attests that Foster was acting in his role as a consulting expert and not as a testifying expert in participating in the meetings with the DOJ and CMS. (*Id.*)  Relator filed an affidavit in which Foster swore that, "[o]ther than information the [CMS] has produced to both parties in this litigation, none of my opinions in any of those three expert reports are based on any information from or communications with current government officials, including officials from CMS, since I have been retained in this case." (DN 410-1, at PageID # 45890.)  In response, Humana notes that Rule 26(b)(4)(D) applies only to non-testifying experts and that Foster was retained as a testifying expert before some of the communications at issue took place. (DN 412, at PageID # 46161-62.) Humana argues that communications between Foster and the DOJ and CMS exchanged after Foster was retained as a testifying witness should be governed by Rule 26(b)(4)(C). (*Id.*, at PageID # 46162.)  In the alternative, Humana argues that even if all of Foster's communications with CMS and the DOJ were made in his capacity as a consulting witness, disclosure would still be justified under Rule 26(b)(4)(D)(ii) "because his communications bear directly on Humana's materiality defense and it can obtain the evidence in no other way." (*Id.*)

The line between a testifying expert and a consulting expert is blurred when the expert plays a dual role as both a testifying and consulting expert.  "The proponent of a dual-hat expert, *i.e.* an expert that is both a consulting and testifying expert, may still claim that materials are privileged under Rule 26(b)(4)(D), 'but only over those materials generated or considered *uniquely* in the expert's role as consultant.'" *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh*

9

*Prod. Liab. Litig.*, No. 2:18-MD-2846, 2021 WL 2280657, at \*4 (S.D. Ohio June 4, 2021) (quoting *In re Com. Money Ctr., Inc., Equip. Lease Litig.*, 248 F.R.D. 532, 539 (N.D. Ohio 2008)). In determining which hat an expert is wearing when engaging in particular communications, courts in this circuit look to whether the communication contains information that the expert "considered" in forming his testifying opinion. *See Deere & Co. v. FIMCO, Inc.*, No. 5:15-CV-105-TBR-LLK, 2016 WL 11269254, at \*3 (W.D. Ky. Dec. 5, 2016), *adhered to on denial of reconsideration*, No. 515CV00105TBRLLK, 2016 WL 11268964 (W.D. Ky. Dec. 22, 2016); *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-01572-SL, 2020 WL 8675391, at \*2 (N.D. Ohio Oct. 30, 2020), *objections overruled*, No. 5:15-CV-1572, 2021 WL 395891 (N.D. Ohio Feb. 4, 2021); *In re Davol*, at \*4; *Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*, No. 19-CV-2754-JPM-TMP, 2021 WL 3276608, at \*4 (W.D. Tenn. July 30, 2021). "Ambiguities" in whether an expert considered a document "are resolved in favor of discovery." *In re Davol*, at \*2 (citing *W. Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2045-CM, 2012 WL 181494, at \*16 (D. Kan. Jan. 31, 2002)).

Here, Relator contends that all information that Foster relied upon in his expert report has been disclosed and all withheld communications between Foster and the government concerned information outside the scope of his role as a testifying expert. (DN 410, at PageID # 45866-68.) This claim is difficult to assess given that Relator has not shared *any* details about the substance of these communications other than to say that it does not overlap with the substance of Foster's expert reports. (*Id.*) Relator did not itemize the communications on his privilege log, nor has he confirmed that the meetings, phone calls, and emails that Foster revealed during his deposition are the only communications Foster exchanged with the government. (*Id.*, at PageID # 45882-84.) Instead, Relator merely offers Foster's affidavit in which Foster swears that his expert reports were

10

not based on information in the communications at issue. (*See* DN 410-1.) However, "[e]ven when an expert states that he did not consider certain materials in forming his opinions, federal courts have concluded that such an assertion 'does not control.'" *In re Davol*, at *3 (citations omitted). Instead, "the courts have embraced an objective test that defines 'considered' as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion if the subject matter relates to the facts or opinions expressed." *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 1:05CV80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007) (citations omitted). *See* Fed. R. Civ. P. 26(a)(2)(B) advisory committee note to 2010 amendment ("[T]he intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert.").

