**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.  3:18-CV-00061-GNS-CHL**

**UNITED STATES OF AMERICA** *ex rel Steven Scott*, **et al.,**                          **Plaintiffs,**

**v.**

**HUMANA INC,**                                                                          **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court are two motions for leave to file under seal portions of the Parties' summary judgment briefings filed by Defendant Humana Inc ("Humana").  (DN 427; DN 431.) Relator Steven Scott ("Relator") has filed responses in opposition to the motions (DN 450; DN 449), to which Humana has filed replies (DN 452; DN 451).  Therefore, these motions are ripe for review.

## I.      BACKGROUND

On August 14, 2020, Humana filed its motion for summary judgment, which is briefed by the Parties at DN 345, DN 388, and DN 421.  On August 15, 2020, Relator filed his motion for summary judgment, which is briefed by the Parties at DN 346, 397, and DN 425. Because these filings contain information covered by the Parties' confidentiality stipulation, each was preceded by a motion to file under provisional seal pending any motion by a Party to permanently seal.  (DN 343; DN 344; DN 387; DN 396; DN 420; DN 424.)   In the instant motions, Humana seeks permanently seal portions of 268 different documents filed in connection with the Parties' motions

for summary judgment.[1]   (*See* DN 427-1; DN 431-1) (Humana's appendixes of exhibits with proposed redactions).

## II.      LEGAL STANDARD

Although the Sixth Circuit has long recognized a "strong presumption in favor of openness" regarding court records, there are certain interests that overcome this "strong presumption." *Rudd Equipment Co., Inc. v. John Deere Construction & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). These interests include "certain privacy rights of participants or third parties, trade secrets, and national security." *Brown*, 710 F.2d at 1179.  The party seeking to seal the records bears a "heavy" burden; simply showing that public disclosure of the information would, for instance, harm a company's reputation is insufficient. *Id.*; *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016).  Instead, the moving party must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed.  *Shane*, 825 F.3d at 307.  Examples of injuries sufficient to justify a sealing of judicial records include those that could be used as "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978).

In rendering a decision, the Court must articulate why the interests supporting nondisclosure are compelling, why the interests supporting public access are not as compelling, and why the scope of the seal is no broader than necessary. *Shane*, 825 F.3d at 306.  Importantly, the presumption that the public has the right to access judicial records does not vanish simply because all parties in the case agree that certain records should be sealed. *Rudd*, 834 F.3d at 595

---

[1] Humana does not request that the Court maintain the remaining documents related to the Parties' motions for summary judgment permanently under seal.  Accordingly, the Court will order that these documents be permanently unsealed.

(noting that although the defendant did not object to the plaintiff's motion to seal, his lack of objection did not waive the public's First Amendment and common law right of access to court filings); *Shane*, 825 F.3d at 305 ("A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody.").

## III.   DISCUSSION

This case is distinct from most civil actions in that it has been litigated largely in the dark, with the Parties filing documents under provisional seal as a matter of course.  These provisional seals remain in place as litigation progresses pending a resolution of any motion to make them permanent, sometimes for over a year.  That isn't to say that the Parties' requests have been unwarranted, nor is it unexpected that sensitive information would be in the record in this type of action.  However, it is not an overstatement to say that Humana has been liberal in its requests for sealing orders.  Still, the number of permanently sealed documents on the docket is not necessarily problematic, since generally, "[s]ecrecy is fine at the discovery stage."  *Shane*, 825 F.3d at 305 (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)).  "At the adjudication stage, however, very different considerations apply."  *Id.*  (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).  And when evidence is presented to a court for a final decision in a case, transparency is critical because "the public is entitled to assess for itself the merits of judicial decisions."  *Id.*  With that in mind, the Court addresses the propriety of sealing each of the documents at issue.[2]

---

[2] In his responses to Humana's motions to seal (DN 427; DN 431), Relator argues that Humana's motions are not timely because they were not filed within ten days of some of the underlying briefs.  (DN 449, at PageID # 63667–68; DN 450, at PageID # 63686–87.)  Relator points to the Court's November 16, 2019 order, which directed that "[a]ll future motions to seal must be filed within 10 days of filing the corresponding underlying substantive motion." (DN 247, at PageID # 18361.)  Relator raised the same argument in opposing one of Humana's previous motions to seal.  (DN 369, at PageID # 42664.)  In its March 9, 2021 order, the Court rejected Relator's argument and clarified that any motion to seal a document "shall be filed within ten days of the complete briefing of the underlying substantive motion."  (DN 461, at PageID # 64340.)  Because Humana's instant motions to seal were filed within ten days of the complete briefing of the Parties' motions for summary judgment, the motions were timely filed.

### a. Compelling Reason

Humana's motions identify four categories of information in which it claims a compelling privacy interest. First, Humana cites "Internal Financial Projections," which include "key financial metrics and values that are critical to Humana's business." (DN 431, at PageID # 52848.) (*See* DN 427, at PageID # 49543.) Humana characterizes this information as "trade secrets" and says that public access "could reveal the development process and the factors Humana considers when formulating its financial projections, such that competitors and business partners could use it to gain advantage over Humana." (*Id.*) Second, Humana cites "Confidential Bid Information," which includes "internal data that relates to the development of Humana's Medicare Part D bids, such as bid development and strategy, internal actuarial metrics and related data, and information regarding payments between Humana and CMS." (*Id.*) Humana says that its "competitors could use this data to tailor their own Part D pricing strategy, putting Humana—who would not have access to similar information concerning its competitors' internal Part D bid development—at a significant competitive disadvantage in the Part D market." (*Id.*) Third, Humana cites "Business and Marketing Information," which includes "Humana's internal strategy and financial information related to Humana's marketing, member outreach, and business initiatives." (*Id.*) Humana says that "[p]ublic disclosure of that information would grant Humana's competitors an unfair commercial advantage that they could use to derive insights into Humana's unique marketing strategies without incurring Humana's substantial development costs." (*Id.*, at PageID # 52848–49.) Fourth, Humana cites "Information Designated by CMS as Confidential," which includes information produced and designated as "Highly Confidential" by CMS, such as third-party bid data. (*Id.*, at PageID # 52849.)

