**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:18-CV-00061-GNS-CHL**

**UNITED STATES OF AMERICA,** *ex rel. Steven Scott*,                                **Plaintiff,**

**v.**

**HUMANA, INC.,**                                                                                       **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion for a protective order regarding the supplemental deposition of Richard Foster filed by Plaintiff-Relator Steven Scott ("Relator"). (DN 513.) Accompanying this motion is Relator's unopposed motion to extend the deadline for the supplemental deposition of Richard Foster. (DN 514.) Defendant Humana, Inc. ("Humana") filed its response in opposition (DN 520), to which Relator filed a reply. (DN 522.) Therefore, this matter is ripe for review.

For the reasons set forth herein, Relator's Motion for a Protective Order (DN 513) is **DENIED**.

    **I.**      **BACKGROUND**

Relator brought this False Claims Act ("FCA") action alleging that Humana submitted bids based on knowingly false actuarial assumptions for its prescription drug plan to the Centers for Medicare & Medicaid Services ("CMS"), resulting in overpayments from CMS to Humana. (DN 1.) In June 2018, Relator retained former Chief Actuary of CMS, Richard Foster ("Foster"), as a consulting expert. (DN 410 at 45866.) In "late 2018," Relator retained Foster to provide additional service as a testifying expert witness on the specific issue of Humana's materiality defense. (DN 379-11 at 42858; DN 474 at 65043.) On April 21, 2020, Relator produced Foster's expert report.

(DN 379 at 42736.) On June 15, 2020, Relator produced Foster's rebuttal report. (DN 379-13.) On July 17, 2020, Foster sat for his deposition. (DN 379-11.) During the deposition, Humana learned that Foster had participated in several meetings with DOJ and CMS employees in 2018 and 2019 and exchanged follow up emails about discussions during the meetings. (*Id.* at 42863, 42866.) These communications were not included in Relator's privilege log. (DN 379-14 at 42948.) When questioned about the nature of the meetings, counsel for Relator instructed Foster not to answer on the basis that Foster's communications with CMS and the DOJ concerning this case are privileged. (DN 379-11 at 42861-62, 42865-66.)

On July 31, 2020, Humana contacted Relator requesting production of communications between Relator and CMS, asserting that Relator failed to produce the correspondence with CMS or list them in his privilege long despite the communications being responsive to Humana's prior discovery requests. (DN 379-14 at 42949.) Humana further requested production of any documents Relator provided to the DOJ and CMS in connection with the meetings discussed during Foster's deposition. (*Id.*) On August 4, 2020, Relator claimed in response that Foster's communications with CMS were in his capacity as a consulting expert and thus privileged under Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure. (*Id.* at 42948.) Humana replied that it had not agreed to excluding the communications from Relator's privilege log and contested Relator's claim of privilege. (*Id.* at 42947.) After several additional exchanges, the Parties reached an impasse, and on August 20, 2020, Humana contacted the Court to request leave to proceed to motion practice. (DN 379-15 at 42952-53.)

On August 31, 2022, the undersigned ordered Relator to produce (1) a supplemental privilege log, (2) any nonprivileged documents related to communications with the DOJ and CMS

2

as requested by Humana's requests for productions ("RFPs") 7 and 9, (2) a supplemental response to Interrogatories 19 and 20 with respect to those communications, and (3) Foster for a deposition limited to the topic of Foster's communications with the DOJ and CMS concerning this case. (DN 470 at 64871.) Relator filed an objection to the portion of that Order requiring a supplemental deposition, arguing that Foster's communications with the government are privileged work product under Federal Rule of Civil Procedure 26(b)(3) and (4). (*See* DN 474.) On June 30, 2022, United States District Judge Gregory N. Stivers overruled Relator's objections and ordered Relator to produce Foster for a supplemental deposition and supplement his privilege log in accordance with the August 31, 2022 order. (*See* DN 502.) In a series of emails between September 7, 2022 and September 16, 2022 that began with a discussion about Foster's availability for deposition before the September 28, 2022 deadline, Relator and Humana again disagreed on whether certain areas of inquiry were privileged under Fed. R. Civ. P. Rule 26 pursuant to the Court's August 31, 2022 and June 22, 2022 orders. (DNs 520-3, 520-4.) In these communications, Humana also requested Relator supplement his privilege log entries and produce a document (RELATOR_PRIV_479) identified on the log. (DN 520 at 66484.) Relator declined to produce RELATOR_PRIV_479 or produce Foster until the "parties can resolve any outstanding privilege disputes." (*Id.*) On September 21, 2022, Relator served his privilege log, supplemented with entries for (1) attachments received or sent by CMS or HHS personnel and (2) attachments relating to work performed by Foster and shared with the government concerning this case, and filed the instant motion. (*Id.*) On September 29, 2022, Relator served a further amended privilege log that contained previously withheld attachments exchanged with government officials. (DN 520-1 at 66497.)

