UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00061-GNS-CHL

**UNITED STATES OF AMERICA,**                                                                              **Plaintiff,**

v.

**HUMANA INC.,**                                                                                                    **Defendant.**

**MEMORANDUM OPINION & ORDER**

Before the Court is a motion filed by Defendant Humana Inc. ("Humana") requesting leave to file under seal portions of the Court's March 31, 2022 orders (DNs 491, 492) (collectively "March 31 Orders"). (DN 496.) Relator Steven Scott ("Relator") does not oppose the motion. (DN 496 at 66301.) Therefore, this matter is ripe for review.

**I.      BACKGROUND**

On March 31, 2022, the Court issued separate orders on the Parties' *Daubert* motions ("Daubert Order") and on the Parties' summary judgment motions ("SJ Order"). (DNs 491, 492.) On April 29, 2022, Humana timely filed the instant motion seeking to redact a data chart and three figures drawn from that chart ("Data Chart") from the March 31 Orders pursuant to a protective order ("DDC Protective Order") between the Parties and the Centers for Medicare & Medicaid Services ("CMS") issued by the United States District Court for the District of Columbia on December 11, 2018. (DN 141-1). The undersigned previously sealed the Data Chart and its associated figures when they appeared as attachments to the Parties' briefs to the March 31 Orders. (*See* DN 478 at 14; DN 480 at 4-5). Because the same considerations discussed in those orders apply to the instant motion, in the interest of efficiency, the Court refers to those orders for a more thorough analysis.

## II. LEGAL STANDARD

Although the Sixth Circuit has long recognized a "strong presumption in favor of openness" regarding court records, there are certain interests that overcome this "strong presumption." *Rudd Equipment Co., Inc. v. John Deere Construction & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). These interests include "certain privacy rights of participants or third parties, trade secrets, and national security." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. The party seeking to seal the records bears a "heavy" burden; simply showing that public disclosure of the information would, for instance, harm a company's reputation is insufficient. *Id.*; *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). Instead, the moving party must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed. *Shane Grp. Inc.*, 825 F.3d at 307. Examples of injuries sufficient to justify a sealing of judicial records include those that could be used as "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978).

In rendering a decision, the Court must articulate why the interests supporting nondisclosure are compelling, why the interests supporting public access are not as compelling, and why the scope of the seal is no broader than necessary. *Shane Grp. Inc.*, 825 F.3d at 306. Importantly, the presumption that the public has the right to access judicial records does not vanish simply because all parties in the case agree that certain records should be sealed. *Rudd Equipment Co., Inc.*, 834 F.3d at 595 (noting that although the defendant did not object to the plaintiff's motion to seal, his lack of objection did not waive the public's First Amendment and common law right of access to court filings); *Shane Grp. Inc.*, 825 F.3d at 305 ("A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody.").

### III. DISCUSSION

The Court agrees that the Data Chart and its associated figures in the March 31 Orders should be sealed to avoid serious injury to CMS and others, including taxpayers. The Data Chart contains values derived from a CMS document titled "worksheet 1" that summarizes information submitted to CMS by Part D sponsors who are not parties to this litigation. (DN 496 at 66301; DN 414-2 at 46200.) Specifically, the Data Chart reflects CMS data on average member cost across Plan D sponsors. Jennifer Lazio, the director of CMS's actuarial group, stated in a sworn declaration that data on average cost-sharing per member offers a competitive edge to competing Part D sponsors when combined with publicly available information on a Part D plan's formulary and benefit package. (DN 414-2 at 42601.) Combined access to this public and private data would offer competing sponsors "an insight into an optimal design" which could then lead to those sponsors "choos[ing] a benefit structure that maximizes the beneficiary share of costs or the government subsidy for low-income cost sharing." (*Id*.) Public access to average member cost data contributes to the overall risk that competing sponsors will "manipulate their bids in a manner to avoid CMS scrutiny" or cause existing sponsors to be "less likely to provide sensitive material to CMS given the risk of having this information shared with their competitors." (*Id.* at 46204.) Humana has shown, on behalf of CMS, that disclosure is likely to result in concrete harm to CMS, CMS's other sponsors and Part D beneficiaries. The courts "heavily" weigh the privacy interests of innocent third parties in deciding whether filings should be sealed. *Shane Grp. Inc*., 825 F.3d at 308. Here, CMS is not only an innocent third party in this litigation, but it is the victim of Humana's alleged fraud. It would be counterproductive for litigating alleged abuses of the Part D bidding process to run the risk of exposing CMS to further abuses and making it more difficult to detect them.

The interest in nondisclosure must be weighed against the public's "strong interest in obtaining the information contained in the court record." *Shane Grp. Inc.*, 825 F.3d at 305 (quoting *Brown*, 710 F.2d at 1180.) Additionally, transparency is most important at the stage of litigation when the merits of the case are being decided. *Id.* at 305. Humana contends that the proposed redactions are limited to only analysis pertaining to worksheet 1 data and are thus "not essential to understanding the Court's rulings and will enable the public to appreciate fully the Court's reasoning." (DN 496 at 66303.) The Court agrees. The proposed redactions stem from citations to the expert report of Ross Winkelman in the SJ Order and *Daubert* Order. The Court recently granted Humana's requests to redact portions of expert reports, including Winkelman's report, containing figures derived from worksheet 1 because "public disclosure of this data could assist an interested sponsor in structuring its plan to maximize beneficiary or government cost sharing." (DN 478 at 65087; DN 480 at 65102.) Notably, however, the Court declined to seal the figures specific to Humana's bids. (DN 480 at 65102.) Here, Humana's proposed redactions are narrowly tailored to exclude only certain numbers and percentages from the non-Humana average member cost data collected by CMS. The redactions do not exclude the remainder of Winkelman's analysis, which sufficiently describes the effect of the data, or any data related to Humana's bids that bear on the merits of the case. Thus, while the public interest in access is strong at this stage of the case, the interest in maintaining the integrity of the Part D program tilts in favor of sealing particularly where, as here, the scope of the seal is appropriately narrow.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Humana's motion to seal (DN 496) is **GRANTED**. The Clerk of the Court is directed to file, as separate docket entries, clean copies of Humana's proposed redacted versions of the opinions (DNs 491 and 492).

Colin H Lindsay, Magistrate Judge
United States District Court

February 23, 2023

cc: Counsel of record

5