UNITED STATES OF AMERICA *ex rel.*
STEVEN SCOTT,

                Plaintiff,

        v.

HUMANA INC.,

                Defendant.

Civil Action No. 3:18-cv-00061-GNS-CHL

**DECLARATION OF ANDREW C. SHEN IN SUPPORT OF PLAINTIFF-RELATOR**
**STEVEN SCOTT'S PETITION FOR ATTORNEYS' FEES AND EXPENSES**

1.      I, Andrew C. Shen, pursuant to 28 U.S.C. § 1746, declare and state as follows:

2.      I am a partner with the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen").  I submit this Declaration in support of Relator's Petition for Attorneys' Fees, Costs, and Expenses.  I make this Declaration based on my own personal knowledge, and if called as a witness, I could and would competently testify to the matters stated herein.

3.      Kellogg Hansen has represented Relator Steven Scott in this case since January 2018.

## I.      OVERVIEW OF KELLOGG HANSEN

4.      Kellogg Hansen is a law firm of more than 90 attorneys based in Washington, D.C. that specializes in trials and appeals in federal and state courts across the country.  Our clients have included more than a dozen Fortune 50 corporations in industries ranging from healthcare, securities, telecommunications, internet services, computer manufacturing, and electrical controls, to entertainment, recreation, and retail.  Kellogg Hansen counts among its clients U.S. government agencies, states, foreign sovereigns, technology and telecommunications companies, a major health system, and a leading economic consulting firm.  We have also represented entrepreneurs, investors, immigrants, classes of consumers, farmers, small corporations, trade associations, unions, and governments.  The relevant background and experience of Kellogg Hansen and its attorneys on this case are summarized in the *curriculum vitae* attached as Exhibit 1.

5.    Kellogg Hansen is among the nation's premiere law firms in the areas of complex litigation and False Claims Act Litigation.[1]  The firm's cases have reshaped the substantive and procedural law of the False Claims Act.  At the trial level, Kellogg Hansen has secured some of the largest False Claims Act recoveries in U.S. history.  It has also successfully defended clients in numerous False Claims Act cases seeking equally large damages.  At the appellate level, Kellogg Hansen has represented clients in ground-breaking False Claims Act cases in the Court of Appeals and the United States Supreme Court.  Some of the firm's accomplishments in False Claims Act cases include the following:

a.    In *United States ex. rel. Westmoreland v. Amgen, Inc.*, No. 1:06-cv-10972-WGY (D. Mass.), Kellogg Hansen represented a Relator in what was at the time, the largest criminal and civil fraud settlement against a biotechnology company, amounting to $150 million in criminal fines and forfeitures, and $612 million to resolve claims brought by Kellogg Hansen's client (and other whistleblowers) under the federal and state False Claims Act, for a combined total recovery of $762 million.  I was a member of the litigation team.

b.    In *United States ex. rel. Mullen v. AmerisourceBergen Corp.*, No. CV-10-4856 (E.D.N.Y), Kellogg Hansen represented a Relator in the largest False Claims Act recovery of 2018.  AmerisourceBergen Corporation paid $625 million to settle claims under the False Claims Act and, in a related settlement, one of its subsidiaries paid a $260 million criminal fine.  I was a member of the litigation team.

---

[1] In Vault's 2025 rankings of Best Litigation Specialty Law Firms, Kellogg Hansen ranks number 2.  *See* Exhibit 2.

c.	In *United States ex rel. Ruckh v. CMC II LLC*, No. 11-1303 (MD. Fla.), Kellogg Hansen represented a Relator in a case alleging that a skilled nursing facility defrauded Medicare.  A jury awarded a judgment of more than $255 million after trebling and statutory penalties.  Kellogg Hansen partner James Webster was lead trial counsel.  The Eleventh Circuit affirmed the jury verdict, resulting in one of the largest False Claims Act jury verdicts ever upheld on appeal.

d.	In *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), Kellogg Hansen briefed and argued on behalf of respondents in the Supreme Court.  *Escobar* held that an implied false certification can be the basis of liability under the False Claims Act and further set the standard for materiality under the False Claims Act.  Kellogg Hansen partner David Frederick argued the case in the Supreme Court and Kellogg Hansen partner Katie Cooper worked on the merits brief.

e.	In *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 12 Civ. 8990 (LAK) (S.D.N.Y.), Kellogg Hansen defended the Bank of New York Mellon against claims brought under the false claims acts of various states.  Several states intervened in the suit.  Kellogg Hansen successfully had all False Claims Act claims dismissed.  I was a member of the litigation team.

f.	In a series of cases brought in California, Florida, Illinois, North Carolina, Pennsylvania, and the District of Columbia, Kellogg Hansen is defending AT&T Corp. and its affiliates against claims brought under the False Claims Acts of various states and counties.  Kellogg Hansen successfully had claims dismissed in

Florida, Iowa, Minnesota, New Jersey, North Carolina, Pennsylvania, and the District of Columbia, with the affirmances upheld on appeal (or not appealed).

6.    Kellogg Hansen has successfully represented federal agencies and States in numerous cases throughout the country. These include:

a.    Kellogg Hansen represented the National Credit Union Administration in a series of lawsuits against 18 financial institutions regarding the sale of mortgage-backed securities. The cases were filed in three district courts and involved appeals to the Second, Ninth, and Tenth Circuits. The National Credit Union Administration recovered more than $5.1 billion. Kellogg Hansen partner David Frederick and I led the litigation. James Webster, Thomas Schultz, and Katherine Cooper were members of the litigation team.

b.    In *State of Florida v. Purdue Pharma L.P.*, No. 2018-CA-001438 (Fla. 6th Jud. Cir.), Kellogg Hansen represented the State of Florida in a lawsuit against pharmaceutical manufacturers, distributors, and pharmacies arising out of the opioid epidemic. Florida recovered more than $3.6 billion. Kellogg Hansen partner David Frederick was lead counsel and Kellogg Hansen partner James Webster was lead trial counsel. Kellogg Hansen partners Thomas Schultz and Lillian Smith were members of the litigation team.

c.    In *New Jersey v. Delaware*, 552 U.S. 597 (2008), Kellogg Hansen successfully represented Delaware in a boundary dispute with New Jersey. Kellogg Hansen partner David Frederick was lead counsel in the Supreme Court.

d.    Kellogg Hansen represented 40 states and territories in an arbitration against all the major tobacco companies arising out of a master settlement agreement.

Kellogg Hansen partner David Frederick led the litigation team. Kellogg Hansen partner James Webster was lead trial counsel.

7. Kellogg Hansen has likewise defended suits brought against its clients by the U.S. government, its agencies, and states. For instance:

a. Kellogg Hansen is currently lead counsel defending Meta Corporation in antitrust lawsuits filed by the U.S. Federal Trade Commission and nearly every U.S. State. *Federal Trade Commission v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C.). Kellogg Hansen partners James Webster and Lillian Smith are members of the litigation team.

b. Kellogg Hansen successfully represented AT&T, Inc. in the Department of Justice's challenge to the merger of AT&T, Inc. and Time Warner. *See United States v. AT&T Inc.*, 310 F. Supp. 3d 161 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019).

c. Kellogg Hansen served as lead trial counsel for AT&T, Inc. in the Department of Justice lawsuit to enjoin the merger of AT&T Inc. and T-Mobile USA, Inc. *United States v. AT&T Inc., T-Mobile USA, Inc., and Deutsche Telekom AG*, No. 11-01560 (D.D.C.).

8. Kellogg Hansen has also litigated groundbreaking cases in the Western District of Kentucky. Among them is *Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002), where the firm won the largest private judgment collected under the U.S. antitrust laws. The jury found that United States Tobacco (UST) abused its monopoly power, and the Sixth Circuit affirmed the verdict. *Id.* UST ultimately paid $1.3 billion – the entire judgment plus

interest – after the Supreme Court denied *certiorari*. The trial team included now-Supreme Court Justice Neil Gorsuch.

