## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
### *Electronically Filed*

UNITED STATES OF AMERICA *ex rel.*
STEVEN SCOTT,

        *Plaintiff,*

   v.

HUMANA INC.,

        *Defendant.*

Civil Action No.  3:18-cv-00061-GNS-CHL

## DEFENDANT HUMANA INC.'S OBJECTION TO THE REPORT AND RECOMMENDATION

Michael P. Abate
Jeremy G. Lister-Perlman
KAPLAN JOHNSON ABATE & BIRD LLP
710 W.  Main St., 4th Floor
Louisville, KY 40202
(502) 416-1630
mabate@kaplanjohnsonlaw.com
jlisterperlman@kaplanjohnsonlaw.com

K. Lee Blalack, II*
Amanda Santella*
William T. Buffaloe*
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
202-383-5300
lblalack@omm.com
asantella@omm.com
wbuffaloe@omm.com

*Admitted pro hac vice

*Counsel for Defendant, Humana Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 3

STANDARD OF REVIEW .......................................................................................... 8

ARGUMENT ............................................................................................................... 8

    I.   Relator failed to conduct a good-faith search for adequate local counsel. ...................... 11

    II.  Relator failed to justify out-of-town specialist rates on an attorney-by-attorney basis. ... 16

    III. Humana's rate proposal is reasonable ......................................................................... 20

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*ACLU of Georgia v. Barnes*,
    168 F.3d 423 (11th Cir. 1999) ........................................................................ 10, 17

*Adcock-Ladd v. Secretary of Treasury*,
    227 F.3d 343 (6th Cir. 2000) ............................................................................. 1, 9

*Anderson v. Wilson*,
    357 F. Supp. 2d 991 (E.D. Ky. 2005) ...................................................... 17, 18, 20

*Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*,
    2024 WL 1141495 (N.D. Ohio Mar. 15, 2024) ..................................................... 11

*Bio-Med. Applications of Kentucky, Inc. v. Coal Exclusive Co.*,
    2011 WL 3568249 (E.D. Ky. Aug. 15, 2011) ............................................ 11, 14, 16

*Bourke v. Beshear*,
    2016 WL 164626 (W.D. Ky. Jan. 13, 2016) ....................................................... 23

*Cernelle v. Graminex, L.L.C.*, 539 F. Supp. 3d 728 (E.D. Mich. 2021),
    *aff'd* 2022 WL 2759867 (6th Cir. July 14, 2022) ......................................... 9, 16, 21

*Clark v. Iris Transp., Inc.*,
    2020 WL 2781601 (E.D. Ky. 27, 2020) ................................................................ 9

*Communities for Equity v. Michigan HSAA*,
    2008 WL 906031 (W.D. Mich. 2008) .................................................................. 14

*Deal ex rel Deal v. Hamilton County Dep't of Educ.*,
    2006 WL 2854463 (E.D. Tenn. Aug. 1, 2006),
    *aff'd*, 258 Fed. Appx 863 (6th Cir. 2008) ................................................. 12, 14, 15

*Flournoy v. Marshall*,
    842 F.2d 875 (6th Cir. 1988) .............................................................................. 8

*Geier v. Sundquist*,
    372 F.3d 784 (6th Cir. 2004) .............................................................................. 8

*Gonter v. Hunt Valve Co.*,
    510 F.3d 610 (6th Cir. 2007) ........................................................................... 8, 9

*Grier v. Goetz*,
    2009 WL 10729589 (M.D. Tenn. Aug. 13, 2009) ................................................ 15

*Guckenberger v. Boston University*,
    8 F. Supp. 2d 91 (D. Mass. 1998) ............................................................. 13, 14, 15

*Hadix v. Johnson*,
    65 F.3d 532 (6th Cir. 1995) ......................................................................... passim

*Harmon v. McGinnis, Inc.*,
    263 F. App'x 465 (6th Cir. 2008) ........................................................................ 21

*Honorable Ord. of Ky. Colonels, Inc. v. Ky. Colonels Int'l*,
    2023 WL 7545041 (W.D. Ky. Nov. 13, 2023) .................................................. 5, 22

*Honorable Ord. of Ky. Colonels, Inc. v. Ky. Colonels Int'l*,
    2024 WL 3974768 (W.D. Ky. Aug. 28, 2024) ...................................................... 5

*Imwalle v. Reliance Med. Prods., Inc.*,
    515 F.3d 531 (6th Cir. 2008) .............................................................................. 7

*Linneman v. Vita-Mix Corporation*,
    970 F.3d 621 (6th Cir. 2020) ........................................................................... 1, 8

*Maxwell's Pic-Pac, Inc. v. Dehner*,
    2013 WL 1003692 (W.D. Ky. Mar. 13, 2013) ..................................................... 21

*McClain v. Lufkin Indus., Inc.*,
    649 F.3d 374 (5th Cir. 2011) ............................................................................ 21

*Messing v. Provident Life & Accident Ins. Co.*,
    2024 WL 3950239 (6th Cir. Aug. 27, 2024) ........................................................ 9

*Miller v. Caudill*,
    936 F.3d 442 (6th Cir. 2019) .............................................................................. 9

*Miller v. Davis*,
    267 F. Supp. 3d 961 (E.D. Ky. 2017) .................................................................. 9

*O'Grady v. Mohawk Finishing Prods., Inc.*,
    1999 WL 30988 (N.D.N.Y. Jan. 15, 1999) .................................................... 13, 14

*Polymeric Res. Corp. v. Pounds of Plastic, LLC*,
    2022 WL 3568182 (E.D. Ky. Aug. 18, 2022) ...................................................... 18

*Reed v. Rhodes*,
    179 F.3d 453 (6th Cir. 1999) ............................................................................ 20

*Rogers v. Johnson*,
    2024 WL 3311084 (N.D. Fla. June 10, 2024) ................................................ 12, 14

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
  707 F. Supp. 2d 737 (N.D. Ohio 2010) .................................................................... 18

*Scheffler v. Lee*,
  2020 WL 2174449 (W.D. Ky. May 5, 2020) ................................................ 12, 14, 16

*Schnatter v. 247 Grp.*,
  2024 WL 3165319 (W.D. Ky. June 25, 2024) ............................................................ 9

*Sigley v. Kuhn*,
  205 F.3d 1341 (6th Cir. 2000) ..................................................................... 11, 16

*Simmons v. New York City Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009) ............................................................................. 20

*Smith v. Serv. Master Corp.*,
  592 F. App'x 363 (6th Cir. 2014) ..................................................................... 16

*United States ex rel. Rille v. Hewlett Packard Co.*,
  2011 WL 4625646 (E.D. Ark. Oct. 5, 2011) ................................................... 13, 14

*United States ex rel. Trakhter v. Provider Servs., Inc.*,
  2019 WL 2422422 (S.D. Ohio June 10, 2019) ...................................... 12, 13, 14

*Ward v. Borders*,
  2024 WL 4242059 (W.D. Ky. Sept. 19, 2024) ............................................................ 5