Here, there is no doubt that Foster was exposed to the information exchanged in the calls, meetings, and emails with the DOJ and CMS because he was a participant. (*See* DN 410, at PageID # 45866.) The January 31, 2019 meeting and March 27, 2019 call took place during the same time period that Relator says Foster was retained as testifying expert. (*Id.*, at PageID # 45866.) Foster testified that he spoke to CMS actuary Jennifer Lazio ("Lazio") during one of these meetings. (DN 410-1, at PageID # 42866.) Lazio has provided several declarations that have been entered into the record. (*See generally* DN 345-5; DN 345-6; DN 345-14; DN 345-15.) Foster's expert report cites two of these declarations, including one signed January 3, 3019, around the same time Foster spoke with her. (DN 350-2, at PageID # 32573; DN 350-5, at PageID # 33094-98.) Notably, in his supplemental expert report, Foster opines as to the credibility Lazio's statements in an August 7, 2020 declaration. (DN 380-4, at PageID # 42986.) Without knowing what was communicated

11

between Foster and Lazio, this circumstantial information undermines Relator's assertion that there was no overlap between Foster's 2019 conversation with Lazio and topics relevant to his work as a testifying expert.

The timeline of Foster's dual work as a consulting and testifying witness is also fuzzy. For example, based on the record, it is possible that the October 16, 2018 meeting took place either before or after Foster was retained as a testifying witness. It is not clear to the Court because Relator and Foster can only say that Foster's role as a testifying witness began in "late 2018" or "[a]t the end of 2018," without recalling a specific date or month. (DN 410, at PageID # 45866; 410-1, at PageID # 45889.) The fact that Foster cannot even say when he was designated as a testifying expert makes it all the more prescient that "[h]e 'cannot be expected to draw a mental line in the sand between information gleaned' in an earlier, consulting context and information later learned as a testifying expert . . . ." *In re Davol*, at *4 (quoting *Yeda Rsch. & Dev. Co. v. Abbott GMBH & Co. KG*, 292 F.R.D. 97, 108 (D.D.C. 2013)). *See Deere & Co.*, at *4 (finding that an expert retained in both consulting and testifying roles considered information at issue in his capacity as testifying expert because of "the extent of interplay between the two roles and the proximity in time to the information gathered in each role"). Relator's failure to resolve the ambiguity as to whether the communications at issue served any basis for Foster's expert report favors discovery. The Court therefore finds that Rule 26(b)(4)(D) does not apply to any of Foster's communications with the government, and discovery about those communications is only protected to the extent provided under Rule 26(b)(4)(C).

### b. Attorney Work Product Privilege

Relator argues that "Foster's communications with the government concerned core attorney work product that he was instructed by Relator's attorney to undertake." (DN 410, at

PageID # 45875.)  Relator believes that the work product privilege applies by virtue of Foster serving "as a consulting expert and then a testifying expert to assist Relator in the prosecution of this suit and he also consulted with the government pursuant to his agreement with Relator." (*Id.*, at PageID # 45874-75.)  In response, Humana argues that Foster cannot generate attorney work product because Rule 26(b)(4) exclusively governs the permissible scope of discovery related to the documents and communications of testifying expert witnesses, even if the discovery "might otherwise fall under the work product doctrine . . . ."  (DN 379, at PageID # 42724.)

Humana accurately states the law. Attorney work product privilege "applies to attorney work product and generally does not extend to experts because 'expert discovery is a special category specifically regulated by Rule 23(b)(4).'" *In re Davol*, at *4 (quoting Steven S. Gensler & Lumen N. Mulligan, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 26, (2021)). While Rule 26(b)(4)(C) protects communications between an expert and a party's attorney, "the 'protection does not extend to an expert's own development of the opinions to be presented: those are subject to probing in deposition or at trial.'" *Deere & Co.*, at *3 (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 293 F.R.D. 568, 577 (S.D.N.Y 2013)). See Fed. R. Civ. P. 26(b)(4) advisory committee's note to the 2010 amendment ("[I]nquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule.").  Thus, Foster's communications with the DOJ and CMS are only protected to the extent that they include work product created on Relator's behalf by a nonexpert representative, such as Relator's counsel.