In assessing Humana's privacy interests, the Court notes at the outset that none of the information at issue falls into one of the three recognized exceptions that are typically sufficient to overcome the presumption of access.  Although Humana claims that its internal financial projections constitute trade secrets, the only basis offered for that claim is the declaration of Akure Paradis, Humana's senior counsel, stating that the proposed redactions contain trade secrets.  (DN 427-2, at PageID # 47078.)  "It is widely accepted by federal courts that a party seeking trade secret protection 'must identify its trade secrets with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.'"  *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 786 (E.D. Mich. 2019) (quoting *Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F.Supp.2d 340, 346 (D. Del. 2012)).  To qualify for protection as a trade secret, "information must (1) derive economic value from the fact that it is not known to others who could make use of it, and (2) be the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 410 (6th Cir. 2006).  Here, other than Paradis's *ipse dixit*, Humana has not "even tried to demonstrate that any of the [internal financial projections] is comparable to a trade secret."  *Id.*

However, Humana may still establish that the information at issue is entitled to protection, because "even if a trade secret does not exist, a court may still find a compelling reason exists."  *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 638 (6th Cir. 2019).  Humana proffers that protecting business information that could be used by its competitors to harm its competitive standing and protecting the privacy rights of innocent third parties are compelling reasons to seal.  (DN 427, at PageID # 47038; DN 431, at PageID # 52853.)  The Sixth Circuit has addressed when protecting a litigant's sensitive business information and third party information justifies sealing

documents filed in the record.  In *Brown*, the court found that documents containing information gathered by a regulatory agency during its investigation of five tobacco companies had been improperly sealed by the district court.  710 F.2d at 1180–81.  The court acknowledged "the natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public."  *Id.* at 1180.  Nonetheless, the court found that protecting such information "cannot be accommodated by courts without seriously undermining the tradition of an open judicial system."  *Id.*  The court therefore instructed that "a court should not seal records unless public access would reveal legitimate trade secrets, a recognized exception to the right of public access to judicial records."  *Id.*  In *Shane*, the court found that documents filed in a class action suit alleging price-fixing by a health insurer were improperly sealed by the district court.  825 F.3d at 308.  The court found that the insurer's concern about public access to "competitively-sensitive financial and negotiating information" contained in the documents was inadequate to justify sealing.  *Id.* at 301–08.  In doing so, the court emphasized that such information did not fall into the three categories of information that are typically sufficient to overcome the presumption of public access.  *Id.* at 308.  For example, the court found that the information at issue was "not entitled to protection as a legitimate trade secret."  *Id.*  The Court also found that to the extent the information contained third party hospitals' financial and negotiating information, there was still no compelling reason to seal the exhibits because "there is no statutory or regulatory privilege that protects their information from disclosure, and the particulars of years-ago negotiations are unlikely to amount to a trade secret."  *Id.*  *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 787 (E.D. Mich. 2019) ("[T]he cases where the sealing of information has been upheld concerned clearly personal and impertinent details associated with third parties, such as personal identifying information of crime victims or financial records of a bank's

customers.").  As *Brown* and *Shane* make clear, business information and information related to innocent third parties are not entitled to any special protection, and a party who wished to seal such information bears the burden of "showing that 'disclosure will work a clearly defined and serious injury.'" *Id.* at 307 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

### i.  Humana's Business Information

Humana has a compelling interest in concealing business information that can be used to seriously harm its competitive standing.  This Court recognizes that parties may have a compelling privacy interest in "sources of business information that might harm a litigant's competitive standing." *Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *5 (W.D. Ky. June 26, 2018) (quoting *Nixon*, 435 U.S. at 598).  The Court has also made specific findings that Humana's privacy interests in such information provided a compelling reason to seal some of the documents at issue here.  (*See, e.g.*, DN 471) (granting redactions to three documents at issue here when filed previously in the record).   Relator argues that Humana has not made a clear showing that public access to the information at issue could harm Humana's competitive standing because it is "predominantly outdated and generalized information."  (DN 449, at PageID # 63668; DN 450, at PageID # 63687.)  In response, Humana says that "the proposed redactions concern historical bid and budget assumptions, actual experience data, and business initiatives, and thus contain the very type of information that bears on Humana's ongoing strategy for existing Medicare Part D plans."  (DN 451, at PageID # 63708; DN 452, at PageID # 63725.)  The Court has previously found that detailed numerical summaries regarding Humana's historical bids and profit margins could be used by competitors to undercut Humana's marketplace standing.  (DN 247, at PageID # 18336.)  However, it is reasonable to assume that the risk of competitive harm is lower in disclosing historical business records over more recent ones. *See Shane*, 825 F.3d at 308

(finding that "the particulars of years-ago negotiations are unlikely to amount to a trade secret"). Indeed, the Court has declined to seal dated numerical figures because of a low likelihood that they could be used to Humana's detriment.  (DN 456; DN 461.)  Thus, this factor may reduce the Humana's interest in concealing particular pieces of information at issue here. Additionally, the Court has consistently denied Humana's request to seal documents containing "generalized information" about the case, deposition topics, pharmacy utilization, and bid development.  (*See generally* DN 246; DN 247.)  The Court considers the foregoing in assessing each of Humana's proposed redactions to documents containing its business information.