II. **LEGAL STANDARD**

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). The "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Rule 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters. Fed. R. Civ. P. 26(c). The party seeking the protective order bears the burden of showing that good cause exists for the order. *Peterson v. Outback Steakhouse*, 2016 U.S. Dist. LEXIS 129596, *3 (E.D. Mich. Sept. 22, 2016) (citing *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). "To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (citation omitted). Mere speculation or unsubstantiated fears of prejudice are insufficient to justify the imposition of a protective order burdening a party's trial preparation. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550-551 (6th Cir. 2004) ("If [the movant's] unsubstantiated fears of prejudice justified a protective order, such orders would be justified in virtually every case"). The decision to grant or deny a motion for protective order "falls within the broad discretion of the district court managing the case." *Century Prod., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988). "To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.... The trial court is in the best position to

weigh fairly the competing needs and interests of the parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The work-product doctrine as codified in Rule 26(b)(4)(C) protects the communications between a party's attorney and that party's testifying expert from disclosure unless the communications relate to the expert's compensation, identifies facts or data that the party's attorney provided that the expert considered, or identifies assumptions the party's attorney provided that the expert relied on in forming the expert's opinion. Fed. R. Civ. P. 26(b)(4)(C). Work product "does not lose its protection merely because it is transmitted to a testifying expert," however, the "protection does not extend to an expert's *own* development of the opinions to be presented: those are subject to probing in deposition or at trial." *Deere & Co. v. FIMCO, Inc.*, No. 5:15-CV-105-TBR-LLK, 2016 WL 11269254, at *3 (W.D. Ky. Dec. 5, 2016) (quoting *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.,* 293 F.R.D. 568, 577 (S.D.N.Y. 2013) (emphasis original) (quoting *Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416 (N.D. Ill. 2011) and *Yeda Res. & Dev. Co. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97 (D.D.C. 2013) at footnote 57 for applying the same approach after the 2010 amendments as before to analyzing privilege with respect to dual-hat expert work that does not involve core work product, such as attorney theories and impressions). Materials containing "factual ingredients" are discoverable. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-MD-2846, 2021 WL 2280657, at *4 (S.D. Ohio June 4, 2021) (quoting *Wenk v. O'Reilly*, No. 2:12-cv-474, 2014 WL 1121920 at *4 (S.D. Ohio Mar. 20, 2014).

III.  **DISCUSSION**

Relator seeks a protective order to limit the scope of Foster's supplemental deposition and to preclude a document titled as RELATOR_PRIV_479 (the "Document") in Relator's privilege log from discovery by Humana. The Parties' dispute regarding Relator's claims of privilege stems from Relator's and Humana's differing interpretations of the Court's prior August 31, 2022 and June 22, 2022 orders. (*See* DNs 470, 502.) At least some of Relator's privilege assertions could not be resolved by the Orders until Relator produced an amended privilege log pursuant to the Orders. (*Id.*) With the log now produced, the Court will provide analysis and clarify certain arguments raised by the Parties where applicable, though the following should not be construed as amending the Court's August 31, 2022 and June 22, 2022 orders.

   *a. Foster's Supplemental Deposition*

Relator argues in his instant motion that the Court should limit the scope of Foster's supplemental decision because Rule 26(b)(3) precludes Humana from examining Foster about his communications with the government that "fall squarely within the scope of Rule 26(b)(3) and 26(b)(4)(C)" or about work product created at the direction of Relator's counsel. (DN 513 66443.) Specifically, Relator asserts that both Rule 26(b)(3) and Rule 26(b)(4) are independently applicable to Foster's work product because Rule 26(b)(4) does not abrogate all other forms of work-product protection. In sum, Relator argues that 26(b)(4) protections are additional to—and not a substitute for—the baseline work-product protections under Rule 26(b)(3). (*Id.* at 66437-39.) In support of this argument, Relator points to this Court's prior holdings, Sixth Circuit precedent, and the Advisory Committee's Note to Rule 26. The Court does not find good cause to

limit the depositions based on Relator's assertions of privilege. As the undersigned previously held in the Court's August 31, 2022 order:

> Foster's communications with the DOJ and CMS are only protected to the extent that they include work product created on Relator's behalf by a nonexpert representative, such as Relator's counsel… *Without more information*, the Court is skeptical, for example, that the communications between Foster and the DOJ and CMS employees present at the October 16, 2018 and January 31, 2019 meetings include attorney work product because Foster was the only person retained by Relator present at those meetings. Rather than trying to guess what information may be in the communications at issue, the Court will order Relator to update his privilege log with respect to the discovery at issue before any further disclosures will be required. *The Court is substantially hindered in its ability to determine whether the discovery at issue includes such attorney work product because the only description of the communications Relator has provided consists of vague, conclusory statements*.

(DN 470 at 64865-66) (citations omitted) (emphasis added).

Relator has again failed to provide information sufficient to support his assertion of privilege as will be discussed more fully below. The Court notes that Relator objected to the above ruling by asserting arguments and citations identical to those Relator asserts in the instant motion. (DN 474 at 65052-54.) Relator's objections were overruled. (*See* DN 502.) In overruling the relevant objections, this Court held in the June 22, 2022 order:

> As a sister court has explained: "Generally, under Rule 26(b)(3), the federal work product privilege, 'a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]' Further, under *Rule 26(b)(4)(D),* 'a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.' *Thus, both provisions of Rule 26 protect an expert's findings made and/or materials prepared 'in anticipation of litigation.' Indeed, it has been said that Rule 26(b)(4)(D) essentially extends the work product protection codified in Rule 26(b)(3) to facts known and opinions held by non-testifying, consulting experts.*" *Lindon v. Kakavand*, No. 5:13-CV-26-DCR-REW, 2014 WL 12648464, at *1 (E.D. Ky. Apr. 29, 2014) (alteration in original) (footnote omitted) (citation omitted).
> "[T]he broader discovery [rules] for testifying experts applies to everything

7

> *except materials generated or considered uniquely in the expert's role as a consultant. [A]ny ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery."* *Deere & Co. v. FIMCO, Inc.*, No. 5:15-CV-105-TBR-LLK, 2016 WL 11269254, at *3 (W.D. Ky. Dec. 5, 2016) (internal quotation marks omitted) (alterations in original) (internal citation omitted) (quoting *Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416, 419 (N.D. Ill. 2011)); *see also Yeda Res. & Dev. Co. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 108-10 (D.D.C. 2013) (discussing the Rule 26 disclosure requirements applicable to dual-hat experts). … As the Magistrate Judge correctly noted, *a privilege log is necessary to resolve any uncertainty as to the capacity in which Foster made communications.* Only after Scott has provided a proper privilege log can challenges to the assertion that Foster's communications were privileged be addressed.

(*Id.* at 66411-14) (emphasis added).

Relator relies primarily on the *Lindon* holding reciting that "both [Rule 26(b)(3) and Rule 26(b)(4)(D) protect an expert's findings made and/or materials prepared 'in anticipation of litigation'" to further his privilege claim under Rule 26(b)(3). Relator omits, however, the remainder of the Court's ruling discussing the applicability of Rule 26 to dual-hat experts—such as Foster—that is necessary conduct a privilege analysis. The Court ordered Relator to amend his privilege log specifically to resolve any uncertainty as to the capacity in which Foster made communications because, in the case of dual-hat experts, only materials generated or considered uniquely in the expert's role as a consultant are exempt from the broader discovery rules for testifying experts. *Deere & Co.*, 2016 WL 11269254, at *3. While the excerpt of the log contained in Relator's motion provides some insight into Foster's documentary communications, it does not address non-documentary communications, such as meetings or phone calls, that Foster participated in with the Government. (DN 513-1.) The ambiguities surrounding Foster's communications were previously identified and discussed in-depth by the undersigned in the Court's August 31, 2022, but they have not been resolved by Relator's amended privilege log or

in the briefings. (*See* DN 470 at 64861-64). Relator has thus failed to provide the Court with any basis on which to find that discovery rules other than Rule 26(b)(4)(C) apply to Foster's communications as previously held.