9. Kellogg Hansen has further secured some of the largest judgments and settlements in U.S. history. For instance, in *Petersen Energía Inversora v. Argentine Republic*, No. 15-cv-2739 (S.D.N.Y.) and *Eton Park Cap. Mgmt, L.P. v. Argentine Republic*, No. 16-cv-8569 (S.D.N.Y.), the firm recently secured a judgment after trial of over $16 billion. As noted above, it obtained settlements of over $5.1 billion in the NCUA matters. It has also obtained what I believe to be the two largest antitrust jury verdicts in U.S. history in the *Conwood* case ($1.3 billion) and *In re Urethane Antitrust Litigation*, MDL No. 1616 (D. Kan. 2013) ($1.2 billion). Kellogg Hansen also regularly represents defendants in cases involving similar alleged damages.

10. Additional noteworthy cases are discussed in Exhibit 1 at 4-9.

11. As reflected in the small sample of cases above, Kellogg Hansen works on behalf of both plaintiffs and defendants. The firm takes cases on a non-contingent, billable-hour basis, as well as on a contingency basis. In all cases, the firm follows the same standards and practices for performing high-quality work as efficiently and cost-effectively as possible for our clients. Presently and historically, the firm has dozens of non-contingency clients from throughout the country who pay the firm's customary hourly rates.

12. Kellogg Hansen has prosecuted this case solely on a contingent fee basis and has been at risk that it would not receive any compensation for its work. All work performed by Kellogg Hansen in this case was done in accordance with the firm's usual and customary practices – no different than if the work had been done for a fee-paying client – including staffing, quality, efficiency, timekeeping, hourly rates, and expenses. The vast majority of

Kellogg Hansen's work is done for fee-paying clients. In 2023 and 2024, more than 80% of the firm's work, measured on an hourly basis, was fee paying work.

13.     While Kellogg Hansen devoted its time and resources to this matter, it has forgone other legal work for which it could have been compensated at its customary rate. The attorneys who worked on this case have also worked on some of the largest and most high-profile cases in the country. For instance, during the course of this litigation, I represented a sovereign nation in numerous lawsuits filed across the country. Mr. Webster represented Meta Corporation in the FTC's efforts to split up Facebook, Instagram, and WhatsApp. The firm sacrificed work on these paying cases, and others, to work on this matter.

## II.     KELLOGG HANSEN ATTORNEYS, PARALEGALS, AND OTHER PROFESSIONALS REPRESENTING RELATOR

14.     As reflected in the summaries below, the following individuals billed time to this matter during the time period from January 2018 through the present. All the individuals listed below made contemporaneous billing records in compliance with Kellogg Hansen's customary practice, which requires time to be entered into Kellogg Hansen's electronic billing system on at least a monthly basis with a description of tasks performed.

15.     More than 98 percent of Kellogg Hansen's lodestar, and 95 percent of Kellogg Hansen's hours in this matter are attributable to a core group of two partners, four associates, two staff attorneys, and four paralegals.[2] Other professionals contributed on a more discrete basis, such as during intense periods of briefing and/or as trial neared.

---

[2] The two partners are myself and James Webster. The four associates are Katherine Cooper, Thomas Schultz, Bethan Jones, and Caroline Schechinger. The two staff attorneys are Robert Moore and Kimberly Briggs. The four paralegals are David Burke, Emilia Lukeman, Maura MacDonald, and Robyn Sommerfield. Mr. Schultz was promoted to partner in 2021. Ms. Cooper was promoted to partner in 2022. Ms. Jones has been promoted to partner effective January 1, 2025.

## A. Kellogg Hansen Partners Representing Relator

16.     I served as Kellogg Hansen's lead partner on this matter and supervised all the work performed by Kellogg Hansen's professionals throughout the case.  My responsibilities included developing litigation, discovery, and trial strategy, overseeing and participating in all aspects of briefing, discovery, trial preparation, and settlement discussions.  I personally briefed numerous legal issues and argued the vast majority of motions.  I took or defended 12 fact and expert depositions.  I have extensive trial and appellate experience around the country, including arguing appeals and leading complex civil cases.  I have False Claims Act experience on both the plaintiff and defense side, having successfully represented relators in the *Westmoreland* and *Mullen* cases, and the defendant in the *Bank of New York Mellon* case.  I was named by *Benchmark Litigation* to its inaugural Under 40 Hot List and to Lawdragron's 500 Leading Litigators in America for 2023, 2024, and 2025.  I received my B.A. from Cornell University in 2000 and my law degree from Columbia Law School in 2004.  I then clerked for the Honorable Judge Dolores K. Sloviter on the U.S. Court of Appeals for the Third Circuit.  I have practiced complex commercial litigation at Kellogg Hansen since 2005.  *See* Exhibit 1 at 9-10 (describing additional background and noteworthy representations).  My 2024 hourly billing rate is $1,470 and my 2025 hourly billing rate is $1,600.

17.     James M. Webster, III, is a partner working on this matter.  Mr. Webster took a supervisory role in various aspects of the litigation, particularly in trial preparation, and personally took or defended 6 fact and expert depositions.  Mr. Webster has extensive lead trial experience, trying dozens of complex cases in federal and state courts throughout the country, including in the *Ruckh* case, discussed above.  Mr. Webster was named to Lawdragron's 500 Leading Litigators in America for 2023, 2024, and 2025.  Mr. Webster received his B.A. from the University of Virginia in 2000, received his law degree from Columbia Law School in 1994, and

clerked from the Honorable Judge Paul V. Niemeyer on the U.S. Court of Appeals for the Fourth Circuit.  Mr. Webster joined Kellogg Hansen in 1995, served as an Assistant United States Attorney in the District of Maryland from 1998 to 2002, and rejoined Kellogg Hansen in 2002. *See* Exhibit 1 at 10-11 (describing additional background and noteworthy representations). Mr. Webster's 2024 hourly billing rate is $1,650 and his 2025 hourly billing rate is $1,800.

18. David C. Frederick, a partner, is among the premier appellate and trial-level lawyers in the country.  He has argued more than 100 appeals, including 55 in the Supreme Court of the United States, in every U.S. Court of Appeals, and in five state Supreme Courts. Mr. Frederick argued and won the seminal *Escobar* case in the Supreme Court, discussed above. Mr. Frederick has also represented numerous federal agencies and States in the Supreme Court, the United States Courts of Appeals, the United States District Courts and in numerous state courts.  Mr. Frederick regularly appears on lists of the country's leading litigators.  Mr. Frederick assisted in shaping litigation and trial strategy in this matter, and in settlement discussions. Mr. Frederick earned his B.A. from University of Pittsburgh in 1983, his D. Phil. from the University of Oxford in 1987 where he was a Rhodes Scholar, his law degree from the University of Texas in 1989.  He clerked for the Honorable Judge Joseph T. Sneed on the U.S. Court of Appeals for the Ninth Circuit, and the Honorable Justice Byron R. White of the United Supreme Court.  Mr. Frederick served as a Counselor to the Inspector General from 1995 to 1996 and as an Assistant to the Solicitor General from 1996 to 2001.  Mr. Frederick is the author of Supreme Court and Appellate Advocacy (Thomas Reuters, 2003, 3d ed. 2019) and The Art of Oral Advocacy (West Academic, 2003, 2d ed. 2011).  *See* Exhibit 1 at 11 (describing additional background and noteworthy representations).  Because Mr. Frederick billed less than 50 hours on this matter, Kellogg Hansen is not seeking fees for Mr. Frederick's time.

### B. Kellogg Hansen Associates Representing Relator

19.     Kellogg Hansen had five associate attorneys work on this case, in addition to Mr. Schultz and Ms. Cooper who were promoted to partner during the course of the litigation. Bethan Jones has worked on this matter since 2018.  Ms. Jones has been promoted to partner effective January 1, 2025.  Lillian Smith and Caroline Schechinger joined the team in the Fall of 2022 as Relator began trial preparations.  Ms. Smith was promoted to partner in January 2024.