**Statutes**

28 U.S.C. § 636(b)(1)(B) ............................................................................................ 8

28 U.S.C. § 636(b)(1)(C) ............................................................................................ 8

31 U.S.C. § 3730(d)(2) ............................................................................................ 8

## INTRODUCTION

Defendant Humana Inc., respectfully objects to the magistrate judge's Report and Recommendation ("R&R") (R. 761), which concludes that Relator Steven Scott's counsel should be entitled to attorneys' fees of $27,934,664.40—on top of the $10.44 million contingent fee that counsel already received from their client's recovery. Specifically, Humana objects to the hourly rates that the Magistrate Judge recommends for Relator's counsel, which ranged from $925 to $1,800 per hour for time billed by partners; $850 to $1,130 per hour for time billed by Of Counsel; $600 to $1,095 per hour for time billed by associates; $530 to $590 per hour for time billed by staff attorneys; $250 to $545 for time billed per hour by paralegals; and $175 to $295 per hour for time billed by support staff. *See* R. 761, PageID.75581-82. These rates are shockingly high for this District and are far more than "'what is necessary to encourage competent lawyers within the relevant community to undertake legal representation,'" *Linneman v. Vita-Mix Corporation*, 970 F.3d 621, 630 (6th Cir. 2020) (citation omitted); indeed, they dwarf anything ever before awarded in this District. Humana also objects to the recommendation that attorneys who billed significant time to this matter as associates should be compensated at partner rates for all of their work, simply because they had been promoted to partner by 2023, when the parties settled. *See* R. 761, PageID.75550.

The result of this rate inflation is both illogical and unjust. The Sixth Circuit has long held that "when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the 'relevant community' for fee purposes to constitute the legal community within the court's territorial jurisdiction." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). Relator's counsel understood that risk when they undertook this representation—a risk they already mitigated by negotiating such a

handsome contingency fee on top of whatever fee award they were able to secure in this case. Yet the R&R rewards their gamble by proposing Washington, D.C. and San Francisco rates for every timekeeper who touched the matter, regardless of their prior expertise in this kind of litigation.

That conclusion rests upon two fundamental analytical errors, which together add nearly $15 million to the already-generous fee award proposed by Humana. First, the R&R improperly concluded that Relator made a good-faith effort to hire Kentucky counsel even though Relator called only *one* attorney in this state before declaring that no firm here was qualified or willing to handle this litigation. That minimal effort comes nowhere close to the kind of showing required to justify "out-of-town specialist" rates. This court should not reward such a token "search" premised on preconceived bias against Kentucky attorneys.

Second, the R&R compounded this error by applying "out-of-town specialist" rates on a firm-by-firm, rather than attorney-by-attorney, basis. The result is that it recommends rates for junior attorneys and non-attorney staff that exceed what senior partners with decades of experience could command in this market. For example, junior associates with no discernible FCA experience prior to this case—and little litigation experience at all—were awarded rates approaching $1,000 per hour to sit next to more senior attorneys at depositions. And staff attorneys and paralegals were awarded rates as high as $590 and $545, respectively, without any showing that their work required specialized expertise unavailable in this District.

To be sure, Relator's counsel obtained a sizeable settlement for the United States. But they failed to convince the Government to join in these allegations of fraud; obtained only a small fraction of the amount Relator actually sought; and, as the R&R reaffirms, counsel repeatedly advanced meritless privilege claims to hide crucial information from Humana in

discovery—misconduct that was the subject of a motion to strike their key expert just before the case settled. When viewed in the totality of these circumstances, Relator's counsel are simply not entitled to a fee award that would compensate them at hourly rates that are multiples of the highest rates ever awarded in this District.

Instead, this Court should adopt Humana's proposed rate structure. That proposal would compensate the most experienced FCA counsel at rates that exceed anything ever awarded in this District, putting them on par with Humana's FCA fee expert, who regularly practices complex FCA cases within the Sixth Circuit as both relator and defense counsel. And that proposal would compensate Relator's other timekeepers—who Relator has not shown to be "out-of-town specialists"—at generous rates for the Kentucky market.

When crediting counsel for 90% of the hours billed, as the R&R recommends,[1] Humana's proposal would result in a fee award of $14,030,718.48—approximately half of what the Magistrate Judge recommended. Even without their extra contingency payment, that would make the fee award a record-shattering one in this District, whether measured by total fees or hourly rates. That is more than enough to "reasonably" compensate counsel for their efforts in obtaining a settlement in a declined case.

## FACTUAL BACKGROUND

In 2023, after years of active litigation, the parties agreed to the monetary terms of a settlement of this case. That settlement came just days after Humana filed a motion for significant sanctions against Relator, including the exclusion of his key expert—the former Chief Actuary for CMS—after Relator concealed and then attempted to redact notes showing that CMS

---

[1] Although Humana also disagrees with the R&R's decision not to reduce the billed hours further, it limits this objection to issues related to the recommended rates.

appeared to agree with Humana's argument that the alleged misconduct in this case actually *saved* the government money. R. 702. And while the $90 million monetary settlement was substantial, it was only a small fraction of the billions of dollars in treble damages, and *trillions* of dollars in statutory penalties, that Relator sought in this case.

Relator filed a fee Petition seeking reimbursement of $38,326,163.00 in fees and $2,765,969.21 in expenses and costs for a total award of $41,092,132.21. R&R, R. 761, PageID.75502. Relator sought reimbursement for all timekeepers at their California and Washington, D.C. rates as they existed in 2025, regardless of the rates in effect at the time the hours were billed or whether the attorney who billed the time had been promoted from associate to partner at some point before the Petition was filed.

Humana opposed that request, arguing that Relator should be entitled to no more than $9,475,984.56 in attorneys' fees, plus another $1,555,973.83 in expert fees and $756,723.25 in other expenses, for a total award of $11,788,681.85. *See* Fee Opp., R. 752, PageID.73640-41. To reach that more reasonable figure, Humana proposed that attorney rates be capped as of 2023, when the parties agreed to settle, because 97.5% of all work performed by Relator's counsel had been billed by that time (*id.*, PageID.73647, 73659-63), yet Relator's counsel's continued to raise their rates substantially, and promote associates to partners, in the two years since.