The Court is substantially hindered in its ability to determine whether the discovery at issue includes such attorney work product because the only description of the communications Relator has provided consists of vague, conclusory statements.  (*See e.g.* DN 410, at PageID # 45867)

13

("[T]he discussions and meetings concerned attorney work product regarding Relator's claims."). Without more information, the Court is skeptical, for example, that the communications between Foster and the DOJ and CMS employees present at the October 16, 2018 and January 31, 2019 meetings include attorney work product because Foster was the only person retained by Relator present at those meetings. (*See* DN 410, at PageID # 45866.) Rather than trying to guess what information may be in the communications at issue, the Court will order Relator to update his privilege log with respect to the discovery at issue before any further disclosures will be required.

### c. Common Interest Rule

Relator says that that it has entered into a written common interest agreement with the United States. (DN 410, at PageID # 45873.) Relator did not provide the Court with this agreement nor did he describe its terms. The existence of a common interest agreement does not mean that the common interest privilege applies, and in fact, "[c]ourts reject over half of the common interest agreements they assess." THOMAS E. SPAHN, A PRACTITIONER'S SUMMARY GUIDE TO THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE § 20.11 (2013). The burden to establish the privilege rests with the Relator. *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993).

The Parties provided extensive briefing on whether the common interest rule applies to communications among Relator, CMS and the DOJ. (See DN 379, at PageID # 42746-47; DN 410, at PageID # 45873-77; DN 412, at PageID # 46163-64.) In light of the Court's analysis above, the question is wholly irrelevant to the existence of a privilege and any waiver. Relator asserts that the common interest rule "protects from discovery all communications, except those that must be disclosed under Rule 26, that Mr. Foster had with the government since he was retained as an expert witness." (DN 410, at PageID # 45873.) Relator greatly overstates the scope of the common

interest rule. Assuming without deciding that Relator, the DOJ, and CMS share a community legal interest, the common interest rule still would only protect communications designed to further that shared interest. *See Harper*, at *7 n.5 (quoting *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)). Additionally, the common interest privilege is not an independent source of privilege or confidentiality. *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008). "If a communication or document is not otherwise protected by the attorney-client privilege or work product doctrine, the common interest doctrine has no application." *Id.* As discussed in Part III(a)-(b) *supra*, if the communications at issue do include independently privileged information, the basis of the privilege would be attorney work product. The fact attorney work product may have been shared with third parties CMS and the DOJ does not waive the privilege because CMS and the DOJ are not Relator's adversaries. *See In re Columbia*, 293 F.3d at 306. Thus, Relator need not establish that the common interest rule applies to show that the privilege wasn't waived.

### d. Waiver

Humana argues that any privilege covering Foster's communications with the government is waived because Relator did not include them on his privilege log. (DN 379, at PageID # 42730.) Under Rule 26(b)(5)(A), when a party withholds discoverable information as privileged, the party must describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The party raising a privilege has the burden of establishing the existence of the privilege. *First Horizon Nat'l Corp. v. Certain Underwriters at Lloyd's*, No. 211CV02608SHMDKV, 2013 WL 11090763 at *6 (W.D.

15

Tenn. Feb. 27, 2013) (citing *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983)). Compliance with Rule 26(b)(5)(A) typically requires:

> (1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
> (2) The date upon which the document was prepared; (3) The date of the document (if different from # 2);
> (4) The identity of the person(s) who prepared the document;
> (5) The identity of the person(s) for whom the document was prepared . . . ;
> (6) The purpose of preparing the document, including an evidentiary showing, based on competent evidence, supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent; a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, that the documents do not contain or incorporate non-privileged underlying facts;
> (7) The number of pages of the document;
> (8) The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
> (9) Any other pertinent information necessary to establish the elements of each asserted privilege.

*Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2017 WL 6939338, at *13 (W.D. Ky. Feb. 16, 2017) (quoting *Coohey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010)) (internal quotation marks omitted).

"Failure to provide the privilege log can, but does not necessarily, result in waiver of the claimed protection." *Allen v. Lickman*, No. 13-13401, 2014 WL 12768335, at *2 (E.D. Mich. Oct. 31, 2014) (citation omitted), *objections overruled*, No. CA 13-13401, 2015 WL 506673 (E.D. Mich. Feb. 6, 2015).

Relator argues that logging communications between Foster and the DOJ or CMS is not required because Foster is not a party to this case, noting that the Rule covers information withheld by "parties." (DN 410, at PageID # 45882-83.) That may have been a valid excuse if Relator was

16

not in possession of any communications between Foster and the government, but this is unlikely given that Relator's counsel participated in several of the meetings and calls that Foster attended with the DOJ and CMS. (DN 410, at PageID # 45866.) Further, Relator's semantic understanding of the Rule doesn't justify the failure to log *any* communications with the DOJ and CMS.