### ii.  CMS Nonpublic Information

There is a compelling interest in concealing information that would undermine CMS's administration of the Part D program if made public.  This includes information submitted to CMS by third party Part D sponsors and information about its review and audit process.  CMS considers this nonpublic information to be confidential.  (DN 414-2, at PageID # 46203.)  Indeed, CMS resisted Humana's requests for discovery related to this action.  On November 13, 2018, Humana filed a motion to compel compliance with a subpoena served on CMS by the United States District Court for the District of Columbia, to which CMS filed an opposition.  *Scott v. Humana*, 1:18-mc-00168-RDM, DN 1, DN 8 (D.D.C.).  Humana ultimately withdrew the motion following an entry of an agreed protective order by that court. 1:18-mc-00168-RDM, DN 14.  Under the protective order, Humana is required to move for leave to seal documents produced by CMS designated as highly confidential.  (DN 427, at PageID # 47037.)  Humana designated as highly confidential: (1) documents describing questions CMS asked Part D sponsors during or after Part D bid reviews or audits; (2) CMS guidance for the agency's Part D bid review and audit contractors; and (3)

contractor business rules for the enrollment and reassignment of low-income Part D members. 1:18-mc-00168-RDM, DN 15 at p. 4–5.

On April 29, 2019, CMS's actuarial director, Jennifer Lazio completed a declaration in which she described the harm that would result if highly confidential documents it produced were made public. (DN 414-2, at PageID # 46199–46201.)  CMS produced its worksheet 1, which summarizes information about each sponsor's Part D plan, including allowed cost, membership, and cost sharing by claim interval.  (*Id.*, at PageID # 46200.)  Lazio stated that "[w]ith the information on worksheet 1 for all plans, one could easily identify how many zero claim beneficiaries there are in the region, and across the country." (*Id.*)  With this information and publicly available data, Lazio says that an interested party could determine what the most attractive design is for these beneficiaries.  (*Id.*, at PageID # 46200–01.)  Lazio also says that access to average cost sharing per member for each plan listed in worksheet 1 in combination with publicly available data would allow a sponsor "to choose a benefit structure that maximizes the beneficiary share of costs or the government subsidy for low-income cost sharing." (*Id.*, at PageID # 46201.) Lazio says that these opportunities to game the system could give a sponsor a significant competitive advantage and "upset the competitive environment of the Part D program." (*Id.*) CMS also produced nonpublic documents concerning its bid review process and audit procedures.  (*Id.*, at PageID # 46201–03.)  Lazio says that public access to this information "could undermine CMS' ability to provide meaningful oversight of the $100 billion Part D program" by allowing sponsors to structure their bids to evade CMS scrutiny and making sponsors hesitant be forthcoming in the review process for fear that their information will be shared with their competitors.  (*Id.*, at PageID # 46203–04.)

Relator does not dispute the potential for injury that Lazio claims will result from disclosure and "defers to CMS on whether this information should be available to the public . . . ." (DN 449, at PageID # 63683; DN 450, at PageID # 63699.)  Courts "heavily" weigh the privacy interests of innocent third parties in deciding whether filings should be sealed.  *Shane*, 825 F.3d at 308.  Here, not only is CMS an innocent third party, it is also the victim of Humana's alleged fraud.  It would be counterproductive for litigating alleged abuses of the Part D bidding process to run the risk of exposing CMS to further abuses and making it more difficult to detect them.  Such abuses would result in concrete harm to CMS's other sponsors and Part D beneficiaries.  To the extent that Humana's proposed redactions cover information the exposes it to such harm if made public, the Court will weigh that interest against the public interest in access to the information.

### b. Public Interest

At minimum, "[t]he public has a strong interest in obtaining the information contained in the court record."  *Shane*, 825 F.3d at 305 (quoting *Brown*, 710 F.2d at 1180).  Beyond that, the particular circumstances of a case may strengthen that interest; "the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access."  *Id.* at 305.  "The inverse is true, too. The lesser the public interest in the litigation's subject matter, the lesser the showing necessary to overcome the presumption of access."  *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS-CHL, 2017 WL 3220470, at *5 (W.D. Ky. July 28, 2017).  Here, the subject matter of this litigation heightens the presumption of access.  At its core, the case is about the cost of prescription drugs, a leading national concern among Americans.  As for the issues presented in this *qui tam* action, Relator alleges that Humana knowingly defrauded its beneficiaries—members of the public entitled to subsidized healthcare—and CMS in the amount of $412 million dollars.  (DN 1, at PageID # 34.)

It is thus fair to say this is among "government regulation" cases that "involve issues crucial to the public." *Brown*, 710 F.2d at 1179. Humana is the among the largest health insurers in the nation and a leading employer in the state, so the public has a strong interest in examining the bases of the allegations against it. Because the focus of those allegations is conduct by individuals constituting corporate fraud, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Shane*, 825 F.3d at 305 (citation omitted).