Nor is the Court persuaded by Relator's reliance on *Toledo*, which was decided before the 2010 Amendments to Rule 26 and does not otherwise support Relator's argument that Rule 26(b)(4) provides a privilege additional to that provided by Rule 26(b)(3). *Toledo Edison Co. v. G A Techs., Inc., Torrey Pines Tech. Div.*, 847 F.2d 335, 339 (6th Cir. 1988), *superseded on other grounds* as stated in *Reg'l Airport Auth. V. LFG, LLC*, 460 F.3d 697, 713-14 (6th Cir. 2006). In *Toledo,* the Sixth Circuit established a five-part sequential analysis for claims of work product privilege that requires courts to evaluate Rule 26(b)(3) and then Rule 26(b)(4). *Toledo*, 847 F.2d at 339-40. However, the expert in *Toledo* served in capacities that Foster did not, and those capacities formed the basis of the *Toledo* five-part analysis. In *Toledo*, the plaintiff had retained Movats Incorporated ("Movats"), a corporation specializing in testing motor-operated valves, as a "consultant" unlike the consulting and testifying experts contemplated in Rule 26(b)(4). *Id.* at 341. Movats acted in "another and different capacity, as for example, a repairer" and could thus be regarded as a "ordinary witness as well as an expert witness." *Id.*

In setting forth the final step of the five-part analysis concerning Rule 26(b)(4) experts, the Sixth Circuit explained:

> 5. The court may not order discovery of materials if discovery of such materials would violate Rule 26(b)(4) involving trial preparation, *i.e.*, experts. Different standards and procedures are set forth because of the nature of experts and the different purposes for which they are employed. Experts are used by parties for different purposes just as information is prepared or acquired by parties for different purposes. *Experts may be used to assist in the operation of a machine or a procedure or to repair or improve it, or they may be employed to assist in preparation for trial or to give testimony at the trial. Rule 26(b)(4) specifically and*

9

> *exclusively deals with the standards and methods of discovery of facts known and opinions held by experts acquired or developed in anticipation of litigation or for trial*.

*Id.* at 340. (emphasis added).

Movats in *Toledo*, unlike Foster, served as consultants akin to "ordinary" witnesses and as expert witnesses. Foster has only served in the capacity of expert witness, whether consulting or testifying or both, and Relator has yet to delineate when he served in which capacity. The Court thus disagrees with Relator's assertion that the fifth part of the *Toledo* analysis supports the conclusion that Rule 26(b)(4) was intended as a protection *additional* to Rule 26(b)(3). Not only does the *Toledo* court recognize Rule 26(b)(4) as exclusively governing experts, but the Sixth Circuit incorporated into its ruling the 1970 Advisory Committee's Note to Rule 26 stating "the decisions which have sought to bring expert information within the work-product doctrine" are "reject[ed] as ill-considered." *Id.* at 341; Fed. R. Civ. P. 26 advisory committee's note to 1970 amendment. Similarly, Relator incorrectly cites the Advisory Committee's Note to Rule 26 to assert his theory of the independent applicability of Rule 26(b)(3) and 26(b)(4). In fact, the Advisory Committee's Note states that Rule 26(b)(4)(C), not Rule 26(b)(4) as a whole, is "not intended to exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine." Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment. This is because "Rule 26(b)(4)(C) is added to provide work-product protection for *attorney*-expert communications" and is "designed to protect *counsel*'s work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." *Id*. (emphasis added). Relator thus conflates the stated intention of the Advisory Committee to not exclude other protections with the creation of another protection.

10

Relator asserts that Rule 26(b)(4)(C) independently provides blanket protection to Foster's communications with the government where the communications are irrelevant to Foster's expert reports and/or were pursued at the direction of Relator's counsel. The Court disagrees. Relator was ordered to amend his privilege log such that Relator's assertion of privilege under Rule 26(b)(4)(C) could be assessed without the deficiencies previously identified by the undersigned as follows:

> Relator contends that all information that Foster relied upon in his expert report has been disclosed and all withheld communications between Foster and the government concerned information outside the scope of his role as a testifying expert. This claim is difficult to assess given that Relator has not shared *any* details about the substance of these communications other than to say that it does not overlap with the substance of Foster's expert reports. Relator did not itemize the communications on his privilege log, nor has he confirmed that the meetings, phone calls, and emails that Foster revealed during his deposition are the only communications Foster exchanged with the government. Instead, Relator merely offers Foster's affidavit in which Foster swears that his expert reports were not based on information in the communications at issue. However, "[e]ven when an expert states that he did not consider certain materials in forming his opinions, federal courts have concluded that such an assertion 'does not control.'"