20.     Thomas G. Schultz received his undergraduate degree from the University of Minnesota in 2009 and his law degree from Cornell Law School in 2013.  He clerked for the Honorable Judge Roger Wollman in the U.S. Court of Appeals for the Eighth Circuit from 2013 to 2014.  Mr. Schultz has a variety of litigation experience at the trial and appellate level in both state and federal courts and he personally took 9 fact and expert depositions in this litigation. Mr. Schultz recently represented the State of Florida in the lengthy and complex litigation against pharmaceutical distributors regarding the Opioid crisis.  *See* Exhibit 1 at 12 (describing additional background and noteworthy representations).  He has further litigated False Claims Act cases on both the plaintiff and defense side.  Mr. Schultz joined the firm as an associate in 2014, and was promoted to partner in 2021.  Mr. Schultz's 2024 hourly billing rate is $1,195[3] and his 2025 hourly billing rate is $1,350.

21.     Katherine C. Cooper has extensive experience in high-stakes litigation in trial and appellate courts, and in international arbitration.  She has conducted oral arguments in the U.S. Court of Appeals, argued in state and federal trial courts, and has drafted merits briefs in the U.S. Supreme Court, including the merits brief in *Escobar*.  Ms. Cooper personally took or defended 7 fact depositions in this litigation.  Ms. Cooper received her undergraduate degree from Duke

---

[3] The materials provided to Judge Lindsay in advance of the November 15, 2024 mediation inadvertently indicated that Mr. Schultz's 2024 rate was $1150.

University in 2007, received her law degree from Harvard Law School in 2013, and clerked for the Honorable Judge Allyson K. Duncan in the U.S. Court of Appeals for the Fourth Circuit. *See* Exhibit 1 at 12-13 (describing additional background and noteworthy representations). Ms. Cooper joined the firm as an associate in 2015 and was promoted to partner in 2022. Ms. Cooper's 2024 hourly billing rate is $1,150 and her 2025 hourly billing rate is $1,250.

22. Bethan R. Jones received her undergraduate degree from Arizona State University in 2013, and her law degree from The University of Pennsylvania in 2016. She clerked for the Honorable Judge Anthony J. Scirica in the U.S. Court of Appeals for the Third Circuit, before joining the firm in 2018. Ms. Jones represents clients in complex commercial litigation and has particular experience in antitrust telecommunications, and False Claims Act cases. Among other things, Ms. Jones personally took 2 fact depositions, assisted in the preparing discovery requests, answered discovery, drafted briefs and other filings, and prepared trial witnesses in this litigation. *See* Exhibit 1 at 13-14 (describing additional background and noteworthy representations). Ms. Jones has been promoted to partner effective January 1, 2025. Ms. Jones' 2024 hourly billing rate is $1,040 and her 2025 billing rate is $1,225.

23. Lillian V. Smith graduated from Brooklyn Law School in 2016, and received her undergraduate degree from The University of Virginia in 2008. In January 2024, Ms. Smith was promoted to partner. Prior to joining Kellogg Hansen in 2017, Ms. Smith served as a law clerk to Chief Judge Roger L. Gregory on the U.S. Court of Appeals for the Fourth Circuit. Ms. Smith works on a wide variety of complex litigation matters. Most recently she has been involved in a large-scale federal antitrust case and a complex SEC investigation. *See* Exhibit 1 at 13 (describing additional background and noteworthy representations). Ms. Smith primarily assisted in preparing witness examination outlines and drafting motions in limine and other pre-

trial motions.  Ms. Smith's 2024 hourly billing rate is $1,150 and her 2025 hourly billing rate is $1,250.

24.     Caroline A. Schechinger, an associate, has been practicing at Kellogg Hansen since 2021. She received her undergraduate degree from Duke University in 2016, and her law degree from Stanford Law School in 2019.  Prior to joining the firm, Ms. Schechinger served as a law clerk to the Honorable Judge Gary S. Feinerman of the U.S. District Court for the Northern District of Illinois, as well as a law clerk to the Honorable Judge J. Harvie Wilkinson III of the U.S. Court of Appeals for the Fourth Circuit.  She has been involved in a variety of matters including a complex federal antitrust case. *See* Exhibit 1 at 14 (describing additional background and noteworthy representations).  Ms. Schechinger primarily assisted in preparing witness examination outlines and drafting motions in limine and other pre-trial motions. Ms. Schechinger's 2024 hourly billing rate is $860 and her his 2025 hourly billing rate is $985.

### C.     Kellogg Hansen Staff Attorneys Representing Relator

25.     Kellogg Hansen had three staff attorneys work on this matter.  These staff attorneys primarily processed document productions, assisted with the preparation of privilege logs, reviewed documents in preparation for filings and depositions, and worked on trial exhibits.

26.     Kimberly A. Briggs, a senior staff attorney, joined the firm in 2001.  She received her undergraduate degree from Virginia Commonwealth University in 1997 and law degree from George Mason University of Law in 2000.  Ms. Briggs' 2024 billing rate is $555 and her 2025 hourly billing rate is $590.

27.     Robert L. Moore, a staff attorney, joined Kellogg Hansen in 2013.  He has worked on several complex litigation cases.  Prior to his tenure with Kellogg Hansen, Mr. Moore was an associate at both Williams & Connolly LLP and Steptoe & Johnson LLP.  Mr. Moore received his undergraduate degree from the University of Maryland in 1998 and his law degree from

Georgetown University in 2003. He also served as a law clerk in the United States Attorney's Office, Appellate Division. Mr. Moore's 2024 billing rate is $555 and his 2025 hourly billing rate is $590.

28.     Joseph M. Davies, a staff attorney, joined Kellogg Hansen in 2012. He is a 2007 graduate of George Washington University Law School. Mr. Davies's 2024 hourly billing rate is $555 and his 2025 hourly billing rate is $590.

**D.     Kellogg Hansen Paralegals Who Worked on this Matter**

29.     Kellogg Hansen's attorneys were assisted by litigation paralegals. The paralegals working on this matter have decades of complex litigation and trial experience.

30.     Kellogg Hansen had four primary paralegals working on this matter, who billed over 90 percent of the paralegal lodestar. Other paralegals assisted with cite-checking and proofing specific motions and other filings, or with other discrete tasks leading up to trial.

31.     Maura M. MacDonald served as Kellogg Hansen's lead paralegal on this matter. Ms. MacDonald has over 15 years' experience, including significant paralegal experience taking large-scale, complex, and multidistrict litigations to trial, including product liability, antitrust, litigation funding, and climate change matters. Ms. MacDonald's experience includes understanding and implementing case-file and records-management strategies in support of litigation and trial teams, leading the support team, running the case management databases, tracking dates and resources, and preparing and cite-checking pleadings, expert reports, and other trial-related documents. Ms. MacDonald has been with the firm since 2018. Prior to her tenure with Kellogg Hansen, Ms. MacDonald worked as a paralegal in the Enforcement Division of the CFTC, in the Risk Management Department for Johns Hopkins Healthcare System, and for Paul Hastings. Ms. MacDonald graduated with a B.A. in Anthropology with honors from the

College of the Holy Cross and attended Brooklyn Law School.  Ms. MacDonald's 2024 hourly billing rate is $450 and her 2025 hourly billing rate is $475.

32.     Bernadette M. Murphy is Kellogg Hansen's Paralegal Director and served in that capacity on this matter primarily as it approached trial.  Ms. Murphy has more than 30 years' experience as a litigation paralegal, and has been with the firm for 29 years.  In managing the firm's paralegal team, she has managed complex litigation and assisted counsel in court in more than a dozen trials.  She has shepherded numerous other cases throughout the pretrial process. Prior to Kellogg Hansen, Ms. Murphy worked with the Mercer County Prosecutor's Office, Trenton, New Jersey, as an Investigator in the Child Abuse and Special Victims Units where she investigated cases and testified before the grand jury.  Ms. Murphy graduated in 1985 from the College of New Jersey with a B.S. in Criminal Justice and in 1988 from Long Island University with a certificate in paralegal studies.  Ms. Murphy's 2024 hourly billing rate is $515 and her 2025 hourly billing rate is $545.