Humana also noted that Relator had not made the showing required to deviate from the default "community-market rule" because he failed to conduct a good-faith search to find Kentucky counsel, opting instead to call a single attorney in this state and perform cursory Internet searches. *Id.* at 9-13. Humana offered declarations from Louisville-based attorneys who identified Kentucky firms skilled in complex litigation, including FCA matters, as well as an

FCA expert in Cincinnati, licensed in Kentucky, who pointed out the number of capable FCA firms capable of handling this matter at far lower rates than those sought by Relator. *Id.*

Ultimately, Humana proposed a different rate structure that was more rationally tied to the market where this case was litigated, and where Humana and Relator reside: Kentucky. For the most senior attorneys with the most FCA experience, Humana proposed above-market rates that parallelled those charged by Humana's FCA fee expert, who has represented both defendants and relators in complex FCA cases. But for more junior attorneys and non-attorney timekeepers who Relator did not prove to be "specialists" in their own right, Humana proposed that they be compensated at rates set forth in a PriceWaterhouseCoopers rate study("PwC Study") for attorneys at firms in Kentucky and Tennessee that has repeatedly been cited in this District as a "reasonable" benchmark. *See, e.g.*, *Ward v. Borders*, 2024 WL 4242059 (W.D. Ky. Sept. 19, 2024); *Honorable Ord. of Ky. Colonels, Inc. v. Ky. Colonels Int'l*, 2024 WL 3974768, at *1 (W.D. Ky. Aug. 28, 2024); *Honorable Ord. of Ky. Colonels, Inc. v. Ky. Colonels Int'l*, 2023 WL 7545041 (W.D. Ky. Nov. 13, 2023).

Humana further challenged the number of hours billed by Relator's counsel, targeting several categories of improper billings: (1) time spent on fruitless efforts to get the United States to intervene in this case; (2) time spent engaged in sanctionable discovery misconduct; (3) time spent on failed litigation efforts, including drafting 24,000 requests for admission that Humana was not required to answer, and unsuccessfully trying to exclude Humana's experts; (4) block-billed, duplicative, or vague entries; (5) and performance of routine associate- or paralegal-level work by partners. R. 752, at 28-34.

The R&R began by acknowledging the community-market rule, and that "the Sixth Circuit has even cautioned out-of-town lawyers about their fee expectations." R. 761,

PageID.75510. The R&R further found that, "[c]ontrary to Relator's assertion, there is no automatic exemption from this rule for FCA cases." *Id.* And, the R&R recognized that "courts have required parties to make a good faith effort to obtain local counsel before turning to out-of-town specialists." *Id.* at 75518 (collecting authorities finding that parties failed to make good-faith efforts when, among other things, they failed to actually try to secure local counsel before retaining out-of-town attorneys).

Nevertheless, the R&R proposed awarding California- and Washington-D.C. based rates for all time spent on the matter by Relator's attorneys. This recommendation rested on the conclusion that "Relator did make a good faith effort to search for local counsel…before hiring Kellogg Hansen." *Id.* at 75517. The Magistrate Judge was "unconcerned that Relator did not make phone calls seeking representation by local lawyers" given "the prevalence of information available on the internet" about law firms. *Id.* at 75518. And the R&R wholly discounted the entire complex litigation bar in Kentucky as potential trial counsel based on Relator's musing that "firms that advertise a defense-side FCA practice are *typically* unwilling to jeopardize current or future defense-side engagements to undertake the substantial risk associated with representing a relator in a non-intervened case." *Id.* at 75517 (emphasis added) (quoting R. 754-33 at ¶ 16). In other words, the R&R found it reasonable for Relator's counsel to rely on their own preconceived biases about Kentucky attorneys and the kinds of firms "necessary" to handle FCA litigation. *See id.* at 75514 (Because Relator's counsel "'know most of the law firms that represent relators in complex FCA cases'...they *already knew* there were no such firms in Kentucky" (emphasis added) (quoting R. 748-61, at ¶ 9)).

The R&R did accept Humana's proposal to generally cap rates at 2023 levels, however, given that nearly all of the work in this case was done prior to that time. R. 761, PageID.75549.

But it proposed to compensate counsel at their increased 2024 and 2025 rates for time billed during those years. *Id.* at 75550.

The R&R also proposed rejecting Humana's argument that attorneys should be limited to associate-level rates for time they billed as associates, even if they were promoted to partner before this case settled. *Id.* This resulted in thousands of hours of attorney time being billed at over $1,000 per hour for associate-level work, which the R&R called "minor discrepancies [that] are simply part of the idea of compensating for delay by awarding current rates." *Id.*

Finally, the R&R largely rejected Humana's proposed reductions to the hours requested, with one key exception: it agreed that Relator should not collect fees related to repeated privilege assertions concerning its expert, Richard Foster, given "the lack of good faith in Relator repeatedly making the same losing argument, wasting both the Court's time and Humana's." R. 761, PageID.75562. It proposed discounting 1,096.45 hours related to those filings, for a total of $1,087,974.00 in unnecessary fees. Otherwise, the R&R criticized Humana for making detailed arguments about which time entries should be discounted and why (*see, e.g.*, R. 761, PageID.75507, 75553, 75570)—a showing that courts generally *require. See, e.g.*, *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) ("Once the prevailing party provides such a record, however, 'conclusory allegations that the award was excessive and that...counsel employed poor billing judgment...do not suffice to establish that there was error...'" (citation omitted)).

The court did conclude that a 10% across-the-board hours discount "is appropriate" to account "for duplication of efforts." R. 761, PageID.75579. In the end, the R&R recommended that Relator's counsel be compensated a total of $27,934,664.40 in fees and $2,736,833.21 in costs and expenses for a total of $30,671,497.61. R. 761, PageID.75586.

## STANDARD OF REVIEW

This Court referred Relator's fee petition to the Magistrate Judge under 28 U.S.C.

§ 636(b)(1)(B), which governs Reports and Recommendations concerning dispositive matters

and requests for post-trial relief. *See* R. 755. When a timely objection is filed to an R&R issued

pursuant to § 636(b)(1)(B), "the 'de novo' standard must be used to review the magistrate's

findings." *Flournoy v. Marshall*, 842 F.2d 875, 875 (6th Cir. 1988) (collecting authorities); *see*

*also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which

objection is made.").

## ARGUMENT

Relator is entitled to "reasonable attorneys' fees and costs"—but no more. 31 U.S.C.

§ 3730(d)(2). Courts determine the reasonable attorneys' fees through the lodestar method,

multiplying the reasonable hourly rate by the number of hours reasonably spent on the litigation.

*See Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Relator bears the burden of

establishing that the requested hours and rates are reasonable. *See Linneman v. Vita-Mix*

*Corporation*, 970 F.3d 621, 630 (6th Cir. 2020).

The default presumption is that courts will apply the "community-market rule." As the

Sixth Circuit has explained, in fee-shifting cases "the billing rate 'should not exceed what is

necessary to encourage competent lawyers within the relevant community to undertake legal

representation.'" *Id.* at 630 (*quoting Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)). "The

appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is

rather the market rate in the venue sufficient to encourage competent representation." *Gonter v.*

*Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). And the Sixth Circuit has consistently held

that the party seeking fees has the burden of "showing that his attorneys charged reasonable rates

based on the prevailing market rate in the relevant community." *Messing v. Provident Life & Accident Ins. Co.*, 2024 WL 3950239, at *4 (6th Cir. Aug. 27, 2024); *Linneman*, 970 F.3d at 630 (same).