Relator also argues that he was not required to log communications related to Foster's work as a consulting expert. (*Id.*, at PageID # 45883.) Relator emphasizes that the Rule only requires logging withheld documents that are "otherwise discoverable," and argues that none of Foster's communications with the government meet that definition due to the privileges afforded by Rule 26(b)(4). (*Id.*) Relator cites to two unreported district cases from outside this circuit as supportive of this interpretation. (*Id.*, at PageID # 45883-84.) In reply, Humana argues that Relator's theory is inconsistent with Rule 26 and with caselaw from the Sixth Circuit. (DN 412, at PageID # 46167.) Humana is correct. Relator's circular logic suggests that the Rule requires parties to assert that a privilege applies unless a privilege applies. This, of course, would eliminate the entire requirement. In reality, "[t]he only way for a party properly to evade the privilege log requirement is by arguing that the privileged material is not 'otherwise discoverable' based also on non-privilege grounds, such as irrelevance or undue burden." *Lickman*, at *3.

Finally, Relator cites his May 2018 agreement with Humana regarding the scope of one another's privilege log, which led Relator to believe that he was not expected to log communications between his counsel and counsel for the United States. (DN 410, at PageID # 45868-69.) (*See* DN 379-4, at PageID # 42808.) In response, Humana says that it never agreed to this term, and that even if it had, Relator would still be obligated to log Foster's communications with the DOJ and CMS and counsel's communications with CMS, neither of which constitute

17

communications between Relator's counsel and counsel for the United States. (DN 412, at PageID # 46167-68.)

The Court finds that Relator was obligated to log withheld communications with the government beginning when Humana served its request for production of these communications on March 27, 2018. While Relator may have thought his practice of not logging communications with counsel for the DOJ was proper, he had no reason to refuse to update his privilege log when the instant dispute arose, and in fact his refusal to do so is inconsistent with a good faith effort to resolve the dispute. Moreover, when Relator's assertions of privilege were challenged before the Court, the decision not to provide a log of the communications at issue was self-sabotaging. Indeed, "failure to provide the court with information of sufficient specificity to permit the court to determine whether the privilege asserted applies to the withheld documents provides an independent ground for finding a waiver of any privilege or immunity." *Carfagno v. Jackson Nat'l Life Ins. Co.*, No. 5:99CV118, 2001 WL 34059032, at *2 (W.D. Mich. Feb. 13, 2001). *See Lickman*, at *2 ("Many courts, in contrast, mention the lack of a privilege log when deciding to deny the privilege on the merits, implying the absence of the log indicates a poor argument for the privilege.") (citations omitted).

The question thus becomes whether Relator should be deemed to have waived any relevant privileges. "Waiver is an 'extreme sanction' typically 'reserved for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests.'" *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2017 WL 3668848, at *2 (S.D. Ohio Aug. 24, 2017) (quoting 6 DANIEL R. COQUILLETTE ET AL., MOORE'S FEDERAL PRACTICE § 26.90[2] (3d ed. 2018)) The Court declines to impose the sanction here. This case has seen three years of aggressive litigation including numerous successful and unsuccessful discovery motions by both Parties. Even the issue

of sufficiently logging third-party communications on a privilege log has been the subject of motion practice, in that instance resulting in an order for Humana to supplement its privilege log. (DN 223.) Relator will be required to supplement his privilege log and submit to further discovery at this late stage in the case. This is enough of a penalty.

IV.     **ORDER**

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1. Humana's motion to compel (DN 379) is **GRANTED in part** and **DENIED in part**.

2. On or before **November 1, 2021**, Relator shall produce a supplemental privilege log consistent with this order.

3. On or before **November 1, 2021**, Relator shall produce any nonprivileged documents related to communications with the DOJ and CMS as requested by Humana's RFP 7 and 9 and supplement his response to Interrogatories 19 and 20 with respect to those communications.

4. On or before **December 1, 2021**, Relator shall produce Foster for deposition limited to the topic of Foster's communications with the DOJ and CMS concerning this case.

Colin H Lindsay, Magistrate Judge
United States District Court

August 31, 2021

cc: Counsel of record