Additionally, transparency is most important at this stage of litigation, when the merits of the case are being decided. *Id.* at 305. *See Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, No. 3:19-CV-778-DJH-CHL, 2020 WL 6946577, at *3 (W.D. Ky. Nov. 25, 2020) (public interest in access was "especially strong" for a document "offered in support of a motion for summary judgment, which will result in a ruling on the merits as a matter of law"). When documents are filed in support of a motion for summary judgment, "the public would have a substantial interest in knowing what evidence exists (or does not exist) that would show that [a defendant] engaged in [actionable] conduct." *Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *6 (W.D. Ky. June 26, 2018). *See Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (holding that documents filed in support of a motion for summary judgment in a civil case are entitled to a more rigorous standard); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) (same); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir.2003) (same).

Humana argues that the information at issue "is no less confidential just because the proposed redactions pertain to information in support of a summary judgment motion." (DN 451, at PageID # 63708 n.5; DN 451, at PageID # 63725 n.5.) Humana cites to two cases in which this Court granted motions to seal summary judgment exhibits in disputing the proposition that "that

at summary judgment the public interest warrants full disclosure of confidential information . . . ."
(DN 451, at PageID # 63704; DN 452, at PageID # 63721) (citing *Marathon*, 2019 WL 4452956
at *1 and *CFPB v. Borders & Borders*, PLC, 2017 WL 2543305, at *1 (W.D. Ky. June 12, 2017).
Neither applies here.  In *Marathon*, this Court sealed four exhibits filed in support of a motion for
summary judgment, including the defendant's supply agreements with third parties and related
documents.  2019 WL 4452956 at *3.  The Court found that the public interest in access to the
exhibits was low because the underlying motion for summary judgment was based solely on
personal jurisdiction, so "the specific exhibits at issue are not being offered as evidence on the
merits of the case."  *Id.*  In *Borders & Borders*, the Court sealed an exhibit that included about
1,550 third party residential mortgage closing files based on the Court's finding that "the exhibit
contains information from non-parties that likely would be considered sensitive."  2017 WL
2543305 at *2.  The proponent of sealing had argued that "sealing the documents would not limit
the public's access to the information litigated in this case," but the Court did not address this point
in its analysis.  *Id.*  While it's true that a reason for sealing a document is no less compelling
because it's attached to a motion for summary judgment, the proponent of sealing faces a much
taller hurdle at the summary judgment stage, as the Court has repeatedly made clear to Humana in
its sealing orders throughout this case.  (*See generally* DN 246; DN 247; DN 263; DN 373)
(emphasizing that documents were "not being offered as evidence on the merits of this case at this
point in time" in granted Humana's requests to seal).  (*See also* DN 216, at PageID # 12855 n.13)
("If presently-redacted information becomes more important to this Court's later decisions, the
interests supporting public access may increase as well.").

Humana also emphasizes that it is not requesting to seal the entire summary judgment
briefings and exhibits and that its proposed redactions leave most pages available to the public.

(DN 451, at PageID # 63706; DN 452, at PageID # 63723.)  Humana says that the information it does seek to redact is not necessary for the public to understand the Parties' briefs or the Court's pending decision.  (*Id.*)  Specifically, Humana says its redactions cover information that is irrelevant to any of the issues presented in this case as well as documents that Relator filed without citing them anywhere in his briefs.  (*Id.*)  Humana acknowledges that some of its proposed redactions bear on the merits of the case but argues that the competitive harm it would face if the information were made public outweighs the public's interest in accessing that information.  (DN 429, at PageID # 47052; DN 431, at PageID # 52865.)  Along with the strong public interest in access to evidence offered on the merits at summary judgment in a case of this nature, the Court considers these mitigating factors in assessing each of Humana's proposed redactions.

### c.  Application

In the interest of using the Court's finite resources efficiently, the Court will not discuss each individual document or excerpt Humana seeks to conceal.  The Court conducted a thorough review of the 268 exhibits covered by Humana's motions to seal and assessed each individual redaction Humana proposes.  The Court reminds the Parties that if an exhibit has been previously ruled upon by the Court, attorneys have a duty of candor to the Court to state so in their pending motion to seal.  However, any finding in a prior motion to seal does not ensure that the documents will remain redacted if cited again in the future or refiled elsewhere in the record. If presently-redacted information becomes more important to this Court's later decisions, the interests supporting public access may increase as well. *See Rudd Equip. Co., Inc.*, 834 F.3d at 594. Likewise, absent a direct and meritorious motion, the Court will not endeavor to conceal these documents if presently in the record elsewhere.

### i.  Requests that Will Be Granted

The Court finds that the balance of interests weighs in favor of granting Humana's proposed redactions to the exhibits filed at the following docket numbers:

345-17, 345-19, 345-30, 345-31 345-32, 345-33, 345-34, 345-37, 345-39, 345-44, 345-49, 345-59, 345-60, 345-64, 345-66, 345-67, 345-72, 345-73, 345-79, 345-82, 345-85, 345-86, 345-88, 352-19, 353-18, 354, 354-19, 355-1, 355-2, 355-4, 355-5, 355-6, 355-8, 355-10, 355-16, 355-17, 356-20, 357, 357-1, 357-2, 357-13, 357-16, 358-4, 358-5, 358-6, 358-9, 358-10, 359-4, 359-6, 359-8, 359-9, 359-10, 359-12, 359-13, 359-14, 359-15, 359-16, 359-18, 360, 360-2, 360-3, 360-5, 360-6, 360-8, 360-14, 360-15, 360-21, 388-7, 388-8, 388-9, 388-10, 388-11, 398-4, 398-5, 398-7, 398-8, 398-9, 401, 401-1

With respect to these documents, Humana has met its burden of showing a compelling interest in nondisclosure that outweighs the public interest in access and that its request is no broader than necessary. Each of the proposed redactions to these documents covers either details about CMS's review and audit procedures, third-party sponsor data derived from CMS's worksheet 1, or Humana's highly sensitive business records.