(DN 470 at 648362-63) (citations omitted).

Relator has not remedied the foregoing deficiencies in his amended privilege log or otherwise as required. Accordingly, there is no basis upon which the Court can legitimately limit the scope of Foster's deposition.

As such, the Court finds Relator has not met his burden of showing that good cause exists for a protective order limiting the scope of Foster's supplemental deposition. Relator relies on conclusory statements to assert that Humana plans to inquire into areas of privilege while failing to substantiate any of his claims for those privileges. Relator has thus failed to articulate specific facts showing a clearly defined and serious injury that would result from Humana's inquiries.

Given Relator's failure to provide a sufficient basis for his privilege assertions, the Court does not find good cause to limit Foster's supplemental deposition and preclude Humana from inquiring into Foster's communications with the Government.

### b. *RELATOR_PRIV_479*

Relator seeks to preclude the production of a document identified as RELATOR_PRIV_479 ("Document") on his privilege log. (DN 513-1.) The Document is an attachment to an e-mail, RELATOR_PRIV_478, created by Relator's counsel. (*Id.*) Relator asserts the Document is privileged under Fed. R. Civ. P. 26(b)(3) and Fed. R. Civ. P. 26 (b)(4)(C). By Order of the Court dated September 26, 2022, the Document and its parent email were submitted to the Court for *in camera* review. (DN 515.) The Document is described on the log as an "[a]ttachment to email prepared by counsel and containing analysis of Humana's profit prepared by Rick Foster in connection with the present litigation at the direction of Relator's counsel that sets forth the mental impressions, opinions, and legal theories of Relator's counsel." (DN 513-1 at 66447.)

The privilege log indicates that the e-mail and attached Document were sent from Edward Arens, counsel for Relator, to counsel at the DOJ on August 30, 2018. (*Id.*) Relator asserts the Document is privileged because it was created by Foster at the direction of Relator's counsel and for Relator's counsel, contains the mental impressions, opinions, and legal theories of Relator's counsel and communicated by Foster to Relator's counsel, is "entirely unrelated" to Foster's expert reports and was forwarded by Relator's counsel to the DOJ without constituting a waiver of privilege. (DN 513 at 66435-36.) Humana challenges Relator's claim of privilege under Rule 26(b)(3) on the basis that Rule 26(b)(4) exclusively governs expert materials consistent with this

Court's August 31, 2022 order. (DN 520 at 66489; *see* DN 470 at 64865-67.) Humana asserts that protection under Rule 26(b)(4)(C) also does not extend to Foster's communications with the Government because the protection is limited to draft reports and "certain" communications specifically with a party's attorneys.[1] (*Id.* at 66491-92.) Relator bears the initial burden of justifying application of work-product doctrine. *Yeda Res.*, 292 F.R.D. at 105. *See generally In re Methyl,* 293 F.R.D. at 573 (stating that the burden is a "heavy one, because privileges are neither lightly created nor expansively construed").

Relator has not established that the Document is not privileged, either independently from or as an extension to Rule (b)(3), under Rule 26(b)(4)(C). Although the privilege log does not indicate when Foster created the Document, it reflects that the Document was transmitted to DOJ on August 30, 2018. (DN 513-1.) The transmission date falls squarely within the time frame in which Foster's capacity is unclear. Foster was initially retained as a consulting expert in June 2018 and subsequently retained as a testifying expert in "late 2018," though Relator asserts Foster continued in a consulting expert role throughout his service. (DN 474 at 65043). Relator's failure to resolve this ambiguity poses an insurmountable hurdle for Relator's assertions of privilege. Within expert discovery, "[t]he rules applicable to consulting and testifying experts overlap and conflict." *In re Methyl*, 293 F.R.D. at 573. The "facts known or opinions held" by a *consulting* expert are not discoverable. Fed. R. Civ. P. 26(b)(4)(D). In contrast, facts and data considered by a *testifying* expert in forming their opinions are discoverable. Fed. R. Civ. P. 26(b)(4)(C)(ii). A dual-hat expert, who is retained to testify *and* advise counsel outside of the subject of the testimony, may claim work-product privilege if this delineation is clearly made. *In re Davol*, 2021

---

[1] Humana's contention implicates the common interest doctrine, which the Court addressed in the August 31, 2022 order and declines to do so again here. (DN 470 at 64866-67.)