33.     Emilia C. Lukeman served as a paralegal on this matter.  Ms. Lukeman holds a Bachelor of International Studies and Bachelor of Law from Macquarie University in Sydney, Australia, and a Paralegal Certificate from Boston University.  Ms. Lukeman has a wide range of trial and litigation experience as an attorney in Australia, and as a paralegal in the U.S.  She joined the firm in 2021.  Ms. Lukeman's 2024 hourly billing rate is $450 and her 2025 hourly billing rate is $475.

34.     David M. Burke served as a paralegal on this matter.  Mr. Burke has more than 30 years of experience with a range of litigation, including telecommunications, antitrust, product liability, securities fraud, climate change matters, and multiple original actions in the U.S. Supreme Court, and he has assisted at several trials.  With nearly 6 years of experience as a

paralegal specialist in the U.S. Justice Department's Office of the Solicitor General and more than 25 years of experience at Kellogg Hansen, Mr. Burke also has decades of experience in Supreme Court and appellate briefing in hundreds of cases during that time.  Mr. Burke graduated with a B.B.A. from the University of Missouri – Kansas City in 1986; he earned his J.D. from the University of Missouri – Kansas City School of Law in 1994 (including attending the George Washington University Law School as a visiting student during his third year).  He is a member of both the Virginia State Bar and the U.S. Supreme Court Bar.  Mr. Burke's 2024 hourly billing rate is $515 and his 2025 hourly billing rate is $545.

35.     Robyn L. M. Sommerfield served as a paralegal on this matter, starting in 2018.  Ms. Sommerfield has been with Kellogg Hansen for 20 years and has extensive experience cite-checking and proofreading legal pleadings, expert reports, federal agency submissions, and white papers; and has handled case management for large-scale litigations. Prior to her tenure with Kellogg Hansen, Ms. Sommerfield worked for three years at Arnold and Porter (now Arnold & Porter Kaye Scholer LLP) in the Washington, D.C. office.  She has also provided intellectual property legal services with The Maryland Public Interest Law Project Inc., assisted in directing moot court programs with We the Students under Jamie Raskin, and Ms. Sommerfield has volunteered with other civil organizations.  She has also been a participant in the National Health Law Moot Court and the AIPLA Giles Sutherland Rich Moot Court. Ms. Sommerfield graduated with a B.S. from Ithaca College with honors in 1998 in Television with an art history minor and a J.D. from the University of Maryland School of Law in 2003. Ms. Sommerfield's 2024 hourly billing rate is $450 and her 2025 hourly billing rate is $475.

36.     Chandler J. Sella served as a paralegal on this matter as it approached trial. Ms. Sella holds a Bachelor of Arts degree in political science from the College of Charleston.

She joined the firm in 2015 and has a range of trial and litigation experience, including antitrust. Ms. Sella's 2024 hourly billing rate is $450 and her 2025 hourly billing rate is $475.

37.     Susan D. Cohen served as a paralegal on this matter.  Ms. Cohen has over 40 years' experience taking cases to trial in federal and state courts.  She has designed and managed custom databases for multidistrict litigation involving thousands of records, training teams on their use, and is an expert in legal and database software.  Ms. Cohen has proofread and cite-checked pleadings, expert reports, and client white papers, as well as complete book manuscripts.  Because Ms. Cohen billed less than 50 hours to this matter, Kellogg Hansen is not seeking fees for her time.

38.     James M. Birmingham served as a paralegal on this matter.  Mr. Birmingham has significant experience with a range of litigation, including trials.  He has a B.A. from Tufts University and has been with the firm since 1996, until he recently moved out of the area. Mr. Birmingham's 2024 hourly billing rate is $450.  A paralegal of Mr. Birmingham's seniority has a 2025 billing rate of $475.

39.     Darrin D. Leverette served as a paralegal on this matter.  Mr. Leverette has more than 30 years of paralegal experience and has been with Kellogg Hansen for 24 years. Mr. Leverette specializes in appellate matters, including case management, briefing, preparation of appendices, and cite-checking.  He received a B.A. from James Madison University.  Because Mr. Leverette billed less than 50 hours to this matter, Kellogg Hansen is not seeking fees for his time.

40.     Sean D. Sullivan served as a paralegal on this matter.  Mr. Sullivan has significant experience with a range of litigation, including trials.  He has a B.A. from Christopher Newport University and a Paralegal Certification from George Mason University.  Mr. Sullivan has been

with the firm since 2018.  Because Mr. Sullivan billed less than 50 hours to this matter, Kellogg Hansen is not seeking fees for his time.

41.     Lisa M. Harger served as a paralegal on this matter.  Ms. Harger has over 25 years' experience as a paralegal with a specialized focus in electronic discovery.  She assists case teams with all phases of litigation, including pleadings, discovery, motions practice, trials, arbitrations, and appeals.  Ms. Harger has a B.A. from the University of Virginia and currently serves as a public member on hearing committees of the D.C. Bar Board of Professional Responsibility.  Ms. Harger's 2024 hourly billing rate is $450 and her 2025 hourly billing rate is $475.

### E.     Additional Kellogg Hansen Professionals Who Worked on this Matter

42.     In addition to attorneys and paralegals, other Kellogg Hansen professionals also contributed to this case, research managers and analysts, and litigation support staff.  Such personnel provided research; technical support with case management, electronic discovery and database management; as well as trial coordination – just as they do in Kellogg Hansen's non-contingency cases for fee-paying clients.

43.     Carver D. Sinn was a Research Manager with the firm from March 1996 until retirement in August 2022.  Mr. Sinn graduated from Bucknell University in 1995.  He has significant experience managing document productions, including Concordance and Relativity database management and incoming and outgoing production preparation and tracking.  He has also provided litigation support at multiple trials.  Mr. Sinn left the firm in 2022.  The hourly rate in 2024 and 2025 for a research manager at Mr. Sinn's seniority is $295.

44.     James A. Brennan served as a Litigation Support Specialist and provided trial support on this matter, and has been with the firm since 2004.  Mr. Brennan has provided litigation support on firm matters during his nineteen years with the firm.  Since 2014,

Mr. Brennan has supported the firm's trial teams by assisting with trial office logistics, office setup, and IT support. Since 2017, Mr. Brennan has served as primary trial IT support specialist and trial office supervisor. Mr. Brennan's 2024 hourly billing rate is $200 and his 2025 hourly billing rate is $225.

45.     Joyce D. Cannon is Kellogg Hansen's Trial Coordinator and has been with the firm since June 1993. Ms. Cannon coordinates the logistics, set-up, and oversight of trial offices and arrangements for the firm's cases as they approach, and during, trial. Over the years, Ms. Cannon has coordinated more than 100 trials for the firm. Because Ms. Cannon billed less than 50 hours to this matter, Kellogg Hansen is not seeking fees for her time.

46.     Mary Ann K. Endo is Research Director and has been with the firm since 1996. Ms. Endo drafts fact reports; investigates claims and obtains evidence; drafts demonstrative exhibits for witnesses and for opening and closing arguments; and extracts key conduct from large document collections. Because Ms. Endo billed less than 50 hours to this matter, Kellogg Hansen is not seeking fees for her time.

47.     Jason J. Tapkas served as a Litigation Support Specialist on this matter and has been with the firm since 2005. Mr. Tapkas has provided litigation support on firm matters during his eighteen years with the firm. Since 2022, Mr. Tapkas has supported the firm's document processing team by utilizing discovery management software. Mr. Tapkas's 2024 hourly billing rate is$200 and his 2025 hourly billing rate is $215.

48.     Ripton Marini served as a Litigation Support Specialist on this matter and has been with the firm since 2004. Mr. Marini has provided litigation support on firm matters during his nineteen years with the firm. In 2022, Mr. Marini has taken on the additional responsibilities

of processing and loading productions to discovery management software.  Mr. Marini's 2024 hourly billing rate is $200 and his 2025 hourly billing rate is $215.

## III.  KELLOGG HANSEN'S LODESTAR

49.     Attached hereto as Exhibit 3A is a chart that summarizes the total hours and lodestar by timekeeper and by year through November 2024, computed at 2025 rates.[4]  Exhibit 3B is a chart that summarizes the total hours and lodestar by timekeeper and by year through November 2024, computed at 2024 rates.  Exhibit 3 is Kellogg Hansen's detailed contemporaneous time records.  The publicly filed version of these time records redacts privileged information.  Unredacted versions will be submitted *in camera* to the Court.