"The plaintiff, of course, is entitled to hire whomever it chooses to represent it. But the defendants should not be saddled with economic consequences of that choice beyond a rule of reason." *Cernelle v. Graminex, L.L.C.*, 539 F. Supp. 3d 728, 740 (E.D. Mich. 2021), *aff'd* 2022 WL 2759867 (6th Cir. July 14, 2022). Thus, absent unusual circumstances, out-of-town lawyers' rates are adjusted to reflect the local market: "when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the 'relevant community' for fee purposes to constitute the legal community within the court's territorial jurisdiction." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000); *see also Miller v. Davis*, 267 F. Supp. 3d 961, 995 (E.D. Ky. 2017), *aff'd sub nom. Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019) (same). Hence, "a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate." *Adcock-Ladd*, 227 F.3d at 350 (citation omitted); *see also Gonter*, 510 F.3d at 618 (reducing out-of-town counsel's rates to match local market); *Hadix*, 65 F.3d at 536 (same); *Schnatter v. 247 Grp.*, 2024 WL 3165319 (W.D. Ky. June 25, 2024) (same); *Clark v. Iris Transp., Inc.*, 2020 WL 2781601 (E.D. Ky. 27, 2020) (same), *R&R adopted*, 2020 WL 2789910 (E.D. Ky. Mar. 19, 2020).

To be sure, courts may deviate from the community-market rule in circumstances where a plaintiff shows that "hiring the out-of-town specialist was reasonable in the first instance," and "the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree

of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). However, *Hadix*, on which the R&R primarily relied, shows that this is a narrow exception to the default community-market rule. Indeed, in that case the Sixth Circuit *rejected* the use of out-of-town rates, reiterating that "judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Id.*

*Hadix* found that "the fee petitioners failed to carry the initial burden of showing that it was necessary to resort to an out-of-town specialist" because "[t]he record is devoid of any suggestion that local counsel made any attempt to investigate the availability of competent counsel in the local market." *Id.* Petitioners could not "justify their choice of [counsel] by pointing to her nationally recognized expertise," as the law "does not guarantee…plaintiffs the best counsel in the country; it guarantees them competent counsel." *Id.* "Proof that [counsel] has a national reputation for expertise in this kind of litigation does not constitute proof that her expertise was necessary in this phase of the present litigation." *Id.*; *see also ACLU of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) ("A prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate."). In the end, the Court "simply [could] not believe that competent counsel capable of handling complex litigation would not have been available locally at a significantly lower rate." *Hadix*, 65 F.3d at 535.

The R&R departs from these well-established principles to award California and Washington D.C. rates for work performed in the Western District of Kentucky, based on the purported complexity of the litigation and the fact that Relator's attorneys charge those rates in their home markets. The Court excused Relator's clear failure to conduct a real search for local

counsel—a failure based on Relator's inaccurate, and offensive, presumption that no Kentucky counsel could handle a case of this complexity. Moreover, the Court awarded above-market rates to entire firms without any real analysis of whether the skill and experience of specific attorneys, or non-attorney timekeepers, would justify a departure from community-market rates. Those portions of the R&R should be overruled.

## I.    Relator failed to conduct a good-faith search for adequate local counsel.

A court can award hourly rates that exceed those customarily charged in the jurisdiction only after "the prevailing party demonstrates that it is necessary to retain outside, non-local counsel after a good-faith effort to locate local counsel fails." *Sigley v. Kuhn*, 205 F.3d 1341 (6th Cir. 2000). In the absence of this good-faith effort, the prevailing party is limited to local rates. *Id.*; *see also Hadix*, 65 F.3d at 535. *Post-hoc* rationalization based on the complexity of the case is no substitute for actually trying to hire adequate counsel in the first instance.

Rather, courts have consistently held that a party must actually try and fail to hire local counsel before they can obtain out-of-market rates for their attorneys. Indeed, the failure "to investigate the availability of competent counsel" in the local market has been deemed "fatal to [a movant]'s petition for out-of-town rates." *Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, 2024 WL 1141495, at *3 (N.D. Ohio Mar. 15, 2024); *see also Hadix*, 65 F.3d at 535 ("[F]ee petitioners failed to carry the initial burden of showing that it was necessary to resort to an out-of-town specialist. The record is devoid of any suggestion that local counsel made any attempt to investigate the availability of competent counsel in the local market."); *Asamoah v. Amazon.com Servs., Inc.*, 2021 WL 2934711, at *3 (S.D. Ohio July 13, 2021) ("Here, nothing in the record indicates that Amazon made any attempt, good faith or otherwise, to investigate the availability of competent counsel in the local market."); *Bio-Med. Applications of Kentucky, Inc. v. Coal Exclusive Co.*, 2011 WL 3568249, at *10 (E.D. Ky. Aug. 15, 2011) ( "[N]othing

11

indicates BMA ever attempted to locate competent counsel in the relevant market."); *American Canoe Association, Inc. v. City of Louisa*, 683 F. Supp. 2d 480, 486 (E.D. Ky. 2010) ("There is no such evidence that American Canoe contacted any counsel in Kentucky to see if they could handle a case like this.").

A token search effort does not suffice, either. In *Scheffler v. Lee*, for example, Judge Simpson held that calling *twenty* Kentucky attorneys was insufficient to demonstrate "that Plaintiff therefore 'exhaust[ed] all options' of finding local counsel." 2020 WL 2174449, at *2 (W.D. Ky. May 5, 2020).[2] Likewise, in *Deal ex rel Deal v. Hamilton County Dep't of Educ.*, the court rejected the plaintiff's contention that continuing a search for in-market counsel was "futile" after three separate attorneys declined the representation. 2006 WL 2854463, at *12 (E.D. Tenn. Aug. 1, 2006), *aff'd*, 258 Fed. Appx 863 (6th Cir. 2008). Calling three local firms also failed to cut it in *Rogers v. Johnson*, 2024 WL 3311084, at *4 (N.D. Fla. June 10, 2024), especially where one of those firms was "not known for handling" the type of case at hand.

Perhaps the best parallel to this case, however, is *United States ex rel. Trakhter v. Provider Servs., Inc.*, 2019 WL 2422422 (S.D. Ohio June 10, 2019). Like this case, *Trakhter* was a False Claims Act suit challenging Medicare billings. And, as here, the relator "only checked with <u>one</u> other Ohio firm before retaining" out of town counsel. *Id.* at *3 (emphasis in original). "Under such circumstances," the court held, "no good-faith effort failed to identify local counsel." *Id.*

---

[2] The R&R disregarded *Scheffler* because the issues in that litigation were less complex than those presented in the current matter. R. 761, PageID.75518 n.4. Even assuming the complexity of a matter could lessen a party's duty to seek adequate counsel within the jurisdiction, Relator's cursory nod toward its burden to find local counsel falls well short of the mark, for reasons explained in text above.