Among the CMS related documents that justify sealing are CMS audit reports and correspondences related to CMS's pricing bid desk review. Information contained in these documents reveals details about how CMS monitors Part D bids for compliance with its standards, which could inform an interested sponsor looking to evade scrutiny. This does not include general information about CMS's review and audit procedures, such as the standard of review or the steps involved, because this information is a matter of public record. (*See* DN 414-2, at PageID # 46201–02.) Also among the CMS related documents are those that contain third-party sponsor information reported on CMS's worksheet 1, such as the expert reports that contain member cost sharing data for non-Humana plans. On behalf of CMS, Humana has shown that public disclosure of this data could assist an interested sponsor in structuring its plan to maximize beneficiary or government cost sharing. However, CMS's privacy interests do not justify sealing documents related to Humana's bid submission. Humana relies in part on CMS's interest in its requests to

seal these documents, noting that "CMS itself treats as confidential the data that Part D sponsors, including Humana, submit as a part of the annual bid process." (DN 427, at PageID # 47043; DN 431, at PageID # 52855.) The documents related to Humana's bid submission are not a part of CMS's "highly confidential" disclosures, and their public disclosure is not a concern that CMS has cited. Indeed, Lazio's declaration explains how access to bid information from *all* plans or *multiple* plans could disrupt the Part D marketplace. (*See* DN 414-2, at PageID # 46200–01.) Lazio also notes that plan sponsors might be less forthcoming if CMS made sponsor's sensitive information available to competitors. (*Id.*, at PageID # 46204.) Neither of these concerns come into play with public disclosure of bid information that is specific to Humana.

Among the business records that justify sealing are detailed spreadsheets and tables showing Humana's financial and performance metrics. These documents contain proprietary information regarding Humana's bids, including geographically specific information, spanning several years, including troves of metrics that have no bearing on Relator's claims. Any relevant information in these documents is available in other unsealed documents, making it all the more gratuitous to allow Humana's competitors to access the rest of the information therein. The business records above also include Humana's several of Humana's internal presentations. Humana's motions to seal and the Court's review demonstrate that significant resources were expended to create these presentations for the benefit of senior leadership. The presentations go beyond merely showing bid metrics and financial data, additionally providing extensive analysis and recommendations on various topics, including unrelated insurance plans. Because they are comprehensive of Humana's business strategies, Humana's competitors could use them to undercut its position in the marketplace. Finally, the business records above include reports drafted by Humana's actuarial consultant, Milliman. These reports are treated by Humana and

Milliman as confidential; indeed, they all end with some variation of a caveat stating that they are intended for Humana's exclusive use and are not to be shared without Milliman's consent. They provide extensive analysis and recommendations for Humana's bid development and performance strategies. If made public, Humana's competitors could use Milliman's work product to inform their bid development without incurring a similar expense and to undercut Humana in the marketplace. For the foregoing reasons, Humana has met its burden of showing a compelling interest in concealing these business records. *See Durbin v. C&L Tiling Inc.*, No. 3:18-CV-334-RGJ, 2019 WL 4615409, at *15 (W.D. Ky. Sept. 23, 2019) (sealing emails containing "details regarding pricing, financial projections, and sales strategy"); *Proctor & Gamble Co. v. Ranir, LLC*, No. 1:17-CV-185, 2017 WL 3537195, at *3 (S.D. Ohio Aug. 17, 2017) (sealing business documents that would give "an inside look into [the plaintiff's] business strategies" if made public); *McPheeters v. United Servs. Auto. Ass'n*, No. 1:20-CV-414, 2021 WL 2935986, at *11 (S.D. Ohio July 13, 2021) (sealing exhibits that "contain confidential and proprietary business information related to USAA's internal processes for determining the value of insureds' claims").

The public interest in accessing the redacted information in the above documents is lower than most of the documents at issue. Most of these documents were cited in the underlying brief no more than one time, and many were not cited at all. When these documents were cited in the Parties' briefs, the substantive information concealed by the redactions was not referenced or was not necessary for a reader to understand the Parties' arguments. Finally, the proposed redactions to these documents were narrowly tailored to protect the compelling privacy interests at stake. Humana's motions to seal will be granted with respect to these documents. The Court takes no position at this time as to whether the redactions to these documents should remain if offered as proof at trial.