WL 2280657, at *4 (citation omitted). *See Deere & Co.*, 2016 WL 11269254, at *4 (finding that an expert retained in both consulting and testifying roles considered information at issue in his capacity as testifying expert because of "the extent of interplay between the two roles and the proximity in time to the information gathered in each role"). Thus, because "any ambiguity as to the expert's role" must be resolved in favor of the party seeking discovery, the rules for testifying experts will apply here. *Deere & Co.*, 2016 WL 11269254, at *3. As a testifying expert, Foster is subject to disclosure of "a complete statement of all opinions [he] will express and the basis and reasons for them" and "the facts or data considered by [him] in forming them." Fed. R. Civ. P. 26(a)(2)(B). Humana is entitled to access to all materials "considered" by Foster whether "[Foster's] expert report ultimately refers to those materials as a basis for [his] opinions." *In re Davol*, 2021 WL 2280657, at *2 (citation omitted). In the case of dual-hat experts such as Foster, the term "considered" in Rule 26(a)(2)(B) should be construed expansively in favor of the party seeking discovery and any ambiguity as to whether the expert "considered" the materials should be resolved in favor of discovery. *Id.* at *4 (citation omitted). "Considered" includes "anything received, reviewed, read, or authored by the expert, before or in connection with forming his opinion, if the subject matter relates to the facts or opinions expressed." *Id.* at *2 (citation omitted). "The burden of showing that [Foster] did not consider [the Document] in forming his opinion rests with [Relator]." *Id.* (citation omitted).

Relator fails to establish that the Document did not contain facts, data, or assumptions that Foster relied on in his expert report. Relator asserts without support that the Document is "entirely unrelated" to Foster's expert reports and the opinions therein. (DN 513 at 66435.) Notably, in the same breath, Relator describes the Document as containing an "analysis … relating to the effect

14

of fraud on Humana's profit." (*Id.*)  In support of his claim, Relator offers Foster's affidavit and the Document for the Court's review.  This Court previously concluded that an expert's mere assertion that he did not consider certain materials in forming his opinion does not control.  (DN 470 at 64862-63.)  Courts reject privilege assertions "where the only basis for the claim is an affidavit containing conclusory statements" because such affidavits do not constitute the "specific and detailed evidentiary material" necessary to justify protection.  *Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328, 332 (N.D. Ohio 2014).  For the most part, Foster's affidavit contains conclusory assertions that "none of the facts or data [he] considered or the assumptions [he] relied on in forming the opinions in [his reports] came from any conversations [he] had with anyone in the government since [he was] retained in this case." (DN 410-1.)  However, Relator fails to provide any specifics regarding the Document, which was the subject of at least one communication with the Government and appears to contain "subject matter relat[ing] to the facts or opinions" expressed in Foster's expert reports.  *In re Davol*, 2021 WL 2280657, at *4 (citations omitted).  Further, "[a] key issue in determining whether a document should be withheld is the function that the document serves."  *United States v. Roxworthy*, 457 F.3d 590, 595 (6th Cir. 2006) (citation omitted).  Here, the function and purpose of the Document are not only unsupported by Relator but remain a complete mystery to the Court.  Foster's affidavit does not contain, and Relator does not provide, the "circumstances surrounding [the Document's] creation" for the Court to determine the applicability of Relator's claim of privilege.  *Id.*

      Nor does the Document itself offer any such clarity.  The Document is a brief series of graphics that do not reflect when or why the Document was created, who authored it, with whom it was shared, or its intended audience.  Relator contends only that Foster created the document

"for" Relator's counsel "in connection with the present litigation" yet neither the Document nor the related parent e-mail provide any context to support this claim. Similarly, Relator contends that the Document was created at the direction of Relator's counsel and shared between Relator's counsel and Foster, but this is not apparent in the Document or its parent e-mail and no such communication is provided or addressed further.