50.     Kellogg Hansen is seeking fees for a total of 22 timekeepers (10 attorneys and 12 non-attorney timekeepers).  Kellogg Hansen is not seeking reimbursement for any attorney or staff member who billed less than 50 hours on this matter.  This reduces the number of timekeepers by 28 (6 attorney timekeepers and 22 non-attorney timekeepers).  *See* Exhibits 4A and 4B.

51.     The total number of hours for which Kellogg Hansen seeks compensation through November 2024 is 25,330.70 hours, with a corresponding lodestar of $29,266,892.50 based on 2025 rates.  The summaries in Exhibits 3A and 3B were prepared from the contemporaneous, daily time records regularly prepared and maintained by my firm.  *See* Exhibit 3.

52.     The 2024 hourly rates for the attorneys and professional support staff in my firm included in Exhibit 3B are the same as the regular billing rates that were charged to and paid by Kellogg Hansen clients on a monthly, non-contingent basis, for work conducted throughout the

---

[4] One researcher, Mr. Sinn, left the firm in 2022.  Kellogg Hansen has calculated its lodestar using the billable rate applicable under the firm's 2024 and 2025 rate structure for a researcher with the same skill, seniority, and experience as Mr. Sinn at the time he left the firm.

country.  The 2025 hours rates set out in Exhibit 3A are the same as the regular billing rates that Kellogg Hansen will charge clients on a monthly, non-contingent basis, for work conducted throughout the country starting January 1, 2025.  The 2024 and 2025 rates do not include any enhancement for the risk of non-payment in a contingency case, and they do not include charges for expense items that are billed separately and not duplicated in the billing rates.

53.     Courts around the country, including in the Western District of Kentucky, have regularly approved attorneys' fees for Kellogg Hansen in other complex cases based on the firm's standard hourly rates.  Attached as Exhibit 5 are orders from the following illustrative cases, which approved fee awards submitted with Kellogg Hansen's standard hourly rates:

a.      In *Conwood v. U.S. Tobacco*, the United States District Court for the Western District of Kentucky awarded Kellogg Hansen its standard contemporaneous hourly rates, even though those rates were "considerably higher than those charged by [other firms] in Paducah."  The court reasoned that in "light of [the] complexity" of the case, the "Court is satisfied that in the instant case the decision to bring antitrust specialists from Washington, D.C. as lead counsel was not an unreasonable one. . . .  In light of the specialized training possessed by the attorneys from Kellogg [Hansen] (as well as the generally higher costs of the legal practice in Washington, D.C.), it is to be expected that the attorneys would charge more for performing services in [their] area of expertise. . . .  It would be unreasonable to limit Kellogg [Hansen]'s fees to those charged in the Paducah area, especially when the defendant utilized equally expensive and equally talented attorneys from a major legal market."  Mem. Op. & Order, *Conwood v.*

*U.S. Tobacco*, No. 5:98CV-108-R (W.D. Ky. Nov. 15, 2001), DN 483 at 5-6 (internal quotation marks and citations omitted).

b.    In *Emerson v. Florida Dep't of Revenue* ("*Emerson*"), Kellogg Hansen represented plaintiffs in a case challenging the legality of a county tax. The state court in Florida awarded Kellogg Hansen its standard 2024 partner rate of $1,675, counsel rate of $1,080, and associate rates of $920 to $1,040, and paralegal rate of $450, and found all hours in the case to be reasonable. The court then applied a five times multiplier on the lodestar amount. *See* Pls. Mot. for Final Approval of Proposed Class Action Settlement & Application for Award of Attorney's Fees, Costs & Expenses (excerpted), *Emerson*, No. 2021-CA-000487 (Fl. Cir. Ct. Leon County), filing # 208657916; Order Granting Pls. Mot. for Final Approval, *Emerson*, No. 2021-CA-000487 (Fl. Cir. Ct. Leon County), filing # 211178999.

c.    In *In re Aearo Technologies LLC*, the court and an independent court-appointed fee examiner approved Kellogg Hansen's standard 2023 partner rates of $1,250 to $1,850, of counsel rates of $1,025, associate rates of $755 to $940, and paralegal rates of $495. *See* Fee Application and Exhibit, Fee Examiner Report, Order Granting Fee Application, *In re Aearo Technologies LLC*, No. 22-02890-JJG-11 (Bankr. S.D. Ind.), DN 1729, 1729-2, 1918, 1979.

d.    In *In re Bestwall LLC*, the court granted applications to retain and pay Kellogg Hansen at its standard 2023 and 2024 partner rates of $1,095 to $1,850, associate rates of $755 to $940, and paralegal rates of $430 to $515. *See* First and Second Fee Applications (excerpted) and Orders, *In re Bestwall LLC*, No. 17-31795 (Bankr. W.D.N.C.), DN 3199, 3233, 3436, 3449.

e.     In *UFCW & Emps. Benefit Tr. v. Sutter Health* ("*Sutter*"), the court found Kellogg

Hansen's standard partner rates in 2020 of $890 to $1,095, associate rates of

$535 to $805, staff attorney rates of $400 to $460, paralegal rates of $275 to $430,

and researcher rates of $160 to $260 to be reasonable, even though some attorneys

have "high billing rates."  Order at 15, *Sutter*, No. CGC-18-565398 (Cal. Super.

Ct. Aug. 27, 2021); Decl. of Daniel G. Bird In Supp. of Pls.' Counsel's Joint Mot.

for Attorneys' Fees, Costs, and Service Award (excerpted), *Sutter*, No. CGC-18-

565398 (Cal. Super. Ct. Aug. 2, 2021).

f.     In *Haggart v. United States*, Kellogg Hansen submitted the following hourly rates

for work in 2015-2020:  partner rates ranging from $650 to $1,265; associate rates

ranging from $395 to $750; researcher rates ranging from $150 to $455; and

paralegal rates ranging from $205 to $430.  The U.S. Court of Federal Claims said

it was "satisfied that the rates charged by Kellogg Hansen's attorneys were

reasonable."  Order, *Haggart v. United States*, 149 Fed. Cl. 651, 669 (Ct. Fed. Cl.

2020); *see also* Decl. of David Frederick in Supp. of Fee Application, Decl.

Exhibit A (excerpted), *Haggart v. United States*, No. 1:09-cv-00103-EHM (Ct.

Fed. Cl.) DN 360-2, 360-3.

g.     In *In re Anderson News, LLC*, Kellogg Hansen submitted the following hourly

rates for work in 2010-2018: partner rates ranging from $500 to $1,100; associate

rates ranging from $330 to $660; a summer associate rate of $185; paralegal rates

ranging from $170 to $320; and researcher and litigation support rates ranging

from $100 to $185.  The U.S. Bankruptcy Court for the District of Delaware

found that Kellogg Hansen's fees were "reasonable" and awarded the requested

compensation at those rates.  Order Approving Fee Applications at 1, *In re Anderson News, LLC*, No. 09-10695 (Bankr. D. Del.), DN 2671; *see also* Amended Final Fee Application (excerpted), *In re Anderson News, LLC*, No. 09-10695 (Bankr. D. Del.), DN 2667.

h.     In *Kleen Prods. LLC v. Int'l Paper Co.*, the U.S. District Court for the Northern District of Illinois approved Kellogg Hansen's customary rates "as reasonable." Order Granting Mot. for Final Approval of Settlement, Interim Award of Attorneys' Fees and Plan of Distribution at 9, No. 1:10-cv-05711 (N.D. Ill. Oct. 17, 2017), DN 1411.

i.     In *In re CRT Antitrust Litig.*, Kellogg Hansen submitted the following hourly rates for work in 2014-2016:  partner rates ranging from $850 to $900; an associate rate of $395; and staff attorney rates of $350.  The Court approved class counsel's fee request, awarding 30% of an $84.75 million settlement fund with a lodestar cross-check resulting in an imputed multiplier of 2.152.  Order at 5, *In re CRT Antitrust Litig.*, No. 3:07-cv-05944 (N.D. Cal.) DN 5169; *see also* Decl. of Steven Benz in Supp. of Fee Application, *In re CRT Antitrust Litig.*, No. 3:07-cv-05944 (N.D. Cal.) DN 5133-4.

j.     In *In re Steel Antitrust Litig.*, Kellogg Hansen represented to the Court that its lodestar was based on the hourly rates charged to fee-paying clients for similar work.  The Court found "that Class Counsel performed their work reasonably and efficiently, that their billing rates are appropriate and consistent with market rates for attorneys of similar skill doing similar work, and that the lodestar totals are

reasonable."  Order Awarding Attorneys' Fees at 3, *In re Steel Antitrust Litig.*, No. 1:08-cv-05214 (N.D. Ill. Feb. 16, 2017), DN 680.