Another close analogue may be found in *U.S. ex rel. Rille v. Hewlett Packard Co.*, 2011 WL 4625646, at *4 (E.D. Ark. Oct. 5, 2011). There, as here, the relator sought out-of-town rates for its FCA counsel, who filed a declaration stating that it was not aware of any local firm "that has the reputation, experience, and expertise in serving as lead plaintiff's FCA counsel, coupled with the willingness to carry the massive costs and expenses necessary to handle major FCA litigation for multiple years." *Id.* at *4. Thus, counsel only consulted one local firm, who ended up serving as local counsel. The court was "not convinced that chins the bar of diligent, good faith efforts to retain local lead counsel." *Id.* So it applied local rates. *See also O'Grady v. Mohawk Finishing Prods., Inc.*, 1999 WL 30988, at *3 (N.D.N.Y. Jan. 15, 1999) (applying community-market rates where plaintiff only contacted one local attorney who declined the case and "could not think of any other suitable counsel in the area").

The court's reasoning in *Guckenberger v. Boston University*, 8 F. Supp. 2d 91 (D. Mass. 1998), perfectly captures why courts should not rubber-stamp a party's untested assumption that no suitable counsel may be found locally. There, the court refused to apply higher San Francisco rates to a case litigated in Boston because "plaintiffs offer no specific evidence that they ever seriously considered other options within the local market." *Id.* at 104. The court explained: "While [out-of-town counsel]'s expertise was helpful, a local law firm could well have served as primary trial counsel and consulted with it to draw on that expertise." *Id.* Thus, it characterized the decision to hire out-of-town counsel as a "'judgment call,'" and declined to pass the costs on to the defendant. *Id.*

This case should reach the same result. Relator made no *serious* effort to determine if any Kentucky counsel were willing and able to take this case—either alone or in conjunction with Relator's original FCA counsel at Phillips & Cohen. Instead, Phillips & Cohen queried another

FCA firm in Ohio, who provided the name of their former local counsel from a different FCA case in this District: Al Priddy (who primarily practices labor law). *See* R. 748-61 (Sylvia Decl., ¶ 8). Counsel also did some cursory Internet searches to determine if anyone in Kentucky advertises being relator-side FCA counsel. *See* R. 748-63 (Sylvia Decl., Ex. 2) (results of internet search). Based on that one phone call and light Googling, Relator fell back on its pre-existing bias that no firm in Kentucky was qualified to handle this case. *See* R. 748-61 (Sylvia Decl. ¶ 9); R. 754-33 (Supp. Sylvia Decl. ¶ 9). Unfortunately, the Magistrate Judge blessed that approach, concluding that "information available on the internet" was an adequate means of "seeking representation by local lawyers." R. 761, PageID.75517-75518.

But that's nowhere near sufficient, as the cases cited above show. Placing only one call— like Relator did here—falls far short of a good-faith attempt. When considered side-by-side with the cases just discussed, it is clear that Relator's efforts cannot be deemed sufficient:

| Case | Steps Taken | Sufficient? |
|---|---|---|
| *Scheffler v. Lee* (W.D. Ky. 2020) | Contacted 20 local attorneys | No |
| *Rogers v. Johnson* (N.D. Fla. 2024) | Contacted three firms, including one not known for handling that type of case | No |
| *Deal v. HDCE* (E.D. Tenn. 2006) | Contacted three local attorneys | No |
| *US ex rel. Trakhter v. Provider Servs., Inc.* (S.D. Ohio 2019) | Contacted one local firm | No |
| *O'Grady v. Mohawk Finishing Prods., Inc.* (N.D.N.Y. 1999) | Contacted one local firm, who could not think of anyone else in area | No |
| *U.S. ex rel. Rille v. Hewlett Packard Co.* (E.D. 2011). | Contacted only one local firm because they did not think any firm had reputation, experience, and expertise to serve as lead Relator's counsel in FCA case | No |
| *Bio-Med. Applications of Kentucky v. Coal Exclusive Co.* (E.D. Ky. 2011) | No evidence party contacted local attorneys | No |
| *American Canoe Assn. v. City of Louisa* (E.D. Ky. 2010) | No evidence party contacted local attorneys | No |
| *Guckenberger v. Boston Univ.* (D. Mass. 1988) | "[N]ever seriously considered" local attorneys | No |
| *Communities for Equity v. Michigan HSAA*, 2008 WL 906031 (W.D. Mich. 2008) | Contacted four local attorneys as well as the American Civil Liberties Union, National Organization of Women, Grand | Yes |

| | Rapids Bar Assn, Western Michigan Women's Bar Assn, and the American Assn of University Women | |
| --- | --- | --- |
| *Grier v. Goetz*, 2009 WL 10729589 (M.D. Tenn. Aug. 13, 2009) | Contacted numerous local firms as well as the Litigation Assistance Partnership Program (LAPP), which pairs firms and clients | Yes |
| *US ex rel Scott v. Humana* | Contacted one attorney; looked up firms on the internet but did not call | TBD |

It's clear why Relator did not do any more than this: his California-based counsel had already decided that no firm in Kentucky was up to the task. *See* R. 761, PageID.75514 (Relator's counsel averred "they *already knew* there were no such firms in Kentucky"). But a party cannot declare a search for local counsel to be "futile" without genuinely trying. *Deal ex rel Deal,* 2006 WL 2854463, at *12.

Nor is it dispositive, as the R&R seemed to think, that most of the firms in Kentucky with FCA experience tend to represent defendants. The same is true of Humana's fee expert, but he represents relators as well. *See* R. 752-4 (Walton Decl. ¶¶ 7-10). Even Relator's D.C.-based counsel boasts on its website that "[w]e represent both plaintiffs and defendants, providing our clients with a balanced view of both sides of litigation." https://kellogghansen.com/about/. It is unclear, then, why Relator's counsel simply presumed—without actually reaching out to any local litigation firms—that no Kentucky firm would be willing to take on relator-side work in a potentially lucrative case. Many litigation firms could have teamed up with Relator's California-based FCA counsel to provide competent representation. *See, e.g.*, *Guckenberger*, 8 F. Supp. 2d at 104 ("While [out-of-town counsel]'s expertise was helpful, a local law firm could well have served as primary trial counsel and consulted with it to draw on that expertise.").

It comes down to this: Humana should not be forced to pay an extra $15 million because Relator's counsel *assumed* that no Kentucky counsel could or would handle this case. As out-of-

town lawyers choosing to litigate a case in Kentucky, counsel were well-aware of the risk they were taking by not bothering to genuinely explore the relevant legal market. The consequence is that they should have to make do with $14.03 million in additional compensation, on top of the $10.44 million they've already received from their client's share. *See Hadix*, 65 F.3d at 535; *Sigley*, 205 F.3d 1341; *Am. Canoe*, 683 F. Supp. 2d at 486; *Scheffler*, 2020 WL 2174449, at *2; *Bio-Med. Applications*, 2011 WL 3568249.[3]

## II.    Relator failed to justify out-of-town specialist rates on an attorney-by-attorney basis.

Even when awarding out-of-market rates under the "specialist" exception, courts generally insist that each attorney have the relevant experience to be compensated at those rates; it is not sufficient that they work in the same firm or geographic location as an out-of-town specialist.