## ii. Requests that Will Be Granted in Part

The Court finds that the balance of interests weighs in favor of granting in part Humana's

proposed redactions, subject to the Court's alterations, to the exhibits filed at the following docket

numbers:

345-42, remove redaction to full slide at PageID # 30748
345-68, remove redaction to full slide at PageID # 31196
352-7, remove redaction to full slide at PageID # 35590
352-9, remove redaction to full pages at PageID # 35613–14
353-9, remove redaction to full slide at PageID # 36791
354-10, remove redaction to full slides at PageID # 39322 and 39357
354-12, remove redaction to full slides at PageID # 39379-80
354-13, remove redaction to full slide at PageID # 39417
354-14, remove redaction to full slide at PageID # 39454
354-15, remove redaction to full slide at PageID # 39514
354-16, remove redaction to full slide at PageID # 39546
354-18, remove redaction to full slide at PageID # 39572
356-11, remove all redactions except 'Percentages and Calculations' text at PageID # 40259–60
356-12, remove all redactions except 'Percentages and Calculations' text at PageID # 40260
356-16, remove redaction to full page at PageID # 40525
356-18 remove redaction to full page at PageID # 40548
356-19, remove redaction to full page at PageID # 40558
398-6, remove redaction to full pages at PageID # 45122–23
399-6, remove all redactions except 'Percentages and Calculations' section at PageID # 45325–26
401-13, remove redaction to full page at PageID # 45516
402, remove all redactions except redactions to full pages between PageID # 45532–45544

With respect its proposed redactions to these documents, Humana has met its burden of

showing a compelling interest in nondisclosure of some of the covered information that outweighs

the public interest in access, but some of its request are overly broad.  First, most of these

documents are Humana's internal presentations and reports drafted by Milliman, both of which

contain information in which Humana has a compelling interest in concealing for the reasons

discussed in Part III.c.i *supra*.  However, the above documents include excerpts that are

substantively relied upon on the Parties' underlying briefs.  To strike the proper balance between

Humana's privacy interest and the public interest in access to documents offered as evidence on

the merits of this case, Humana will be required to remove the redactions from the pages that are referenced in the Parties' briefs.

Second, the Court will grant in part Humana's request to seal its contracts with Walmart and Milliman.  The Walmart contracts contain details about calculation of concession payments between Humana and Walmart for the Walmart plan, which Humana says could be used by its competitors "to tailor their own agreements with third-party pharmacy networks and lower their own plan premiums, thus undercutting Humana's competitive standing in the Part D marketplace." (DN 431, at PageID # 52863.)   The Milliman contract contains details about the terms of Milliman's consulting work for Humana between 2016 and 2017, including a specific timeline of the process for Humana's bid development. Humana says that competitors can use this information "to glean insights into its bid strategy and development process to Humana's detriment."  (DN 427, at PageID # 47049–50.)  The Court agrees that there is a compelling interest in the portions of these contracts showing pricing terms and strategy, both because a competitor could use this information to undercut Humana in the marketplace and because they show the terms under which Milliman and Walmart are willing to enter into similar agreements which their competitors could exploit.  *See Schnatter v. 247 Grp., LLC*, No. 3:20-CV-3-JRW-CHL, 2020 WL 3066622, at *2 (W.D. Ky. June 9, 2020) (sealing portions of the defendant's contract with a third party that discussed pricing and strategy); *Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, No. 3:19-CV-778-DJH-CHL, 2020 WL 6946577, at *3 (W.D. Ky. Nov. 25, 2020) (same).

The public interest in access to the above documents is diminished because they were either not cited or infrequently cited in the underlying briefs. Subject to the modifications above, the redactions are narrowly tailored.

### iii.   Requests that Will be Denied

The Court finds that the balance of interests weighs in favor of denying Humana's proposed redactions to the exhibits filed at the following docket numbers:

345, 345-7, 345-13, 345-17, 345-18, 345-20, 345-22; 345-23, 345-35, 345-43, 345-46, 345-47, 345-48, 345-50, 345-52, 345-55, 345-57, 345-58, 345-61, 345-62, 345-63, 345-75, 345-77, 345-78, 345-81, 345-84, 345-89, 345-92, 346-1, 346-2, 346-3, 346-4, 346-5, 346-6, 346-7, 346-8, 346-9, 346-10, 346-11, 350, 350-1, 350-2, 350-3, 350-4, 350-6, 350-7, 350-8, 350-9, 350-11, 350-12, 350-13, 350-14, 350-15, 350-16, 350-17, 350-18, 350-19, 351, 351-1, 351-3, 352-4, 352-5, 352-6, 352-10, 352-11, 352-16, 352-18, 353-1, 353-3, 353-5, 353-6, 353-7, 353-10, 353-11, 353-12, 353-13, 353-14, 353-16, 353-19, 354-2, 354-3, 354-4, 354-6, 354-7, 354-8, 354-9, 355, 355-3, 355-6, 355-7, 355-9, 355-11, 355-14, 355-15, 355-18, 355-19, 356-2, 356-3, 356-4, 356-5, 356-6, 356-7, 356-8, 356-9, 356-10, 356-13, 356-14, 356-15, 356-17, 356-21, 357-3, 357-4, 357-5, 357-6, 357-7, 357-8, 357-9, 357-10, 357-11, 357-12, 357-15, 357-17, 357-18, 357-19, 358-1, 358-3, 358, 358-2, 388-5, 358-11, 358-13, 358-16, 358-17, 358-18, 358-19, 359, 359-1, 359-2, 359-3, 359-5, 359-7, 359-11, 359-17, 359-19, 360-4, 360-9, 360-11, 360-12, 360-19, 360-24, 365-1 365-2, 397, 388, 388-1, 396, 398-1, 398-3, 399-2, 401-2, 401-4, 401-5, 401-7, 401-8, 401-9, 421, 421-5, 421-8, 421-9, 421-11, 425

With respect its proposed redactions to these documents, Humana has not met its burden of showing a compelling interest in nondisclosure of the covered information that outweighs the public interest in access. In some cases, the redactions cover information in which there is clearly no legitimate privacy interest. For example, Humana's proposed redactions cover public information such as objective statements about Humana's legal obligations as a Part D sponsor or promotional information that was published on Humana's website. (*See, e.g.*, DN 345-13; 350, 401-7.) Obviously, this information is not entitled to a seal.