Further, Relator fails to establish that the Document contains attorney opinion work product, *i.e.*, the mental impressions, opinions, and legal theories of Relator's counsel, as a basis to assert work-product privilege. In the case of testifying experts, while "attorneys' 'theories or mental impressions' *are* protected… everything else is fair game." *Yeda Res.*, 292 F.R.D. at 105. Here, both Relator and the Document are silent as to which parts of the Document are "fair game" and which are not. The Court's *in camera* review is inconclusive as to this determination because the Document does not contain any identifiable legal material or purpose and consists entirely of factual and technical information. Nevertheless, though Relator does not raise it, the Court acknowledges that factual material may still be withheld if it constitutes *fact* work product by an attorney, which is subject to protection in the same manner as opinion work product. *West v. Lake State Ry. Co.*, 321 F.R.D. 566, 570 (E.D. Mich. 2017). In order to be considered fact work product, "[Relator's counsel] must have done something with the facts" such as "summarized factual information, organized data, or created a chart or other demonstrative visual from the factual information." *Id.* Here, Relator does not attempt to prove whether the Document contains his counsel's "handiwork" amidst its factual contents as contemplated in *West* or otherwise. *Id.* "Without the attorney's handiwork, there is no attorney work product" due to the "general principle that underlying facts or data are not protected from disclosure under any privilege." *Id.* (citation

omitted.) In absence of evidence to the contrary, the Court can reasonably conclude that Foster, not Relator's counsel, was responsible for such "handiwork" as the Document's author and a retained expert on the matters discussed therein. Relator asserts that the Document was communicated by Foster and to Relator's counsel but does not set forth the relevance of this fact to his assertion of privilege and does not provide the communication, or any related details, for the Court to assess. Thus, the Court is not persuaded that protection is warranted because Relator did not adequately establish that the Document contains attorney-generated work product.

Further, in light of the Document's subject matter and Relator's express acknowledgement that it concerns the effect of fraud on Humana's profits, the Document appears to contain "factual ingredients" that are discoverable. *In re Davol*, 2021 WL 2280657, at *4 (citation omitted.) Materials such as the Document that are "authored by" Foster and contain "subject matter relat[ing] to the facts or opinions expressed" by him are subject to disclosure. *Id.* As the former Chief Actuary of CMS, Foster was retained as an expert in the Part D bid process, CMS standards that applied to Humana's Walmart Plan bids, and the importance of certain CMS bid requirements, all within the context of Humana's alleged fraud against CMS that is at the core of this litigation. (*See* DN 379-19.) Foster's expert reports include his opinions regarding the disputed bid assumptions and whether Humana's conduct comports with actuarial standards of practice. (*Id.*) Here, the Document presumably contains facts, data, and assumptions relating to the same subject matter in Foster's expert reports and is thereby subject to disclosure both under Fed. R. Civ. P. Rule 26(a)(2)(B) and as an exception under Rule 26(b)(4)(C)(ii).

In sum, Relator fails to adequately prove any of the assertions forming the basis of his claims of privilege. He does not establish that the Document was, in fact, created at the direction

of Relator's counsel and for Relator's counsel, contains attorney-generated work product that was communicated between Foster and Relator's counsel, or that it is "entirely unrelated" to Foster's expert reports. Relator does not explain the purpose or intended use of the Document despite that the contents of the related e-mail suggest the Document may have had more than one purpose. Relator does not set forth facts necessary for an analysis of his claim, such as Foster's capacity at the pertinent time or Relator's counsel's contributions to the Document. Relator's reliance on solely conclusory statements and failure to resolve the ambiguity as to whether the communications at issue served any basis for Foster's expert report do not justify application of privilege and favor discovery. Thus, the Court finds that the Document is not protected from disclosure and is discoverable under Rule 26(a)(2)(B).

### c. *Relator's Unopposed Motion for Extension of Time*

Relator filed an unopposed motion for an extension of time for Foster's supplemental deposition. (DN 514.) Relator seeks to extend the deadline for Foster's supplemental deposition from September 28, 2022, set pursuant to the Court's June 30, 2022 order (DN 502), to three weeks after the Court resolves Relator's instant motion. (*Id.* at 66459.) In support of the motion, Relator states that at a hearing on September 19, 2022, the Parties informed the Court of the pending September 28, 2022 deadline and the Court was amenable to the extension. (*Id.*) However, given that the hearing was not transcribed, Relator submits this motion in "an abundance of caution." (*Id.*) Humana does not oppose the motion. (*Id.* at 66460.) The Court finds that the requested extension is reasonable.

## IV.  ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1)  Relator's Motion for a Protective Order (DN 513) is **DENIED.**

(2)  Relator's Motion for an Extension of Time (DN 514) is **GRANTED**.  Relator shall produce Richard Foster for a supplemental deposition **on or before March 3, 2023**.

*Colin H Lindsay, Magistrate Judge*
United States District Court

January 31, 2023

cc:  Counsel of record