54.     Throughout the litigation, Kellogg Hansen conducted its work efficiently.  At virtually every deposition, Humana sent more attorneys than Relator; in some cases the number of Humana's attorneys outnumbered Relator's attorneys four to one.  Humana attorneys also outnumbered Relator's attorneys at hearings and other direct interactions our firm had with Humana's counsel.  Exhibit 6 sets forth the attorneys for each side who attended each deposition.

55.     On a regular basis over the course of this case, as well as in connection with preparing this Declaration, I reviewed the time and expense records that form the basis of this Declaration to correct any billing errors and to write-off time in accordance with our regular billing practices.  In addition, my firm has removed all time entries by timekeepers of any rank with fewer than 50 hours (there were 28 such timekeepers); and any time reflecting potentially ministerial tasks, duplicative work, or excess time.

## IV.    KELLOGG HANSEN'S WORK IN EACH LITIGATION PHASE

56.     To assist the Court in reviewing the work that was performed in this case, Exhibit 7 summarizes the hours billed in this case by my firm on a monthly basis.  Relator's counsel have also separated the case into six phases:  (1) September 10, 2015 (preparation of the complaint) through January 19, 2016 (filing of the sealed complaint); (2) January 20, 2016 (day after filing of the complaint) through September 13, 2017 (unsealing of the complaint); (3) September 14, 2017 (day after unsealing of the complaint) through July 17, 2020 (close of fact and expert discovery); (4) July 18, 2020 (day after close of fact and expert discovery) through October 28, 2020 (date summary judgment briefing was complete); (5) October 29, 2020 (summary judgment briefing was complete) through June 15, 2023 (date a settlement in principle

was reached); and (6) June 16, 2023 (day after a settlement in principle was reached) through November 30, 2024.

57.    Kellogg Hansen began representing Relator in January 2018, during Phase 3.

58.    Details regarding the hours spent by each timekeeper in connection with each of these phases are set forth below.  The descriptions of work that follow for each Kellogg Hansen professional are based on contemporaneous time entries each person submitted.  I personally supervised this work.  In addition, I have reviewed contemporaneous time entries submitted by attorneys and staff describing the work they performed.

**A.    Phase 3:  September 14, 2017 (day after unsealing of the complaint) through July 17, 2020 (close of fact and expert discovery).**

59.    Kellogg Hansen's lodestar for Phase 3 was $15,736,356.00, as detailed in attached Exhibit 8A.[5]

60.    **Mr. Shen** (2,441.5 hours):  In this phase, I led all aspects of fact and expert discovery and overall litigation strategy.  I supervised all the work of Kellogg Hansen's professionals, including work on affirmative and defensive fact and expert discovery, discovery on third parties, document review of productions from all parties, and coordination with the government.  This included discovery on 4 non-parties and document review of the 412,104 documents (1,649,560 pages) produced by Humana and the 130,746 documents (570,043 pages) produced by non-parties.  Kellogg Hansen also assisted in the preparation of seven expert reports submitted by three testifying experts.  In this phase, I argued at least 7 motions, deposed 9 fact or Rule 30 witnesses, defended 1 fact witness deposition, deposed 1 expert witness, and defended 1 expert witness.  All told in this phase, under my supervision, Kellogg Hansen attorneys took 25 fact or Rule 30 depositions spanning at least 134 hours and 2 expert depositions spanning 16

---

[5] Exhibit 8B shows Kellogg Hansen's lodestar for Phase 3 at 2024 rates.

hours.  Kellogg Hansen attorneys defended 2 fact depositions, spanning over 9 hours and 3 expert depositions, spanning over 24 hours.  In this phase, Kellogg Hansen briefed at least 35 discovery motions, including 12 motions to compel.  Kellogg Hansen argued at least 7 motions and appeared at 12 or more hearings.

61.     **Mr. Webster** (1,228.3 hours):  In this phase, Mr. Webster participated in litigation strategy, oversaw and conducted document review, assisted with discovery motions and hearings, prepared witnesses and experts for depositions, and personally took or defended 4 fact and expert depositions.  He also drafted various discovery-related motions, requests for production, and interrogatories.

62.     **Mr. Schultz** (1,873 hours):  In this phase, Mr. Schultz organized and oversaw document review and negotiated discovery parameters with Humana, including search terms, custodians, and search protocol.  Mr. Schultz also prepared requests for production, subpoenas, interrogatories, and other written discovery and assisted in responding to Humana's discovery on Relator.  In this phase, Mr. Schultz took 8 fact and expert depositions.  Mr. Schultz also drafted numerous motions and other filings.

63.     **Ms. Cooper** (2,722.2 hours):  Ms. Cooper organized and oversaw document review and negotiated discovery parameters with Humana, including search terms, custodians, and search protocol.  Ms. Cooper also prepared requests for production, subpoenas, interrogatories, and other written discovery and assisted in responding to Humana's discovery on Relator.  In this phase, Ms. Cooper took or defended 6 fact and expert depositions.  Ms. Cooper also drafted numerous motions and other filings.

64.     **Ms. Jones** (1886.5 hours):  In this phase, Ms. Jones aided in various aspects of fact and expert discovery, including legal research, drafting and responding to written discovery,

preparing for fact and expert depositions, document review, engaging in meet and confer discussions with Humana's counsel, and drafting motions and other filings. In this phase, Ms. Jones took 2 fact depositions.

65. **Mr. Davies** (319.5 hours): Mr. Davies worked on document review and identification of relevant documents for expert and fact depositions.

66. **Mr. Tapkas** (87.4 hours): Mr. Tapkas worked on technical document processing issues, including formatting and converting native spreadsheet files to printable PDFs for use at depositions and in filings.

67. **Ms. Briggs** (264.1 hours): Ms. Briggs was responsible for preparing Relator's productions as well as processing and reviewing Humana's productions. She coordinated with vendors and co-counsel regarding both parties' productions and file hosting issues. She also assisted with preparation of exhibits for filings, depositions, expert review, and facilitated all aspects of litigation support.

68. **Mr. Moore** (1,029.3 hours): Mr. Moore conducted document review for purposes of case development, depositions, and filings.

69. **Ms. Murphy** (19.6 hours): Ms. Murphy oversaw and organized tasks for the paralegal team and assisted with cite checking.

70. **Mr. Burke** (53.9 hours): Mr. Burke assisted with reviewing and cite-checking pleadings, expert reports, written discovery, and other filings.

71. **Mr. Birmingham** (36.4 hours): Mr. Birmingham assisted with reviewing and cite-checking pleadings, expert reports, written discovery, and other filings.

72. **Mr. Brennan** (88.6 hours): Mr. Brennan assisted with technical document processing issues.

73.     **Ms. Harger** (60 hours):  Ms. Harger assisted with reviewing and cite-checking pleadings and other filings.

74.     **Ms. MacDonald** (518 hours):  Ms. MacDonald provided general case management for the litigation team including calendar scheduling of litigation events and depositions.  She also reviewed and prepared subpoenas and documents for depositions, and organized deposition deliverables.  She also coordinated, as well as assisted with, the review and cite-check of pleadings, expert reports, written discovery, and other filings.

75.     **Mr. Marini** (90.5 hours):  Mr. Marini assisted with technical document processing issues.

76.     **Mr. Sinn** (85.2 hours):  Mr. Sinn assisted with technical document processing and conversion issues.