For example, in *Smith v. Serv. Master Corp.*, 592 F. App'x 363 (6th Cir. 2014), the trial court had held that across-the-board rates above market were reasonable in a FLSA case litigated in Tennessee by California counsel because of the complexity of the litigation. The Sixth Circuit disagreed, however. It allowed above-market rates for the most experienced partners, but refused to presume that more junior attorneys at those firms were entitled to the same "specialist" treatment simply because they worked with those partners. Instead, the court remanded the case back to the trial court for additional findings concerning associates and law clerks. *See id.* at 370

---

[3] Humana anticipates that Relator will note, as it did at the petition stage, that Humana also hired out-of-town counsel. The R&R correctly noted this fact is not "determinative" of the reasonable-rate analysis.  R. 761, PageID.75544. The fact that a defendant could and did decide to pay out-of-District rates to some of their attorneys in a case seeking billions of dollars in damages has little to no bearing on whether competent attorneys also were available in the District. And in any event, the FCA's fee-shifting provision does not require Humana to fund Relator's legal fees "beyond a rule of reason." *Cernelle*, 539 F. Supp. 3d at 740.

("The district court did not adequately explain its reasons for departing from the local rate for associates and did not discuss the governing criteria."). Put differently, the mere fact that out-of-town counsel work together does not mean that all timekeepers are entitled to be compensated at national rates if the court determines it was reasonable to hire one or more attorneys with particular expertise.

The Eleventh Circuit held the same thing in *ACLU of Georgia v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999). There, the prevailing party sought out-of-town rates for both a senior attorney and his junior colleague. In remanding the case back to the trial court for more findings, the Court observed that "at the time this case was litigated, Hansen had over twenty years of litigation experience while Beeson had less than three and apparently had worked on only one case in her career. The significant disparity in their experience should be reflected in the rates awarded." *Id.* at 438.

The Court in *Anderson v. Wilson*, 357 F. Supp. 2d 991, 998 (E.D. Ky. 2005), reached the same conclusion. There, the Court found that it was reasonable for plaintiffs to hire out-of-town counsel in an election law case that presented complex First Amendment questions. The Court cautioned that "[h]aving said that, however, Plaintiffs are not entitled to the best First Amendment counsel in the country." *Id.* at 998. And it added that "the hourly rate to be applied to Plaintiffs' counsel must still be reasonable in light of their experience." *Id.* Thus, the court awarded an above-market rate for a 30-year attorney who had "extraordinary expertise" in the subject matter of the case. Conversely, it used local-market rates for that out-of-town counsel's more junior colleagues, who had "from eight to ten years experience," assigning them "an hourly rate of $125, equal to that of [the local attorney] who has ten years of experience." *Id.* The Court also discounted the time of a different out-of-town counsel (who now sits on the Sixth Circuit),

finding it to be "excessive" because, although he had "16 years of experience," he "indicated no particular expertise relevant to Plaintiffs' case." *Id.*

*Polymeric Res. Corp. v. Pounds of Plastic, LLC*, 2022 WL 3568182 (E.D. Ky. Aug. 18, 2022), applied a similar attorney-by-attorney analysis. There, the court found that two D.C.-based attorneys with 40 and 25 years of patent law experience qualified as out-of-town specialists. However, because no similar "specialist" showing had been made for their colleague, an associate with only seven years' experience, the court reduced her rate. *Id.* at *4.

Another district court in this Circuit similarly refused to presume that all attorneys practicing in the same firm with a specialist should themselves be treated under the "specialist" analysis. In *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 761 (N.D. Ohio 2010), the court concluded that it "cannot adequately determine if the hourly rate each attorney has charged is within the AIPLA rates, which are based not only on location, *but also on experience*." (emphasis added). Thus, it applied an across-the-board reduction to rates for years when moving party did not justify rates on attorney-by-attorney basis. *Id.*

Here, the R&R did not undertake the kind of attorney-by-attorney analysis necessary to award "specialist" rates. Instead, it simply treated the out-of-town firms as a package deal, giving each timekeeper their full "standard" rates regardless of the experience they brought to this case—or the title they held while doing the work. *See* R. 761, PageID.75544. That resulted in several anomalous results, which cannot be justified under the controlling standards.

For example, a number of junior attorneys with little litigation experience—under the FCA or otherwise—were awarded remarkably high rates for their work on this case. To provide just a few examples:

- Bethan Jones, a 2016 law school graduate, was awarded $940 per hour for all the work she did on the case from 2017-2023. That includes work on discovery tasks and work

second-chairing depositions in her first few years in practice. Moreover, the materials submitted by Relator do not indicate any FCA representations prior to this case. (Ms. Jones also received $1,040 for time worked in 2024, and $1,225 for time worked in 2025, when she was promoted to partner).

- Lillian Smith, also a 2016 law school graduate, received $990 per hour for all the work she did on the case from 2017-2023. Relator's materials make clear that she primarily assisted in preparing witness examination outlines and drafting motions *in limine* and other pre-trial motions. However, those materials make no mention of her FCA experience *at all*, in this case or otherwise.

- Caroline Schechinger, a 2019 law school graduate, was awarded $755 per hour for all the work she did in this case from the time she graduated through 2023. The materials submitted by Relator make clear that she primarily assisted in preparing witness examination outlines and drafting motions *in limine* and other pre-trial motions. However, those materials make no mention of her FCA experience *at all*, in this case or otherwise. (She also received $860 per hour for time worked in 2024, and $985 per hour for time worked in 2025).

These results are not a reflection of the particular skill or expertise of these relatively junior attorneys, but are instead based solely on the fact that these attorneys worked at the same firm in Washington, D.C., with more experienced colleagues, which is not a sufficient reason to deviate from the community-market rule.

Equally problematic was the R&R's treatment of attorneys who were promoted to partner during the pendency of this case. The Report recommended that those attorneys be compensated for all time from 2017-2023 at their 2023 rates, even if they had been promoted to partner in the interim and thus were receiving partner rates for work done as an associate. R. 761, PageID.75550. While Humana acknowledges that courts sometimes award rates billed by an attorney in the later years of litigation to account for the time value of money, it is a different proposition altogether to compensate associate work at partner rates just because someone received a promotion during the case. This problem was most acute for Kellogg Hansen attorney Tom Schultz, who became a partner in 2021. He billed approximately 2,780 hours in this case, 74.6% of which were billed when he was an associate. Yet, because he was promoted to partner

before 2023, the R&R recommends that he be compensated at rates ranging from $1,095 to $1,350 for every hour he worked on this case. Likewise, Katherine Cooper performed 3,296.6 hours of work as an associate in this case before being promoted to partner in 2022. Again, the R&R recommends that she be compensated for all of her 3,755 hours at $1,095 per hour. Phillips & Cohen attorney Edward Arens falls into this category, too. He became a partner in partner in 2018, R. 748-61 (Sylvia Decl., ¶ 11), but the R&R awarded him $850 per hour for all work performed when he was still an associate.