In other cases, the information could plausibly be considered confidential, but Humana failed to meet its burden of showing with specificity how public disclosure would cause serious injury. One example warrants discussion. Humana seeks to redact twenty-four full length deposition transcripts that Relator filed as exhibits to his motion for summary judgment. (DN 431, at PageID # 52869.) Humana says that, "[f]or the deposition transcript pages that the parties did not cite to in their respective briefings, Humana has applied redactions consistent with its

confidentiality designations made in accordance with the parties' Stipulation."  (DN 431, at PageID # 42859.)  In response, Relator argues that the Parties' confidentiality stipulation cannot form the basis of Humana's redactions once a document has been filed in the record.  (DN 449, at PageID # 63682.)  In reply, Humana contends that "[t]he *only* reason Humana relied on its confidentiality designations for portions of these transcripts is that Relator unnecessarily introduced many thousands of pages of full transcripts into the record, rather than excerpting the portions that he actually cited in his briefs."  (DN 451, at PageID # 63714.)  Thus, Humana argues "that it was appropriate, for the sake of fairness and efficiency, to rely on confidentiality designations in proposing redactions to this large volume of uncited deposition testimony."  (*Id.*)  Alternatively, Humana "suggests that the Court consider ordering Relator to refile all of the relevant deposition transcripts attached to his briefing, limiting the content to only the relevant deposition transcript excerpt cited in the briefing."  (*Id.*)

On its face, Humana's request to seal the deposition transcripts is insufficient because it relies solely on the Parties' confidentiality agreement.[3]  *See Rudd*, 834 F.3d at 595. *See Shane*, 825 F.3d at 305 ("The proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'") (quoting *Baxter*, 297 F.3d at 548).  Regardless of what the Parties agreed to during the course of discovery, the Court has an independent obligation to explain the basis for sealing court records.  *Shane*, 825 F.3d at 306.  "A party cannot expect to reap the benefits of an overbroad request by placing the onus on the Court to determine on a 'line-by-line basis—that specific information in the court record meets the demanding requirements for a seal.'"  *Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*,

---

[3] Humana does say that it narrowly tailored its redactions to a small number of pages referenced Relator's underlying brief.  The Court need not decide whether this argument is correct, because the public interest in accessing excerpts offered in support of Relator's arguments on the merits outweighs Humana's interests in concealing the excerpts.

No. 3:19-CV-778-DJH-CHL, 2020 WL 6946577, at *4 (W.D. Ky. Nov. 25, 2020) (quoting *Shane*, 825 F.3d at 305).  While the Court appreciates the burden placed on Humana by Relator's choice to file the deposition transcripts in full, if Humana believed they were filed improperly, it could have filed a motion to strike portions of the transcripts from the record pursuant to Rule 12(f).[4] Because the deposition transcripts may serve as a basis for the Court's decision, the Court is obligated to keep them open for public inspection.

Finally, there are some categories of information in which the Court has already recognized a compelling interest in nondisclosure, but that interest was not strong enough surpass the heightened public interest in access here.  This includes Humana's summaries of financial projections and bid metrics related to the Walmart Plan.  (*See, e.g.*, DN 346-2–346-11.)  This data goes to the heart of Relator's claims, and any member of the public interested in how Medicare fraud is adjudicated would benefit from viewing these documents.  *See Shane*, 825 F.3d at 309. *See also Brown*, 710 F.2d at 1180–81 ("The public has an interest in knowing how the government agency has responded to allegations of error in the testing program."); *Kondash v. Kia Motors Am., Inc.*, No. 1:15-CV-506, 2018 WL 770418, at *4 (S.D. Ohio Feb. 7, 2018), *aff'd*, 767 F. App'x 635 (6th Cir. 2019) (Defendant's internal quality control reports "are of great public interest, particularly to drivers concerned about their safety and class members interested in their legal claims in this case."); *In re FCA*, 377 F. Supp. 3d at 787  ("[E]ven if some of the information could be regarded as some form of trade secrets, the interest in full disclosure of [report of focus group study] is particularly compelling in this case, which is a prospective class action concerning allegedly dangerous transmission defects affecting more than 800,000 vehicles made by the

---

[4] The Court notes that Humana is guilty of the same conduct for which it faults Relator.  Humana filed several exhibits without citing them in its underlying briefs, among them, documents Humana now seeks to seal.  (*See, e.g.*, 345-79, 345-78, 345-81, 345-82, 345-84.)

defendant."). The Court notes that Humana is a publicly traded company, and its public annual reports disclose extensive details about its finances, business initiatives, and performance in different segments of the business, including low income subsidy payments from CMS under its Part D plans.[5] While public disclosure additional nonpublic information may expose Humana to some competitive risk, because of the interest of a broader public outside of the named parties, the standards for overcoming the presumption of openness "should be applied [...] with particular strictness." *Shane*, 825 F.3d at 305. With respect to the documents above, Humana is unable to overcome that presumption.