77.     **Ms. Sommerfield** (20.9 hours):  Ms. Sommerfield assisted with reviewing and cite-checking pleadings, expert reports, written discovery, and other filings.

**B.      Phase 4:  July 18, 2020 (day after close of fact and expert discovery) through October 28, 2020 (date summary judgment briefing was complete).**

78.     Kellogg Hansen's lodestar for Phase 4 was $2,501,553.50, as detailed in attached Exhibit 9A.[6]

79.     **Mr. Shen** (421.6 hours):  In this phase, I led all aspects of summary judgment and *Daubert* briefing and coordinated with co-counsel and the government.  Kellogg Hansen prepared a motion and 225 exhibits for summary judgment and opposed Humana's motion for summary judgment.  The firm further prepared two *Daubert* motions and opposed a combined

---

[6] Exhibit 9B shows Kellogg Hansen's lodestar for Phase 4 at 2024 rates.

motion to exclude two of Relator's experts.  During this phase I also continued to coordinate with the government.

80.    **Mr. Webster** (140.9 hours):  In this phase, Mr. Webster reviewed and edited all summary judgment and *Daubert* briefing.  Mr. Webster also coordinated with co-counsel and the government throughout this phase.

81.    **Ms. Cooper** (490 hours):  During this phase, Ms. Cooper conducted research and analysis of legal issues relating to the parties' summary judgment and *Daubert* briefing and assisted with drafting the summary judgment, *Daubert*, and other discovery-related briefs.  Ms. Cooper also engaged in meet-and-confer discussions with Humana.

82.    **Mr. Schultz** (184.8 hours):  In this phase, Mr. Schultz conducted research and analysis of legal issues including relating to the parties' summary judgment and *Daubert* briefs, and assisted with drafting the summary judgment, *Daubert*, and other discovery related briefs.

83.    **Ms. Jones** (392.1 hours):  During this phase, Ms. Jones assisted in drafting each of Relator's summary judgment briefs.  Ms. Jones also assisted in drafting the *Daubert* briefs.

84.    **Ms. Briggs** (11.9 hours):  In this phase, Ms. Briggs reviewed and prepared the hundreds of exhibits to Relator's motion for summary judgment motion, and finalized those exhibits for filing and service.

85.    **Mr. Moore** (26 hours):  During this phase, Mr. Moore conducted document review in support of the motions for summary judgment and *Daubert* motions.

86.    **Ms. MacDonald** (266 hours):  Ms. MacDonald coordinated the paralegal and support team work associated with Relator's briefing during this phase and assisted in the review and cite-check of all filings.  Ms. MacDonald also assisted in preparing exhibits for each filing.

87. **Ms. Murphy** (4.1 hours): In this phase, Ms. Murphy coordinated with paralegals regarding summary judgment briefing and assisted in the review and cite-check of Relator's summary judgment motion.

88. **Mr. Burke** (132.9 hours): In this phase, Mr. Burke reviewed and cite-checked Relator's summary judgment, *Daubert*, and other discovery related filings.

89. **Ms. Sommerfield** (16.2 hours): During this phase, Ms. Sommerfield assisted with the review and cite-check of Relator's *Daubert* motions.

C. **Phase 5: October 29, 2020 (day after summary judgment briefing was complete) through June 15, 2023 (date settlement in principle was reached).**

90. Kellogg Hansen's lodestar for Phase 5 was $9,853,786.00 as detailed in attached Exhibit 10A.[7]

91. **Mr. Shen** (1,584.8 hours): In this phase, I led all aspects of Relator's briefing of pre-trial motions, including motions in limine, residual discovery-related issues, and the trial brief. I also prepared pre-trial witness and exhibit disclosures, prepared deposition designations, prepared objections to Humana's pre-trial witness and exhibit disclosures, planned trial strategy, prepared fact and expert trial witnesses, drafted trial witness examination and cross-examination outlines and other presentations for trial, and engaged in settlement efforts. All told in this phase, under my supervision, Kellogg Hansen prepared 12 motions in limine, opposed 9 motions in limine, filed a trial brief, briefed numerous additional discovery- and trial-related motions, and took or defended an additional four depositions – Kellogg Hansen attorneys defended 2 expert depositions spanning over 15 hours, and took 2 fact depositions, spanning over 11 hours.

---

[7] Exhibit 10B shows Kellogg Hansen's lodestar for Phase 5 at 2024 rates.

Kellogg Hansen further participated in three formal mediation conferences during this phase. Kellogg Hansen was prepared to bring this case to trial when the case settled.

92.  **Mr. Webster** (790.8 hours):  In this phase, Mr. Webster reviewed and edited pre-trial motions, including motions in limine, motions relating to residual discovery-related issues, and the trial brief.  He also prepared mediation statements, participated in mediation conferences, planned trial strategy, prepared expert trial witnesses, drafted trial witness examination outlines and other presentations for trial, and engaged in the parties' settlement efforts.  Mr. Webster prepared expert witness and defended 2 expert depositions.  Mr. Webster coordinated with co-counsel and the government throughout this phase.

93.  **Mr. Schultz** (720.5 hours):  In this phase, Mr. Schultz assisted in drafting pre-trial motions, including motions in limine.  He also prepared trial and 1006 exhibit disclosures and deposition designations, prepared objections to Humana's exhibit disclosures and deposition designations, prepared for and deposed a newly-disclosed fact witness, planned trial strategy and worked on the order of proof, prepared fact and expert trial witnesses, and drafted trial witness examination outlines and other presentations for trial.  Mr. Schultz engaged in meet-and-confer discussions with Humana's counsel, and coordinated on these tasks with co-counsel.

94.  **Ms. Cooper** (800 hours):  In this phase, Ms. Cooper assisted in various trial preparation tasks including drafting and revising voir dire questions and jury instructions, participated in multiple meet-and-confer discussions with Humana's counsel regarding pre-trial issues, and drafted pre-trial filings including motions in limine.  She also prepared for and conducted a deposition of a newly-disclosed fact witness and drafted trial witness examination outlines.  Ms. Cooper further assisted in preparing other pre-trial disclosures.

95. **Ms. Jones** (1,024.9 hours): In this phase, Ms. Jones assisted with drafting pre-trial filings including motions in limine. Ms. Jones also worked extensively on the exhibit list and other pre-trial disclosures, assisted with deposition designations, prepared trial witness examination outlines, and prepared witnesses for trial testimony.

96. **Ms. Smith** (172.7 hours): In this phase, Ms. Smith assisted with drafting pre-trial filings including motions in limine, trial exhibit objections, deposition designations, and trial witness examination outlines.

97. **Ms. Schechinger** (754.6 hours): In this phase, Ms. Schechinger assisted with preparing trial witness examination outlines, created digests of depositions, conducted legal research, assisted with jury instructions, and worked on the briefing of the motions in limine and the pre-trial brief.

98. **Ms. MacDonald** (1,296.8 hours): In this phase, Ms. MacDonald coordinated the support staff work on all pre-trial filings as well as assisted with the review and cite-check of the same. She also undertook other tasks related to pre-trial preparation including overseeing organization of trial exhibits and preparing them for use at trial.

99. **Mr. Burke** (74.6 hours): Mr. Burke assisted with preparing and cite-checking pre-trial filings. He also helped with the preparation and review of exhibits to be used at trial and ensuring consistent quality was maintained across all exhibits.

100. **Ms. Sella** (94.40 hours): In this phase, Ms. Sella assisted in reviewing, cite-checking, and finalizing motions in limine and other pre-trial filings. She also coordinated and aided in the preparation and compilation of exhibits to be used at trial.

101. **Ms. Lukeman** (694.5 hours): In this phase, Ms. Lukeman reviewed and cite-checked all pre-trial motions. She prepared documents for depositions and reviewed and entered

errata for the same. She also assisted in the preparation and review of exhibits to be used at trial and assisted in preparing deposition designations, counter designations, and objections to the same.

102. **Ms. Briggs** (394.6 hours): Ms. Briggs assisted in the identification and preparation of trial exhibits and coordinated the electronic stamping of the same. She also reviewed and prepared production materials, and assisted in the preparation of pre-trial disclosures.