The R&R made no effort to justify the "out-of-town specialist" rates afforded to staff attorneys, paralegals, and litigation specialists, either. Indeed, there is no discussion at all of the need for these timekeepers' skill or experience, yet the R&R recommends awarding them rates that exceed what both Relator and Humana paid to Kentucky-based partners with decades of litigation experience, including representation of the United States in FCA matters. R. 761, PageID.75544.

## III.    Humana's rate proposal is reasonable

"Courts must remember that they do not have a mandate to make the prevailing counsel rich." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (cleaned up). The Sixth Circuit "has made clear that lawyers are entitled only to 'reasonable' fees and that 'such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.'" *Linneman*, 970 F.3d at 630 (*quoting N.E. Ohio Coal.*, 831 F.3d at 716).

The "'touchstone' of the doctrine" is "that district courts should award fees just high enough 'to attract competent counsel.'" *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009). The reasonable rate must be sufficient but no greater than necessary to attract competent attorneys. *See Linneman*, 970 F.3d at 631; *Gonter*, 510 F.3d at 618; *see also Anderson*, 357 F. Supp. 2d at 998 ("Plaintiffs are not entitled to the best First Amendment

counsel in the country" and "the hourly rate to be applied to Plaintiffs' counsel must still be reasonable in light of their experience").

Thus, even for out-of-town specialists, this Court does not face a binary choice between Louisville rates on the one hand and D.C./California rates on the other, as the R&R framed the question. Rather, "the two-prong *Hadix* test is applied cautiously: even courts that concluded out-of-district counsel were necessary often affirmed reduced fees for those attorneys." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011). That's what the Sixth Circuit did in *Harmon v. McGinnis, Inc.*, 263 F. App'x 465, 468 (6th Cir. 2008), where it affirmed a decision to award rates that exceeded the local market rate, but were not as high as out-of-town counsel requested. The Eastern District of Michigan did the same in *Cernelle*, 539 F. Supp. 3d at 740, in a decision affirmed by the Sixth Circuit, 2022 WL 2759867.

The cases cited by Relator, which discuss its counsel's previously-approved rates, do not prove the fees sought here are inherently reasonable. As Judge Heyburn explained:

> "While the rates charged to their clients do reflect what these attorneys can charge, the rates requested in this case operate simply as a starting point from which the Court will determine the appropriate market rate for attorneys with sufficient competence and experience to pursue this lawsuit, in accordance with Sixth Circuit precedent."

*Maxwell's Pic-Pac, Inc. v. Dehner*, 2013 WL 1003692, at *4 (W.D. Ky. Mar. 13, 2013). Moreover, only one of the cited cases was a fee-shifting case: *Conwood Company, L.P., et al. v. United States Tobacco Co., et al.*, an unpublished order from 2001. That opinion did not engage in the rigorous out-of-town specialist analysis that the Sixth Circuit has since reinforced—in fact, it did not consider the availability of local counsel at all—and does not comport with the modern practice in this District or the Circuit. *See* R. 748-28, PageID.72792. Moreover, *Conwood* resulted in a recovery that is twenty times more than what Relator has achieved here for less than

21

half the fee amount the R&R recommends. The plaintiff in *Conwood* also sought only the equivalent of 1% of the recovery, whereas Relator here sought 40% of the settlement.[4]

The rates that Relator seeks, and the R&R recommends, can only be described as shocking for this market. Junior associates in this market do not earn $940 per hour to sit beside more seniors attorney at a deposition. Nor do "staff attorneys" in Kentucky earn $590 per hour, or paralegals earn $545 per hour. Indeed, those rates exceed the amounts awarded in this district for equity partners with decades of experience. As noted above, judges in this District have repeatedly pointed to a recent PwC survey that catalogs rates for attorneys charged in Kentucky and Tennessee. *See, e.g.*, *Ward*, 2024 WL 4242059 *4 (W.D. Ky. Sept. 19, 2024); *Honorable Ord. of Kentucky Colonels*, 2023 WL 7545041 at *3. Those median rates by seniority are[5]:

| Years In Practice | Equity Partner | Non-Equity Partner |
|---|---|---|
| <11 | | 455 |
| 11-15 | 490 | 488 |
| 16-20 | 539 | 513 |
| 21-25 | 566 | 525 |
| 26-30 | 582 | 569 |
| 31-35 | 646 | N/A |
| 36-40 | 629 | 623 |

| Graduation Year | Associate Rate |
|---|---|
| 2022 | 303 |
| 2021 | 315 |
| 2020 | 335 |
| 2019 | 377 |
| 2018 | 361 |
| 2017 | 398 |
| 2016 | 395 |
| 2015 | 365 |
| 2014 | 390 |
| Prior | 395 |

---

[4] The other three cases Relator cited in its Petition simply concluded that Kellogg Hansen could charge its clients its usual rates. *See* R. 748, p. 16 (under seal). Two were bankruptcy cases in which the court approved Kellogg Hansen's rates for representing the debtor. *Id.* (citing *In re Aearo Technologies LLC*, No. 22-02890-JJG-11 (Bankr. S.D. Ind.) and *In re Bestwall*, No.17-31795 (Bankr. W.D.N.C.)). The third was a contingent class action case in which the court applied a "5 times multiplier" to Kellogg Hansen's hourly rate, presumably to justify a percentage-of-the-fund award. *Id.* (citing *Emerson v. Florida Dep't of Revenue*, No. 2021-CA-000487 (Fl. Cir. Ct. Hillsborough Cnty.)). These cases have no bearing on the reasonable fee necessary to retain competent FCA counsel.

[5] The PwC survey data was filed with the Court in *Honorable Order of Kentucky Colonels*, *Inc.*, No. 3:20-cv-132, R. 130-6, PageID #:3764.

The rates recommended by the Magistrate Judge dwarf these rates. Indeed, they are more than twice as much as the highest-ever hourly fees awarded by a court in this District. In *Bourke v. Beshear*, 2016 WL 164626 (W.D. Ky. Jan. 13, 2016), the court awarded $750 per hour to experienced Supreme Court litigators briefing and arguing before the U.S. Supreme Court in *Obergefell v. Hodges*—the landmark case that enshrined same-sex marriage as a constitutional right. In that same opinion, however, the court limited the out-of-town counsel's rates for work done in the Western District and Sixth Circuit to the reasonable Louisville market rates. *Id.*

Thus, to the extent the Court finds that Relator made a good-faith attempt to locate local counsel and failed, thereby justifying out-of-town rates, the Court should award fees that were sufficient but no greater than necessary to retain attorneys specialized in FCA litigation. And, as Humana's evidence showed, world-class relator-side FCA litigators can be found for far less than the rates sought by Relator's counsel. Indeed, Victor Walton, Humana's FCA expert, charged only $785 for his services in 2023, and only $895 even in 2025. *See* R. 752-4 ¶¶4, 27.