## IV.    ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1. DN 427 and DN 431 are **GRANTED in part and DENIED in part.**

2. The Clerk of Court is directed to permanently unseal DNs 345, 345-1, 345-2, 345-3, 345-4, 345-5, 345-6, 345-7, 345-8, 345-9, 345-10, 345-11, 345-12, 345-13, 345-14, 345-15, 345-16, 345-18, 345-20, 345-21, 345-22, 345-23, 345-24, 345-25, 345-26, 345-27, 345-28, 345-29, 345-35, 345-36, 345-38, 345-40, 345-41, 345-43, 345-45, 345-46, 345-47, 345-48, 345-50, 345-51, 345-52, 345-53, 345-54, 345-55, 345-56, 345-57, 345-58, 345-61, 345-62, 345-63, 345-65, 345-69, 345-70, 345-71, 345-74, 345-75, 345-76, 345-77, 345-78, 345-80, 345-81, 345-83, 345-84, 345-87, 345-89, 345-90, 345-91, 345-92, 345-93, 345-94, 346, 346-1, 346-2, 346-3, 346-4, 346-5, 346-6, 346-7, 346-8, 346-9, 346-10, 346-11, 346-12, 350, 350-1, 350-3, 350-2, 350-4, 350-5, 350-6, 350-7, 350-8, 350-9, 350-10, 350-11, 350-12, 350-13, 350-14, 350-15, 350-16, 350-17, 350-18, 350-19, 351, 351-1, 351-2, 351-3, 351-4, 351-5, 351-6, 351-7, 351-8, 351-9, 351-10, 351-11, 351-12, 351-13, 351-14, 351-15, 351-16, 351-17, 351-18, 351-19, 352, 352-1, 352-2, 352-3, 352-4, 352-5, 352-6, 352-8, 352-10, 352-11, 352-12, 352-13, 352-14, 352-15, 352-16, 352-17, 352-18, 353, 353-1, 353-2, 353-3, 353-4, 353-5, 353-6, 353-7, 353-8, 353-10, 353-11, 353-12, 353-13, 353-14, 353-15, 353-16, 353-17, 353-19, 354-1, 354-2, 354-3, 354-4,  354-5, 354-6, 354-7, 354-8, 354-9, 354-11, 355-14, 355-15,  354-17, 355, 355-3, 355-6, 355-7, 355-9, 355-11, 355-12,

---

[5] These annual reports dating from 1999 to 2020 are posted on Humana's website. HUMANA, *Annual Reports*, https://humana.gcs-web.com/financial-information/annual-reports?field_nir_tags_target_id=All&promote=All&field_nir_asset_type_target_id%5B1%5D=1&items_per_page=10&page=2 (last visited September 26, 2021).

355-13, 355-18, 355-19, 356, 356-1, 356-2, 356-3, 356-4, 356-5, 356-6, 356-7, 356-8, 356-9, 356-10, 356-13, 356-14, 356-15, 356-17, 356-21, 357-3, 357-4, 357-5, 357-6, 357-7, 357-8, 357-9, 357-10, 357-11, 357-12, 357-14, 357-15, 357-17, 357-18, 357-19, 358, 358-1, 358-2, 358-3, 358-7, 358-8, 358-11, 358-12, 358-13, 358-14, 358-15, 358-16, 358-17, 358-18, 358-19, 359, 359-1, 359-2, 359-3, 359-5, 359-7, 359-11, 359-17, 359-19, 360-1, 360-4, 360-7, 360-9, 360-10, 360-11, 360-12, 360-13, 360-16, 360-17, 360-18, 360-19, 360-20, 360-22, 360-23, 360-24, 365, 365-1 365-2, 388, 388-1, 388-2, 388-3, 388-4, 388-5, 388-6, 397, 398, 398-1, 398-2, 398-3, 398-10, 399, 399-1, 399-2, 399-3, 399-4, 399-5, 400, 401-2, 401-3, 401-4, 401-5, 401-6, 401-7, 401-8, 401-9, 401-10, 401-11, 401-12, 402-1, 402-2, 402-3, 402-4, 402-5, 402-6, 402-7, 402-8, 402-9, 402-10, 421, 421-1, 421-2, 421-3, 421-4, 421-5, 421-6, 421-7, 421-8, 421-9, 421-10, 421-11, 425, 425-1, 425-2, 425-3.

3. The Clerk of Court is directed to permanently seal 345-19, 345-17, 345-30, 345-31, 345-32, 345-33, 345-34, 345-37, 345-39, 345-42, 345-44, 345-49, 345-59, 345-60, 345-64, 345-66, 345-67, 345-68, 345-72, 345-73, 345-79, 345-82, 345-85, 345-86, 345-88, 352-7, 352-9, 352-19, 353-9, 353-18, 354, 354-10, 354-12, 354-13, 354-14, 354-15, 354-16, 354-18, 354-19, 355-1, 355-2, 355-4, 355-5, 355-6, 355-8, 355-10, 355-16, 355-17, 356-11, 356-12, 356-16, 356-18, 356-19, 356-20, 357, 357-1, 357-2, 357-13, 357-16, 358-4, 358-5, 358-6, 358-9, 358-10, 359-4, 359-6, 359-8, 359-9, 359-10, 359-12, 359-13, 359-14, 359-15, 359-16, 359-18, 360, 360-2, 360-3, 360-5, 360-6, 360-8, 360-14, 360-15, 360-21, 388-7, 388-8, 388-9, 388-10, 388-11, 398-4, 398-5, 398-6, 398-7, 398-8, 398-9 , 399-6, 400, 401, 401-1, 401-13, 402

4. On or before **October 22, 2021** Humana shall file revised redacted versions of the exhibits discussed in Part III.c.ii. of this order.

Colin H Lindsay, Magistrate Judge
United States District Court

September 27, 2021

cc:  Counsel of record