103. **Ms. Murphy** (46.3 hours): In this phase, Ms. Murphy oversaw the coordination of litigation support for trial preparation, including working with outside vendors. She further arranged trial support and graphics and assisted with trial exhibits, motions in limine, and deposition designations.

104. **Ms. Sommerfield** (231.4 hours): Ms. Sommerfield assisted with preparation of pre-trial disclosures and the exhibit list. She also reviewed and cite-checked numerous pre-trial filings

105. **Mr. Moore** (467.4 hours)**:** In this phase, Mr. Moore assisted with trial exhibit identification and preparation of pre-trial exhibits. He also assisted in the preparation of depositions and trial witness outlines.

106. **Mr. Birmingham** (35.5 hours): In this phase, Mr. Birmingham assisted in preparing deposition designations, counter designations, and objections to the same. Additionally, he assisted with the review of trial exhibit lists.

107. **Mr. Brennan** (37.0 hours): In this phase, Mr. Brennan assisted with organizing trial logistics with a focus on preparing a working IT setup at the trial office.

108. **Mr. Marini** (16.80 hours)**:** In this phase, Mr. Marini assisted with preparing and quality checking exhibits to be used at trial.

109. **Mr**. **Tapkas** (16.0 hours): In this phase, Mr. Tapkas assisted with the logistics of document processing related to the preparation of trial exhibits.

> **D.** **Phase 6: June 16, 2023 (day after settlement in principle was reached) through November 30, 2024.**

110. Kellogg Hansen's lodestar for Phase 6 was $1,175,197.00, as detailed in attached Exhibit 11A.[8]

111. **Mr. Shen** (229.9 hours): In this phase, I led all aspects of the negotiation of the settlement agreement and interactions with the government, Humana and Judge Lindsay regarding the settlement. In addition, I engaged in meet-and-confer discussions concerning Relator's fees and expenses incurred in prosecuting this action, participated in a formal mediation before Judge Lindsay, and prepared a fee application.

112. **Mr. Webster** (191.4 hours): In this phase, Mr. Webster aided in negotiating the settlement agreement, engaged in discussions with the government and Judge Lindsay regarding the settlement, participated in a formal mediation before Judge Lindsay on Relator's fees and expenses, and worked on the fee application.

113. **Ms. Cooper** (6 hours): In this phase Ms. Cooper worked on aspects of the fee application.

114. **Mr. Schultz** (1.5 hours): In this phase Mr. Schultz worked on aspects of the fee application.

---

[8] Exhibit 11B shows Kellogg Hansen's lodestar for Phase 6 at 2024 rates.

115.   **Ms. Jones** (64 hours):  In this phase Ms. Jones worked on aspects of the fee application.

116.   **Ms. Schechinger** (80.80 hours): In this phase Ms. Schechinger worked on aspects of the fee application.

117.   **Ms. Briggs** (2.3 hours):  In this phase Ms. Briggs worked on aspects of the fee application.

118.   **Mr. Moore** (118.6 hours):  In this phase Mr. Moore worked on aspects of the fee application.

119.   **Mr. Davies** (1.2 hours):  In this phase Mr. Davies worked on aspects of the fee application.

120.   **Mr. Burke** (0.2 hours):  In this phase, Mr. Burke provided paralegal support in connection with the fee petition.

121.   **Ms. Harger** (3.5 hours):  In this phase, Ms. Harger provided paralegal support in connection with the fee petition.

122.   **Ms. Lukeman** (389.2 hours):  In this phase, Ms. Lukeman provided paralegal support in connection with the fee petition.

123.   **Ms. Sommerfield** (11.9 hours):  In this phase, Ms. Sommerfield provided paralegal support in connection with the fee petition.

124.   **Ms. Macdonald** (64.9 hours):  In this phase, Ms. Macdonald provided paralegal support in connection with the fee petition and settlement agreement.

125.   **Ms. Murphy** (0.3 hours):  In this phase, Ms. Murphy provided paralegal support in connection with the fee petition.

## V.  KELLOGG HANSEN'S WORK RELATING TO THE FEE PETITION

126.  Exhibit 12A summarizes the hours that the firm spent through November 30, 2024 negotiating fees with Humana, preparing for and participating in a mediation before the Judge Lindsay on November 15, 2024, and putting together the fee petition and supporting exhibits (including compiling and redacting billing records).[9]

## VI.  KELLOGG HANSEN'S COSTS AND EXPENSES

127.  After write-offs, my firm has expended a total of $2,044,043.15 in unreimbursed costs and expenses in connection with the prosecution of this litigation.  Kellogg Hansen incurred all of these expenses in accordance with the firm's customary practices for fee-paying clients.

128.  The direct expenses are explained in the paragraphs below and the referenced exhibits.  Exhibit 13 summarizes Kellogg Hansen's direct out-of-pocket direct expenses by category.  These expenses were incurred on behalf of Relator by my firm out-of-pocket, have not been reimbursed, and are listed as actual costs with no administrative overhead applied.  The expenses incurred in this action are reflected in the books and records of my firm.  These books and records are prepared from expense vouchers, receipts, check records, and other source materials and represent an accurate recordation of the expenses incurred.

129.  Exhibit 14 details the expert witness fees paid by Kellogg Hansen to Relator's expert Margaret Sparks, totaling $137,840.22.  Ms. Sparks submitted a 75-page expert report and appendices, a 13-page rebuttal report, and a one-page supplemental report.  She was deposed during expert discovery.  Ms. Sparks also worked with Relator's counsel in preparation for her testimony at trial.  Exhibit 14A is Ms. Sparks's invoices rendered to Kellogg Hansen, including

---

[9] Exhibit 12B shows Kellogg Hansen's hours for the fee mediation and petition at 2024 rates.

detailed contemporaneous time records.  The publicly filed version of these invoices redacts confidential information.  Unredacted versions will be submitted *in camera* to the Court.

130.    Exhibit 15 details the expert witness fees paid by Kellogg Hansen to Relator's expert Philip Ellis, totaling $96,321.09.  Mr. Ellis submitted a 43-page expert report and appendices, and a six-page declaration.  He was deposed during expert discovery.  Mr. Ellis also worked with Relator's counsel in preparation for his testimony at trial.  Exhibit 15A consist of Mr. Ellis's invoices to Kellogg Hansen, including detailed contemporaneous time records.  The publicly filed version of these invoices redacts privileged information and confidential information.  Unredacted versions will be submitted *in camera* to the Court.

131.    The Lisa Cameron Declaration details the consulting fees paid by Kellogg Hansen to the Brattle Group, a total of $1,118,763.75.  The Brattle Group supported the work conducted by all three of Relator's experts:  Ms. Sparks, Mr. Ellis, and Richard Foster.  This work, included, for instance the construction of a highly complex model to re-adjudicate Medicare Claims to determine how much the government overpaid Humana as a result of its alleged conduct.  Brattle further assisted in summarizing and analyzing information pertaining to Humana's bids, budgets, and budgets at bids found in hundreds of highly complex spreadsheets.  Brattle further assisted in the quantitative model presented in Mr. Foster's report comparing the drug costs covered by Humana for the Walmart Plan versus the drug costs covered by other insurance companies for other Part D Plans.  In addition, the Brattle Group assisted in preparing summary exhibits and demonstratives for trial.  Brattle's invoices rendered to Kellogg Hansen, including detailed contemporaneous time records, are attached to the Cameron Declaration as Cameron Exhibit 2. The publicly filed version of these invoices redacts privileged information and confidential information.  Unredacted versions will be submitted *in camera* to the Court.

132.    Exhibits 16-30 summarize each of the other categories of costs incurred by Kellogg Hansen, including travel, hotel, meals, trial office, court reporter, legal research, consultants, and document vendor costs.  Humana has informed Relator's counsel that it is not challenging these non-expert related costs, and accordingly we have not attached the actual receipts.

133.    I have carefully reviewed the time and expenses that comprise Kellogg Hansen's reported lodestar and out-of-pocket expenses.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2024.

_____

Andrew C. Shen