Humana stands by its proposal that the Court should deviate from the community market rule only for those attorneys that have the most expertise, but not for all timekeepers. Here, Relator has come closest to making the "out-of-town specialist" showing for four partners who possess significant FCA experience: James Webster, Jeffrey Dickstein, Claire Sylvia, and Andy Shen. Humana proposes that the three partners with approximately thirty or more years' experience—Webster, Dickstein, and Silvia—be compensated at the rate Humana's FCA fee expert charged in 2023: $785 per hour.

Humana proposes a slightly lower, but still generous, rate for Andy Shen, who, as of 2023, had 19 years' experience. Humana proposes that Mr. Shen receive $700 an hour. That rate is a 55% premium over the highest rate Humana paid to its local counsel, Michael Abate, up

until the time this case settled in 2023, even though Mr. Shen and Mr. Abate have been practicing law for the same amount of time. Both passed the bar in 2005 and, indeed, worked together as summer associates in Washington, D.C. in 2004, and Mr. Abate handled FCA litigation in the Sixth Circuit on behalf of the United States. That proposed rate also would represent a 40% premium over the rate charged in 2023 by Relator's local counsel, Dean Furman, who has been practicing more than a decade longer than Mr. Shen and served as the federal government's Health Care Fraud coordinator in this District. *See* R. 748-86 (Furman Decl. ¶¶ 7-8).

For all other timekeepers, Humana proposes to use the median PwC rates based on their job title and experience as of 2023, which are specified on the following chart. Under this model, Relator's total fee award would be $14,030,718.48.

| Timekeeper | Role | Years in Practice as of 2023 | Total Hours | Proposed Rate | Proposed Fee |
|---|---|---|---|---|---|
| Sylvia, Claire | Partner | 36 | 1,869.10 | 785.00 | 1,320,519.15 |
| Arens, Edward | Assoc/Part | 15 | 2,776.50 | 490.00 | 1,224,436.50 |
| Dickstein, J. | Partner | 39 | 126.40 | 785.00 | 89,301.60 |
| Easton, Amy | Partner | 25 | 163.60 | 566.00 | 83,337.84 |
| Budetti, Peter | Of Counsel | 46 | 59.50 | 629.00 | 33,682.95 |
| Collins, George | Sr. Counsel | 11 | 2,391.40 | 395.00 | 850,142.70 |
| Shefler, Taeva | Associate | 10 | 169.20 | 395.00 | 60,150.60 |
| Stabile, Emily | Assoc/Part | 10 | 83.70 | 395.00 | 29,755.35 |
| Westerfield, A. | Associate | 10 | 108.30 | 395.00 | 38,500.65 |
| Diamond, Luke | Associate | 7 | 63.90 | 395.00 | 22,716.45 |
| DeFrancesco, D. | Paralegal | | 408.30 | 200.00 | 73,494.00 |
| Moir, Jennifer | Paralegal | | 28.20 | 200.00 | 5,076.00 |
| Shen, Andrew | Partner | 19 | 4,634.00 | 700.00 | 2,919,420.00 |
| Webster, James | Partner | 29 | 2,262.60 | 785.00 | 1,598,526.90 |
| Schultz, Thomas | Assoc/Part | 10 | 2,774.70 | 395.00 | 986,405.85 |
| Cooper, K. | Assoc/Part | 10 | 3,755.40 | 395.00 | 1,335,044.70 |
| Smith, Lillian | Assoc/Part | 7 | 164.70 | 395.00 | 58,550.85 |
| Jones, Bethan | Assoc/Part | 7 | 3,379.50 | 395.00 | 1,201,412.25 |
| Schechinger, C. | Associate | 7 | 830.20 | 395.00 | 295,136.10 |
| Briggs, K. | Staff Atty | 23 | 627.10 | 383.00 | 216,161.37 |
| Davies, Joseph | Staff Atty | 16 | 320.70 | 383.00 | 110,545.29 |

| Moore, Robert | Staff Atty | 20 | 1,819.40 | 383.00 | 627,147.18 |
|---|---|---|---|---|---|
| Murphy, B. | Paralegal | | 71.20 | 230.00 | 14,738.40 |
| Sella, Chandler | Paralegal | | 94.40 | 200.00 | 16,992.00 |
| Burke, David M. | Paralegal | | 242.40 | 230.00 | 50,176.80 |
| Lukeman, Emilia | Paralegal | | 1,137.50 | 200.00 | 204,750.00 |
| Birmingham, J. | Paralegal | | 71.90 | 200.00 | 12,942.00 |
| Harger, Lisa | Paralegal | | 63.50 | 200.00 | 11,430.00 |
| MacDonald, M. | Paralegal | | 2,167.50 | 200.00 | 390,150.00 |
| Sommerfield, R. | Paralegal | | 277.50 | 200.00 | 49,950.00 |
| Brennan, James | Admin | | 125.60 | 125.00 | 14,130.00 |
| Tapkas, Jason | Admin | | 103.90 | 125.00 | 11,688.75 |
| Marini, Ripton | Admin | | 107.30 | 125.00 | 12,071.25 |
| Sinn, Carver | Admin | | 85.20 | 125.00 | 9,585.00 |
| Furman, C. Dean | Partner | | 105.00 | 500.00 | 47,250.00 |
| Nilsen, D. Sean | Partner | | 12.00 | 500.00 | 5,400.00 |
| **Total Attorneys** | | | **33,481.30** | | **14,030,718.48** |
| Other Expenses | | | | | 2,736,833.21 |
| **TOTAL** | | | | | **16,767,551.69** |

## CONCLUSION

Humana objects to the R&R's proposal to compensate Relator's counsel at rates that are multiples of what competent, experienced counsel could command in this District. Relator did not conduct a good-faith search before concluding that no firm in Kentucky was good enough to handle this case. Nor did Relator justify deviations from the community-market rule based upon the skill and experience of each timekeeper. Therefore, this Court should, on *de novo* review, award Relator fees no more than necessary to attract competent counsel for the work performed. Even at rates among the very top ever awarded in this district, that would mean only $14,030,718.48 in fees, for a combined total of $16,767,551.69 in fees and expenses, for the number of hours deemed reasonable by the Magistrate Judge.

Dated: May 14, 2025                    Respectfully submitted,

/s/ Michael P. Abate
Michael P. Abate
Jeremy G. Lister-Perlman
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor

Louisville, KY 40202
(502) 416-1630
mabate@kaplanjohnsonlaw.com
jlisterperlman@kaplanjohnsonlaw.com

/s/ K. Lee Blalack II
K. Lee Blalack, II*
Amanda Santella*
William T. Buffaloe*
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
202-383-5300
lblalack@omm.com
asantella@omm.com
wbuffaloe@omm.com
*Admitted pro hac vice

Counsel for Defendant Humana Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2025, I filed the foregoing Response with the Court and served it on opposing counsel through the Court's CM/ECF system.  All counsel of record are registered ECF users.

/s/ Michael P. Abate
*Counsel for Defendant Humana Inc.*